Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

**EXHIBIT A**

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

|  |  |
|---|---|
| PARK 1500 LOFTS CONDOMINIUM ASSOCIATION | ) ) ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. **2026CH02542** |
|  | ) |
| AFFILIATED FM INSURANCE COMPANY | ) |
|  | ) |
| Defendant. | ) |

For updated information about your case, including hearings, subsequent filings and other case information, please visit our Online Case Search and search for your case: https://casesearch.cookcountyclerkofcourt.org

### COMPLAINT

Park 1500 Lofts Condominium Association ("Park 1500"), by and through its counsel Barnes & Thornburg, and for its complaint against Defendant Affiliated FM Insurance Company ("Affiliated") states as follows:

### INTRODUCTION

1. Park 1500 sues for breach of contract and declaratory judgment under its All Risks Property Insurance Policy, Policy No. 1114546, issued by Affiliated for the period from May 1, 2023 to May 1, 2024, attached as **Exhibit 1** (the "Policy").

2. Affiliated has always acknowledged that the Policy covers the January 28, 2024 failure of a timber column in Unit 324 of Building 1 at the Park 1500 Lofts in Chicago, Illinois ("the Occurrence").

3. However, Affiliated has woefully underpaid Park 1500's claim.

4. As a result of the Occurrence, the City of Chicago Department of Buildings (the "City") issued three separate Vacate Orders over approximately a five month period.

5.     Affiliated improperly trifurcated Park 1500's claim based on the issuance of three separate Vacate Orders. Essentially Affiliated used the City's issuance of the second and third Vacate Orders to find two additional unrelated "occurrences" under the Policy which it then used to unilaterally create two additional "claims."

6.     Affiliated then denied these two additional "claims," as a means to limit the scope of coverage under the Policy.

7.     In reality, the one and only Occurrence resulted in the City issuing three Vacate Orders for portions of Building 1 over the course of the monthslong investigation.

8.     In order for the City to lift the Vacate Orders, Park 1500 must comply with certain provisions of the City of Chicago Construction Code, and abate or eliminate dangerous or unsafe conditions.

9.     The City's enforcement of the three compliance orders increased Park 1500's costs of repair or reconstruction caused by the Occurrence.

10.     The Policy's "Demolition and Increased Cost of Construction" provision covers those increased costs.

11.     Affiliated has used its arbitrary trifurcation of Park's claim as the basis to assert that the Occurrence did not result in the City's issuance of the Second and Third Vacate Orders and deny "Demolition and Increased Cost of Construction" coverage under the Policy.

12.     Further, even under what it considered the original claim, Affiliated improperly rejected many substantial expenses Park 1500 incurred, including professional fees for the engineering report that Affiliated demanded.

2

**THE PARTIES**

13.     Plaintiff Park 1500 Lofts Condominium Association is an Illinois not-for-profit corporation organized under the existing laws of the State of Illinois, and is the governing body for the Park 1500 Condominium Building, located at 6 South Laflin Street, 1500 West Monroe and 1501–1507 West Madison, in Chicago, Illinois, pursuant to the Condominium Property Act (765 ILCS 605/1 et seq.) and the Declaration of Condominium and By-Laws recorded for said property.

14.     Defendant Affiliated FM Insurance Company is an insurance company organized under the laws of the State of Rhode Island with its principal place of business located at 270 Central Avenue, Johnston, Rhode Island 02919-4949. Affiliated is also licensed to conduct business in the State of Illinois.

**JURISDICTION AND VENUE**

15.     This Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 735 ILCS 5/2-701, as Plaintiff seeks declaratory and equitable relief in the form of a declaration of the parties' rights and obligations under the subject insurance contract and alleges that Affiliated has breached its coverage obligations under the Policy.

16.     Venue is proper in this Court pursuant to 735 ILCS 5/2-101, the Policy was delivered in Cook County, insuring a property located in Cook County.

**FACTS**

A.     *The Property Insurance Policy*

17.     Plaintiff is the condominium association for the Park 1500 Lofts, in Chicago, Illinois.

3

18. Park 1500 is the named Insured under the ProVision All Risks Property Insurance Policy, Policy No. 1114546, issued by Affiliated for the period from May 1, 2023 to May 1, 2024.

19. The Policy provides coverage against all risks of physical loss or damage to the property identified as "6 South Laflin Street and 1500 West Monroe and 1501–1507 West Madison, Chicago, Illinois, 60607, USA" in the "Location Schedule" contained in the Policy. *See* Ex. 1, Declarations, E; "All Risk Coverage" Part, 1–5 of 42.

20. The Policy's total limit of liability is $87,190,000 for any one "**occurrence**," subject to certain sublimits contained in the Policy. Ex. 1, Declarations, Section C. Policy Limits.

21. In pertinent part, an "**occurrence**" is defined as "the sum total of all loss or damage of the type insured, including any insured Business Interruption loss, arising out of or caused by one discrete event of physical loss or damage. . ." *Id.*, Definitions.

22. The Policy includes Additional Coverage for "Professional Fees" when its insured, Park 1500 incurs reasonable and necessary expenses related to "producing and certifying particulars or details to determine the amount of loss payable under this Policy." *Id.*, Additional Coverages, 23. The Professional Fees provision expressly covers the reasonable and necessary fees of engineers. *Id.*

23. "Professional Fees" coverage is subject to a sublimit of $100,000 under the Policy. *Id.*, Declarations, Section F. Sub-Limits.

24. The Policy further provides Additional Coverage for "Demolition and Increased Cost of Construction" ("DICC Coverage") when its insured, Park 1500, has costs resulting from its obligation to comply with a law or ordinance. *See id.*, Additional Coverages, 11.

25. The DICC Coverage provision provides in pertinent part:

> This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

4

a) Such law or ordinance is enforced as a direct result of insured physical loss or damage at a **location**;

b) Such law or ordinance is in force at the time of such loss or damage; and

c) Such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

*Id.*

26. Coverage "A" under the DICC Coverage provision pays for the "reasonable and necessary costs" for the insured to "comply with the enforcement of the minimum requirements of any law or ordinance that Regulates the . . . construction, repair, . . . or use of buildings . . ." and "[r]epair or rebuild the physically damaged and undamaged portions [of the insured building], whether or not demolition is required." *Id.*

27. The Policy defines "**location**" as "a location described in the Insurance Provided clause of the Declarations section or included as Newly Acquired Property or Unnamed Property coverages. *Id.*, Definitions.

28. DICC Coverage is subject to the "Policy Limit" (*i.e.,* $ 87,190,000). *Id.*, Declarations, Section F. Sub-Limits.

29. Park 1500 properly paid the premium under the Policy.

**B. *The Occurrence and Aftermath***

30. The building at 1500 West Monroe Street, currently known as The Park 1500 Lofts, was originally constructed in 1911 as a factory and warehouse for The Olson Rug Company. The building has three distinct framing arrangements, which are referred to as Building 1, Building 2, and Building 3 (collectively the "Buildings"). The structural framing for each of the three Buildings consists of exterior load bearing masonry walls and interior timber tongue and groove decking, joists, beams, and columns.

5

31.    In 2001, the property was converted into condominiums, which included connecting the three Buildings with a lobby and adding three supported levels forming two additional stories on top of Building 1. Park 1500 has a total of 324 units.

32.    Building 1 of the Park 1500 Lofts consist of eight (8) stories and fifty (50) units.

33.    On or about January 28, 2024, a structural timber column failed in Unit 324 ("the Occurrence") of Building 1. As Affiliated acknowledged in correspondence dated June 5, 2024; "[o]n January 28, 2024, the owners of Units 324 and 424 reported hearing loud noise that resulted in the cracking of a wood post." **Exhibit 2.**

34.    Other residents in Building 1 reported hearing a loud boom, like an explosion, and feeling the building shake when the column failed.

35.    The Chicago Fire Department immediately evacuated Unit Tiers 23, 24,25, 26, and 27 as a result of this failure.

36.    Shortly after the Occurrence Wiss, Janney, Elstner Associates, Inc. ("WJE") was retained to investigate the loss and determine the cause of the loss in Building 1. Park 1500 promptly notified Affiliated of its claim arising from the Occurrence and Affiliated assigned it Claim No. 826938.

37.    In an emergency effort to stabilize the situation and mitigate further damage, and based on the advice of the engineering firm of WJE, LS Contracting Group Inc., installed metal bands around the collapsed column to provide additional support (*i.e.,* shoring).

38.    After the emergency shoring was installed around the collapsed column, the City of Chicago Department of Buildings (the "City") required Park 1500 to provide additional calculations and designs for more comprehensive shoring, and issued a Vacate Order on or about January 28, 2024 for thirty-six (36) units across eight (8) floors ("First Vacate Order"). **Exhibit 3.**

6

39. The City further required WJE to perform a conditions assessment of Building 1, and assess the condition of the other columns located in Building 1.

40. In a letter dated February 16, 2024, the City explained that it issued the First Vacate Order in accordance with 14A-3-307.1 of the Chicago Construction Code.

> On January 28, 2024, the Chicago Fire Department responded to a 911 call at 1500 West Monroe in response to a heavy timber structural failure of a column in unit 324.

> The Fire Department made the determination to vacate the building Pursuant to 14A-3-307.1 of the Chicago Construction Code, "Where a *building, structure,* or *premises* has been damaged by fire, deterioration, or other cause, or ***shows clear evidence of structural failure***, and where it constitutes an actual and imminent danger to the public, the *building official, fire code official,* Superintendent of Police, or Commissioner of Public Health is authorized to order said *building, structure,* or *premises* vacated and closed."

*Id.* (emphasis in the original).

41. On February 21, 2024, after WJE installed approved shoring in Unit 324, the City lifted the First Vacate Order for twenty-nine (29) of the thirty-six (36) units. Seven (7) units remained subject to the First Vacate Order.

42. In the months following the Occurrence, WJE continued to investigate the root cause, scope of damage, and developed a remediation plan related to the Occurrence. Further, investigation into the Occurrence and related damage led the City to issue two additional vacate orders in 2024.

43. On April 26, 2024, the City issued a Vacate Order for Unit Tier 22 and Unit 722, after WJE notified it of a second structural timber column having characteristics for an elevated risk of sudden loss of load carrying capacity in Unit 122 ("Second Vacate Order"). The Second Vacate Order cited to the same provision of the Chicago Construction Code (14A-3-307.1) as the First Vacate Order. **Exhibit 4.**

7

44. On May 1, 2024, the City issued a third Vacate Order for all of the residential units in Building 1 after WJE, on April 28, 2024, notified it of a third structural timber column having characteristics for an elevated risk of sudden loss of load carrying capacity in Unit 127 and requiring the entire east wing of Building 1 to be vacated ("Third Vacate Order"). **Exhibit 5**. The Third Vacate Order cited the same provision of the Chicago Construction Code (14A-3-307.1) as the First and Second Vacate Orders. *Id.*

45. In a letter dated June 6, 2025, the City explained that pursuant to the Chicago Construction Code Section 302.2, the Third Vacate Order could not be lifted until the unsafe or dangerous structural conditions have been abated or eliminated.

> The Department of Buildings is prohibited from lifting the order to vacate pursuant to the provisions of the Chicago Construction Code Section 302.2 of the *2019 Chicago Building Rehabilitation Code with May 2020 Supplement* which states "***The building official shall require the elimination of dangerous conditions. The building official shall have the authority to require the elimination or abatement of unsafe conditions***."

**Exhibit 6** (emphasis in the original).

46. The Third Vacate Order remains in effect, and all fifty (50) units in Building 1 remain vacant.

47. Construction to remediate the unsafe conditions is ongoing, and completion is not anticipated until March 30, 2026 or thereafter.

48. Park 1500 anticipates costs will continue to accrue through June 2026.

**C.** *Affiliated's Improper Trifurcation of Park 1500's Claim*

49. As discussed above, promptly after the Occurrence on January 28, 2024, Park 1500 notified Affiliated of its claim, and in response Affiliated assigned it Claim No. 826938 (the "Claim").

50. The Occurrence was deemed an insurable physical loss under the Policy.

8

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

51. At some point during the claim process, Affiliated retained its own consultant, Engineering System Inc. ("ESi") to review the documents provided by WJE, investigate and determine the cause of the reported structural issues.

52. For reasons unbeknown to Park 1500, Affiliated unilaterally created two new "claims" under Park 1500's Policy sometime after WJE reported its findings concerning the structural deficiencies of the two additional timber columns to the City on April 26 and April 28, 2024, respectively, and the City issued the Second and Third Vacate Orders.

53. Affiliated unilaterally opened file no. 829163 for the column reported on April 26, 2024 leading the City to issue Second Vacate Order and file no. 829521 for the column reported on April 28, 2024 leading the City to issue the Third Vacate Order (collectively the "Unilaterally Created Files").

54. Essentially, Affiliated arbitrarily determined that WJE's discovery of these deficient columns  and the City's issuance of the Second and Third Vacate Orders, constituted two new "occurrences" under the Policy.

55. After opening the Unilaterally Created Files under the Policy, Affiliated then sent two separate letters dated January 28, 2025, denying each so-called "claim." **Exhibits 7 and 8**.

56. Affiliated made identical statements in each of the January 28th letters denying coverage. Affiliated provided, that based on its "investigation" the structural issues identified "are not discrete as they have occurred overtime or during the building reconstruction activities that occurred several decades prior" and that its "investigation found no evidence of any direct physical loss or damage to insured property arising from" the respective events. Ex. 7 at 1, 4; Ex. 8 at 1, 4.

57. Affiliated further denied DICC Coverage for each of the Unilaterally Created Files, stating, "since our investigation found no direct physical loss or damage covered by the policy, this Additional Coverage does not apply to this reported claim." Ex. 7 at 4; Ex. 8 at 4.

58. Affiliated used these Unilaterally Created Files as its basis to sever, improperly, the relationship between the one and only Occurrence under the Policy—on January 28, 2024—and the City's issuance of the Second and Third Vacate Orders, and deny DICC Coverage for Park 1500's increased costs to address dangerous conditions in accordance with the Chicago Construction Code.

### D. *Affiliated's Claim Handling*

59. In a Claim correspondence dated June 5, 2024, Affiliated outlined the application of "Property Damage and Time Element" coverage under the Policy "related to the fracture/displacement of the 11-inch by 11-inch wood column located inside Unit 324," and found this Occurrence an insurable loss. Ex. 2.

60. Despite sending the June 5, 2024 letter after the City issued all three Vacate Orders, Affiliated's correspondence only refers to the First Vacate Order. It further ignores the additional two columns that are the subject of the Unilaterally Created Files.

61. Shortly thereafter, on or about June 26, 2024, Park 1500 received a copy of the adjuster's "REVISED 06.26.24" spreadsheet setting forth Affiliated's initial assessment of losses covered under the Policy for Park 1500's Claim. **Exhibit 9**. The spreadsheet shows that Affiliated limited the scope of, and its assessment of, Park 1500's Claim to investigation and remediation costs directly related to evaluating and repairing the column in Unit 324, and that Affiliated refused to pay certain expenses related to WJE's analysis and investigation of the Occurrence, noting "Not Loss Related". *Id.*

10

62.     Although Affiliated later made additional payments under the Policy related to property damage and professional fees after this initial June 2024 assessment, it continued to underpay on Park 1500's Claim by improperly limiting the scope of coverage and denying DICC coverage.

63.     While handling Park 1500's Claim, Affiliated repeatedly relied on its improper trifurcation of Park 1500's Claim as the basis to deny Park 1500 the DICC Coverage it is entitled to under the Policy. Affiliated has done this by refusing to evaluate information and losses related to the Second and Third Vacate Orders as part of Park 1500's Claim.

64.     For example, in a letter dated December 6, 2024 Affiliated used its consultant, ESi's report dated November 26, 2024, to limit the scope of Park 1500's claim to expenses directly related to investigating and repairing only the column in Unit 324. *See* Dec. 6, 2024 Ltr. attached as **Exhibit 10** and ESi's Nov. 6, 2024 Report attached as **Exhibit 11.**

65.     In that November 26, 2024 report, ESi made no mention of the timing and scope of the repairs required for the two other damaged columns subject of the Unilaterally Created Files or the timing and scope of repairs required for the City to lift the Third Vacate Order. Rather, ESi opined only that the repair to the Unit 324 column could have been "completed between May 1, 2024 and July 1, 2024." Ex. 11 at 2.

66.     Affiliated then used ESi's assessment of the timeliness of the repair to the column in Unit 324 to assert in its December 6th letter that Park 1500 had not acted diligently to address the displaced column in Unit 324 and limit the scope of coverage for Park 1500's Claim. Affiliated stated,

> "Pursuant to our recent communications, the Insured is required to perform the necessary repair or replacement of the damaged property with due diligence and dispatch. We are now ten (10) months post loss. Despite our reasonable approach to move the adjustment process along, the Insured has not ordered or taken the

11

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

necessary steps to begin the process to fabricate the materials based on the designs, which we find unacceptable."

Ex. 10 at 1. Affiliated then asserted that it would only "accept and honor the shoring expenses related to this loss that have been incurred by the Insured through November 30, 2024," and ignored WJE's findings related to the structural failure of other two columns as a result of the Occurrence and the enforcement of the Second and Third Vacate Orders, resulting from that Occurrence. *Id.* at 2.

67.     Throughout the claim process, Affiliated continued to treat the damage to the second and third columns as wholly unrelated to the January 28, 2024 Occurrence, which it had already deemed an insured physical loss.

68.     Despite receiving correspondence from the City, in a letter dated March 25, 2025, Affiliated denied ever receiving information from Park 1500 showing that the City intended to enforce any ordinance or law as a result of the Occurrence, and requested that Park 1500 provide this information for "review and coverage consideration." **Exhibit 12** at 4.

69.      With the third Vacate Order still effect, and the east wing of Building 1 still vacant, Affiliated sent a correspondence dated May 1, 2025 indicating it intended to "finalize" the Park 1500's Claim within fourteen (14) days. **Exhibit 13.**

70.     On June 19, 2025, Park 1500 received an email and updated spreadsheet from Affiliated stating that it had made a final loss determination concerning Park 1500's Claim, limiting its assessment to the damages related to the column in Unit 324. **Exhibit 14.** In the updated spreadsheet, Affiliated continued to assert that certain costs were unrelated to the Park 1500's Claim. *Id.*

71.     On or about June 27, 2025 Park 1500's claim advocate and Affiliated had a teleconference concerning the scope of coverage for Park 1500's Claim.

12

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

72.     In a letter dated June 30, 2025, Affiliated confirmed the June 27th call, confirmed it had received a copy of the correspondence from the City dated June 6, 2025, and requested to schedule a follow-up meeting in the second half of July with Park 1500 representatives and WJE, concerning the City's findings related to the Vacate Orders. **Exhibit 15.**

73.     The City's letter dated June 6, 2025 summarized the City's issuance of the three Vacate Orders. **Exhibit 6.** It further explained that pursuant to the Chicago Construction Code, Section 302.2 the City could not lift the Third Vacate Order until the dangerous structural failure, pursuant 14A-3-307.1 of the Chicago Construction Code, is abated or eliminated. *Id.*

74.     On or about June 30, 2025, Park 1500's claim advocate followed up with Affiliated. The claim advocate informed Affiliated that it had ignored certain payable invoices related to the damaged column in Unit 324 when adjusting the claim and further asserted that Affiliated had improperly denied coverage for certain shoring related invoices. She further challenged Affiliated's improper denial of DICC Coverage.

75.     In an email dated July 8, 2025, after reviewing the invoices provided by Park 1500, Affiliated adjusted its "final" loss determination upward, however, Affiliated continued disregard the existence of the Second and Third Vacate Orders and assert that Park 1500 was not entitled to reimbursement for certain shoring invoices. **Exhibit 16**. Affiliated further continued to improperly deny DICC Coverage under the Policy. *Id.*

76.     Representatives for Park 1500, WJE and Affiliated met in-person on August 14, 2025 to discuss the Park 1500 Claim and DICC Coverage. Affiliated sent an email that same day, summarizing the discussion and next steps:

**Next steps:**

- WJE will provide a detailed scope of work required to address the unsafe conditions and facilitate removal of the vacate order detailed in the June 6, 2025 letter from the City of Chicago Department of Buildings.

- WJE will submit five (5) outstanding invoices to FM Affiliated for coverage consideration.

**Exhibit 17.**

77. Thereafter, on October 31, 2025, Park 1500's insurance broker forwarded Affiliated a copy of the October 30, 2025 correspondence Park 1500 received from the City, citing the Construction Code sections that must be met and outlining the scope of work required for the City to lift the Third Vacate Order. **Exhibit 18.**

78. Affiliated acknowledged receipt of the City's correspondence in a letter dated November 6, 2025. **Exhibit 19.**

79. However Affiliated continued, and still continues, to improperly deny DICC Coverage, taking the position that the Occurrence (January 28, 2024) that it deemed previously, an insured physical loss, did not cause the City's enforcement of a law or ordinance (the issuance of the Second and Third Vacate Orders) to trigger DICC Coverage. *Id.* at 5.

80. This assertion contradicts the terms of the Policy's DICC Coverage, as the enforcement of the Chicago Construction Code which required repairs to the second and third columns directly arose from the insured physical loss caused by the Occurrence on January 28, 2024.

81. Throughout the claim process, Park 1500 and its consultant, WJE, provided all information requested by Affiliated's adjusters and consultants regarding the investigation of the Occurrence and resulting losses, including correspondence from the City related to the Vacate Orders and requirements for the re-occupancy of Building 1.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

82.     Park 1500 is entitled to DICC Coverage where the Occurrence triggered the City's enforcement action and repairs to all three columns are necessary to bring the location into compliance with the Chicago Construction Code and permit the displaced Park 1500 residents to return to their homes.

83.     Park 1500 is also entitled to reimbursement for WJE's unpaid fees related to its Claim under the Policy's Additional Coverage for Professional Fees.

84.     Affiliated has provided Park 1500 no evidence to support its conclusion that Park 1500 is not entitled to reimbursement for WJE's fees or DICC Coverage under the Policy, when Park 1500 has incurred expenses related to the City of Chicago's enforcement of its laws and ordinances arising directly from the Occurrence.

## FIRST CAUSE OF ACTION
### (Breach Of Contract)

85.     Park 1500 repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

86.     The Policy provides additional DICC Coverage up to the full Policy Limit of $87,190,000, as a result of any one "occurrence" as defined under the Policy.

87.     The Occurrence (*i.e.,* the January 28, 2024 Unit 324 collapsed timber column) constituted a covered physical loss under the Policy, which directly resulted in the City's enforcement of its laws and ordinances.

88.     Because the Occurrence is a covered physical loss under the Policy, giving rise to the City's enforcement of its laws and ordinances, DICC Coverage was triggered under the Policy.

89.     Park 1500's costs and expenses relating to the City's enforcement of its laws and ordinances and the scope of work required to lift all three Vacate Orders are covered as a single claim under the Policy's DICC Coverage.

15

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

90.     Further, the Policy includes Additional Coverage for "Professional Fees" when its insured, Park 1500 incurs reasonable and necessary expenses related to "producing and certifying particulars or details to determine the amount of loss payable under this Policy." Ex. 1, Additional Coverages, 23.

91.     The Professional Fees Coverage is up to a sublimit of $100,000 under the Policy.

92.     WJE's costs constitute reasonable and necessary expenses related to "producing and certifying particulars or details to determine the amount of loss payable under this Policy."

93.     Park 1500 has performed all of its duties and obligations under the Policy, including the payment of substantial insurance premiums, and has satisfied all conditions of the Policy, or such performance or satisfaction has been waived or otherwise excused by the conduct of Affiliated or by operation of law.

94.     Throughout the claim process, Park 1500 sent Affiliated relevant invoices related to its Claim. In response, Affiliated sent Park 1500 spreadsheets related to its adjustment of the Claim. In those spreadsheets, Affiliated improperly adjusted certain invoiced amounts downward for certain line items, providing that the work was either "not related to the discrete event" or "not loss related."

95.     Based on Affiliated's spreadsheets, as of July 8, 2025, Park 1500 claimed $2,895,670.54 in expenses related Professional Fees, property damage losses related to the Occurrence, and the City's enforcement of its laws arising therefrom. Affiliated, however, only approved payment for $1,368,158.49. It claimed that the remaining $1,527,512.05 of costs incurred were either not related to the loss, or that they were claimed outside of its arbitrability allotted ten-month time period for repair. (Park 1500's total claim was $3,395,670.54, as of July 8, 2025, however $500,000 was paid out under the Policy for tenant related expenses unrelated to

16

property damage, Professional Fees and DICC Coverage. Park 1500 has excluded the $500,000 from these calculations based on Affiliated's spreadsheet.)

96. In breach of its obligations under the Policy, Affiliated has failed and refused to pay the full amount it owes Park 1500 under the Additional DICC Coverage and Professional Fees Coverage for reasonable and necessary costs and expenses already incurred by Park 1500 as a result of the insured Occurrence. It has underpaid certain line items related to the damage to the column in Unit 324, and improperly denied coverage to Park 1500 for ongoing or future costs and expenses related to the Occurrence and Park 1500's efforts to comply with the laws and ordinances of the City.

97. As a direct result of its policy breaches, Affiliated is liable to Park 1500 for at least $1,527,512.05 in fees and expenses incurred by Park 1500 as of July 8, 2025, relating to the Occurrence.

## SECOND CAUSE OF ACTION
**(Declaratory Relief)**

98. Park 1500 repeats and realleges the allegations in the foregoing paragraphs, as if fully set forth herein.

99. An actual, present, and justifiable controversy exists between Park 1500 and Affiliated regarding the applicability of Additional Coverage under the DICC Coverage provision of the Policy and the scope of Additional Coverage for Professional Fees.

100. First, the Policy provides Additional DICC Coverage when its insured, Park 1500 has costs resulting from its obligation to comply with a law or ordinance. *See* Ex. 1, Additional Coverages, 11.

101. Park 1500 and Affiliated disagree on the applicability of the Policy's DICC Coverage to the expenses and costs Park 1500 will incur related to the Occurrence which was an

17

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

"insured physical loss" under the Policy directly resulting in the City's enforcement of its laws and ordinances.

102. DICC Coverage is subject to the total Policy Limit of $87,190,000 for any one "occurrence" under the Policy.

103. Second, Park 1500 and Affiliated disagree as to the scope of WJE's work that constitutes "reasonable and necessary expenses related to 'producing and certifying particulars or details to determine the amount of loss payable under this Policy.'" Ex. 1, Additional Coverages, 23.

104. The Professional Fees Coverage is up to a sublimit of $100,000 under the Policy.

105. Wherefore, Park 1500 seeks a declaratory judgment that:

    a. Affiliated has improperly denied Park 1500 DICC Coverage under the Policy.

    b. Park 1500 is entitled to DICC Coverage, up to the full Policy Limit, for ongoing or future costs and expenses related to the Occurrence and Park 1500's efforts to comply with the laws and ordinances of the City. Park 1500 estimates its total costs and expenses related to the Occurrence will be approximately $9 Million.

    c. Park 1500 is entitled to the Policy's Additional Coverage for Professional Fees for WJE's ongoing or future professional fees and expenses relating to the Occurrence up to the Policy's sublimit of $100,000.

## **PRAYER FOR RELIEF**

Wherefore, for the foregoing reasons, Plaintiff Park 1500 prays for judgment as follows:

With respect to the First Cause of Action, awarding Park 1500 actual damages for Affiliated's Policy breaches, prejudgment interest, post-judgment interest, reasonable attorneys' fees, and other costs.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

With respect to the Second Cause of Action, declaring that Park 1500 is entitled to DICC Coverage up to the full Policy Limit under the Policy for all ongoing and future expenses and costs for the Occurrence and declaring that Park 1500 is entitled to reimbursement under the Additional Coverage for Professional Fees provision for WJE's ongoing and future professional fees and expenses related to the Occurrence, up to the Policy's sublimit of $100,000.

On all Counts, such other relief as the Court deems just and proper, including but not limited to reasonable attorneys' fees, costs, and pre- and post-judgment interest.

Dated: March 17, 2026

/s/ *Kelly Koss*

Kenneth M. Gorenberg
Kelly Koss
Alexandra Dumezich
Barnes & Thornburg, LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606-2833
T: (312) 357-1313
F: (312)759-5646
Kenneth.Gorenberg@btlaw.com
Kelly.Koss@btlaw.com
Alexandra.Dumezich@btlaw.com
Firm No. 32715

*Attorneys for Park 1500 Lofts
Condominium Association*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

PARK 1500 LOFTS CONDOMINIUM ASSOCIATION )
                                       )
        Petitioner,                 )
                                         )
       v.                          )     Case No. **2026CH02542**
                                         )
AFFILIATED FM INSURANCE COMPANY     )
                                         )
       Respondent.              )

## JURY DEMAND

NOW COMES Petitioner Park 1500 Lofts Condominium Association, by and through its

attorneys, Barnes & Thornburg, LLP and hereby prays for a trial by jury.

Respectfully submitted,

Dated: March 17, 2026               /s/ *Kelly Koss*

Kenneth M. Gorenberg
Kelly Koss
Alexandra Dumezich
Barnes & Thornburg, LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606-2833
T: (312) 357-1313
F: (312)759-5646
Kenneth.Gorenberg@btlaw.com
Kelly.Koss@btlaw.com
Alexandra.Dumezich@btlaw.com
Firm No. 32715

*Attorneys    for    Park    1500    Lofts*
*Condominium Association*

1

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |  |
|---|---|---|
| PARK 1500 LOFTS CONDOMINIUM ASSOCIATION | ) ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **2026CH02542** |
| | ) | |
| AFFILIATED FM INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) ) | |

**PARK 1500 LOFTS CONDOMINIUM ASSOCIATION'S RULE 222 AFFIDAVIT**

I, Kelly Koss, an attorney for the plaintiff Park 1500 Loft Condominium Association ("Park 1500"), state under oath that I have personal knowledge of the facts stated in this affidavit and that Park 1500 seeks damages in excess of $50,000.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Dated: March 17, 2026

Respectfully submitted,

Park 1500 Lofts Condominium Association

By: ___/s/ Kelly Koss___

Kenneth M. Gorenberg
Kelly Koss
Alexandra Dumezich
Barnes & Thornburg, LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606-2833

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

T: (312) 357-1313
F: (312)759-5646
Kenneth.Gorenberg@btlaw.com
Kelly.Koss@btlaw.com
Alexandra.Dumezich@btlaw.com
Firm No. 32715

*Attorneys for Park 1500 Condominium Association*

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 1



Member of the FM Global Group

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Thank you for placing your property insurance with AFM. We believe insurance should be straightforward and certain. That is why our proVision® 4100 policy is easy to read and navigate.

With transaction efficiency and seamless global coverage, AFM will help protect your business. In partnering with us, you have the strength of the FM Global Group behind you. That includes a strong balance sheet, an alternative to shared and layered programs, claims advocacy and our exclusive market-leading loss prevention advice.

With nearly 200 years of consulting experience as property specialists, we are eager to identify, prioritize and reduce future loss with you and your broker in a way that makes practical and affordable sense.

This engineering expertise, combined with broad coverage, will provide you peace of mind and allow you to focus on what matters most — making your enterprise thrive. To achieve this, we are committed to a long and mutually beneficial relationship.

It is our hope that you and your broker will take advantage of the tools and resources we offer, namely project plan reviews, web-based training, onsite policy workshops and AFM Online, which provides your risk analytics and policy contract documents.

Respectfully,

Ziad Alex S Tadmoury
AFM Division Manager

FILED DATE: 3/17/2026 3:32 PM    2026CH02542

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# Loss Reporting and Contact Information
# Chicago Operations



**Claims Manager:**

Matthew Zwayer
Affiliated FM Insurance Company
300 South Northwest Highway
Suite 100
Park Ridge, IL 60068
Tel: 847-430-7402
Matthew.Zwayer@fmglobal.com

### Property Loss Reporting Procedure:

To ensure that you receive prompt claims service, be sure to report a loss immediately. This enables us to provide you a professional property adjuster to examine your loss. Your loss may give rise to a claim under your Affiliated FM Insurance Company policy.

### Notice of Loss:

The notice and report of any loss under an Affiliated FM Insurance Company policy may be communicated by:

- calling the 24-hour claims hotline: **1-877-NEW-LOSS (1) 877 639 5677** or
- via email to **newlosschicago@affiliatedfm.com**

If this first notice and report is made orally, it should be confirmed in writing including at least the same information as was provided in the oral first notice and report.

### Leaving a Message:

When leaving a message, please include the following information:

- Name and phone number of person to contact
- A brief description of the loss

A claims adjuster will return your call promptly.

---

**Account Engineer:**

**Gabriel G. Salazar**
Affiliated FM Insurance Company
300 South Northwest Highway
Suite 100
Park Ridge, IL 60068
Tel: 847-430-7537
gabriel.salazar@affiliatedfm.com

**Jurisdictional Services:**

For more information on our jurisdictional inspections services, please contact the Account Engineer as listed above.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



**Member of the FM Global Group**

**Multistate**
**COMPLAINT NOTICE**

The following states require Affiliated FM Insurance Company to notify insureds that should you have an inquiry or complaint about insurance in one of these states, you may contact your Insurance Company or the State Department of Insurance as listed below:

<u>Insurance Company</u>

AFFILIATED FM INSURANCE COMPANY
Corporate Affairs Department
P.O. Box 7500
Johnston, Rhode Island 02919
(800) 343-7722

<u>State Department of Insurance</u>

Arkansas Insurance Department
Consumer Service Division
1 Commerce Way, Suite 102
Little Rock, Arkansas 72202
1-800-852-5494 or (501) 371-2640
E-mail: Insurance.Consumers@Arkansas.gov

Texas Department of Insurance
https://www.tdi.texas.gov/consumer/get-help-with-an-insurance-complaint.html

Illinois Department of Insurance
Consumer Affairs and Information
320 West Washington Street
Springfield, Illinois 62767-0001
1-866-445-5364
E-mail: consumer_complaints@ins.state.il.us
https://mc.insurance.illinois.gov/messagecenter.nsf

Virginia Bureau of Insurance
PO Box 1157
Richmond, VA 23218
1-877-310-6560 or 1-800-371-9185
www.scc.virginia.gov/boi

Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204-2787
1-800-622-4461 or (317) 232-2385
www.in.gov/idoi

Wisconsin Office of the Commissioner
of Insurance
125 South Webster Street
PO Box 7873
Madison, WI 53707-7873
1-800-236-8517
(608) 266-0103 in Madison

*This Notice is provided only for informational purposes. It does not modify, limit or enlarge insurance policy provisions. The actual rights and responsibilities of the insurer and the insured are contained in the policy's terms and conditions.*

AFM 4028 (11/22)

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

FILED DATE: 3/17/2026 3:32 PM   2026CH02542





FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Affiliated FM Insurance Company
P.O Box 7500
Johnston, RI 02919

**DECLARATIONS PAGE**

| Policy No. | Previous Policy No. | Date of Issue |
|---|---|---|
| 1114546 | 1100641 | 26 April 2023 |
| **Account No.** | | |
| 55994 | | |

In consideration of this Policy's Provisions, Conditions, Stipulations, Exclusions and Limits of Liability, and the premium charged, Affiliated FM Insurance Company, hereinafter referred to as the "Company", does insure:

> **Insured:**
>
> Park 1500 Lofts Condominium Association
> 1500 West Monroe
> c/o Building Office
> Chicago, Illinois, 60607
> United States of America
>
>
> (For complete title, see Policy.)

The term of this Policy is from **1 May 2023 at 12:01 a.m., Standard Time, to 1 May 2024 at 12:01 a.m., Standard Time,** at the Locations of property involved as provided in this Policy.

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

This Policy is made and accepted subject to the above provisions and those hereinafter stated, which are made a part of this Policy, together with such other provisions and agreements as may be added to this Policy.

In Witness, this Company has issued this Policy at its office in Park Ridge, Illinois, on 26 April 2023.



Amanda Planey                                    Malcolm Roberts

**PRO DEC 4100 (04/15)**                          *© 2017 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542


Member of the FM Global Group



FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# DECLARATIONS

## A. POLICY TERM

FROM:      1 May 2023 12:01 a.m. Standard Time
TO:          1 May 2024 12:01 a.m. Standard Time

## B. NAMED INSURED

Park 1500 Lofts Condominium Association

## C. POLICY LIMIT

This Company's total limit of liability, including any insured Business Interruption loss, will not exceed the Policy Limit of USD 87,190,000 as a result of any one **occurrence** subject to the respective sub-limits of liability shown elsewhere in this Policy.

## D. POLICY TERRITORY

Coverage provided by this Policy is limited to property while located within the United States of America.

### Cyber Coverage Territory

Coverage provided in Data Restoration; Data Service Provider Property Damage and Business Interruption; and Owned Network Interruption is limited to anywhere in the world except Cuba; Iran; North Korea; Russian Federation; Sudan; Syria; and Crimea, Donetsk People's Republic (DPR) and Luhansk People's Republic (LPR) regions of Ukraine.

## E. INSURANCE PROVIDED

### Location Schedule

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as follows:

| Loc. No. | Title | Address |
|---|---|---|
| 001 | | 6 South Laflin Street and 1500 West Monroe and 1501-1507 West Madison, Chicago, Illinois, 60607, USA |





Member of the FM Global Group

## F. SUB-LIMITS

Unless otherwise stated below or elsewhere in this Policy, the following sub-limits of liability, including any insured Business Interruption loss, will be the maximum payable and will apply on a per **occurrence** basis.

The sub-limits stated below or elsewhere in this Policy are part of and not in addition to the Policy Limit.

When a limit of liability applies to a **location** or property, such limit of liability will be the maximum amount payable for all loss or damage.

There shall be no liability under this Policy when "NOT COVERED" is shown as a sublimit.

| | |
|---|---|
| Accounts Receivable | USD 1,000,000 |
| Arson or Theft Reward | USD 100,000 |
| Attraction Property | USD 100,000 |
| **boiler and machinery** | Policy Limit |
| Brand Protection | Policy Limit |
| Business Interruption | USD 1,000,000, not to exceed the following:<br><br>1. USD 1,000,000 for Gross Earnings, not to exceed 30 days for **ordinary payroll**<br><br>2. USD 1,000,000 for Gross Profits, not to exceed the following:<br><br>    a. 12 months<br><br>    b. 30 days for **ordinary payroll**<br><br>3. USD 1,000,000 for Rental Income<br><br>4. USD 1,000,000 for Extra Expense |
| Change of Temperature | USD 100,000 |
| Civil or Military Authority | 30 days |
| Communicable Disease - Property Damage and Communicable Disease - Business Interruption combined | USD 1,000 **annual aggregate**, not to exceed 12 months |
| **condominium parcel** | USD 25,000, not to exceed USD 10,000 per item |
| Contractual Penalties | USD 100,000 |
| Crisis Management | USD 100,000, not to exceed 30 days |

**PRO S-1 4100 (01/20)**
**Policy No. 1114546**

**Page 2 of 8**
*© 2019 AFM. All rights reserved.*

 

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

| | |
|---|---|
| **cyber event** | 1. USD 1,000 **annual aggregate** for Data Restoration and Owned Network Interruption combined<br><br>2. USD 1,000 **annual aggregate** for Data Service Provider - Property Damage and Data Service Provider - Business Interruption combined<br><br>3. USD 50,000 **annual aggregate** for loss or damage to **stock in process** or finished goods manufactured by or for the Insured caused by or resulting from **cyber event** that impacts the processing, manufacturing, or testing of such property or while it is otherwise being worked on. |
| Data Restoration | USD 500,000 **annual aggregate** |
| Data Service Provider - Property Damage and Data Service Provider - Business Interruption combined | USD 50,000 **annual aggregate** |
| Debris Removal | Policy Limit |
| Decontamination Costs | Policy Limit |
| Deferred Payment | USD 100,000 |
| Demolition and Increased Cost of Construction | Policy Limit |
| Earth Movement | USD 10,000,000 **annual aggregate**, not to exceed USD 50,000 **annual aggregate** for Data Service Provider - Business Interruption, Data Service Provider - Property Damage, Errors and Omissions, Off-Premises Service Interruption - Business Interruption, Off-Premises Service Interruption - Property Damage, Supply Chain and Unnamed Property, combined |
| Errors and Omissions | USD 1,000,000 |
| Expediting Expenses | USD 250,000 |
| Extended Period of Liability | 90 days |
| **fine arts** | USD 250,000, not to exceed USD 10,000 per item for **irreplaceable fine arts** |
| Flood | USD 10,000,000 **annual aggregate**, not to exceed USD 50,000 **annual aggregate** for Data Service Provider - Business Interruption, Data Service Provider - Property Damage, Errors and Omissions, Off-Premises Service Interruption - Business Interruption, Off-Premises Service Interruption - Property Damage, Supply Chain and Unnamed Property, combined |
| Green Coverage | USD 50,000 not to exceed 25% of the amount of the property damage loss |





| | |
|---|---|
| Ingress/Egress | USD 500,000 |
| Land and Water Clean Up Expense | USD 50,000 **annual aggregate** |
| Leasehold Interest | USD 250,000 |
| Locks and Keys | USD 100,000 |
| Logistics Extra Cost | USD 100,000 |
| Money and Securities | USD 100,000 |
| Newly Acquired Property | USD 2,500,000 |
| Off-Premises Service Interruption - Business Interruption | USD 500,000 |
| Off-Premises Service Interruption - Property Damage | USD 500,000 |
| Owned Network Interruption | Included in **cyber event** limit |
| Professional Fees | USD 100,000 |
| Property Removed from a Location | Policy Limit |
| Protection and Preservation of Property - Business Interruption | USD 1,000,000 |
| Protection and Preservation of Property - Property Damage | Policy Limit, not to exceed USD 250,000 for security costs |
| Research and Development | Policy Limit |
| Soft Costs | USD 100,000 |
| Supply Chain | USD 500,000 |
| Tax Treatment | USD 100,000 |
| Tenants Legal Liability | USD 100,000 |
| Terrorism | USD 100,000 **annual aggregate**, not to exceed USD 100,000 **annual aggregate** for Flood and Property Removed from a Location combined |
| Terrorism: Supplemental United States Certified Act of Terrorism Endorsement(s) | USD 100,000 for property located in the United States of America |

**PRO S-1 4100 (01/20)**
**Policy No. 1114546**

*© 2019 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542





Member of the FM Global Group

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

| Transit | USD 500,000, not to exceed USD 250,000 for Business Interruption |
|---|---|
| Unnamed Property | USD 1,000,000 |
| **valuable papers and records** | USD 500,000, not to exceed USD 10,000 per item for **irreplaceable valuable papers and records** |

## Condominium Endorsement

| Condominium Maintenance Fees | Policy Limit |
|---|---|
| Contingent Real Property | USD 250,000 |
| Emergency Evacuation Expense | USD 250,000 |
| Tenant Relocation Expense | USD 250,000 |

# G. QUALIFYING PERIODS AND DEDUCTIBLES

### QUALIFYING PERIODS

This Company will not be liable for loss or damage unless the Qualifying Period below is exceeded. When the Qualifying Period is exceeded, the loss will be calculated beginning from the time of loss or damage. The Qualifying Periods for the following coverages are as follows:

| Communicable Disease - Property Damage and Communicable Disease - Business Interruption | 48 hours |
|---|---|
| Data Restoration | 48 hours |
| Data Service Provider - Property Damage and Data Service Provider - Business Interruption | 48 hours |
| Off-Premises Service Interruption - Property Damage and Off-Premises Service Interruption - Business Interruption | 48 hours |
| Owned Network Interruption | 48 hours |





**DEDUCTIBLES**

This Company will not be liable for loss or damage, including any insured Business Interruption loss, in any one **occurrence** until the amount of loss or damage exceeds the deductible amount shown below and then this Company will only be liable for its share of the loss or damage in excess of the deductible amount.

The following deductible amounts shall apply per **occurrence**, unless otherwise stated, for insured loss or damage under this Policy.

When two or more deductibles apply to a single **occurrence**, then no more than the largest deductible amount will apply. However, this Policy allows for the application of separate and distinct deductibles and deductibles for specific loss or damage as shown below.

When a day equivalent deductible is stated below it is calculated as follows. The 100% daily actual annual Business Interruption value that would have been earned had no loss occurred at the **location** where the physical damage happened plus that proportion of the 100% annual business interruption value at all other **locations** where Business Interruption loss ensues, divided by the number of annual working days.

When a % percent deductible is stated below it is calculated as follows:

1.  The value of property at the time such loss or damage at the **location** where loss or damage occurs, in accordance with the valuation section of this Policy.

2.  The annual Business Interruption value that would have been earned at the **location** where loss or damage occurs plus that proportion of the 100% Business Interruption value at all other **locations** where Business Interruption loss ensues, in accordance with the Business Interruption section of this Policy (if any).

| | |
|---|---|
| **condominium parcel** | USD 1,000 |
| earthquake | USD 100,000 per **location** |
| Flood | USD 100,000 per **location** |
| **water damage** | USD 25,000 per **location** |
| All Other Losses | USD 10,000 |

FILED DATE: 3/17/2026 3:32 PM   2026CH02542





Member of the FM Global Group

## H. SPECIAL TERMS AND CONDITIONS

### 1. Additional Named Insured - PRO 65 (04/15)

The following are added as Additional Named Insured(s) on property described below, as their interest may appear:

| Additional Named Insured and Address | Location/Interest |
|---|---|
| RS Commercial, LLC<br>1501 West Madison Street<br>Chicago, Illinois, 60607<br>United States of America | Real Property Only |

### 2. Mortgagee/Lenders Loss Payable - PRO 66 (04/15)

Subject to the GENERAL CONDITIONS, MORTGAGEE/LENDERS LOSS PAYABLE, loss, if any, under this Policy will be adjusted with and made payable to the Insured and the following, as their interest may appear:

| Mortgagee/Lender and Address | Location/Interest |
|---|---|
| Lakeside Bank, ISAOA<br>141 West Jackson St.<br>Suite 130-A<br>Chicago, Illinois, 60604<br>United States of America | All Locations |

### 3. United States Certified Act of Terrorism - PRO 207 (01/20)

As respects the United States, its territories and possessions and the Commonwealth of Puerto Rico, the definition of **terrorism** is declared null and void and it is agreed that a **Certified Act of Terrorism** under the terms of the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT attached to this Policy shall be considered **terrorism** within the terms of this Policy. Notwithstanding anything contained in this Policy to the contrary, this Policy provides coverage for direct physical loss or damage to insured property and any resulting BUSINESS INTERRUPTION loss, as provided in the Policy, caused by or resulting from a **Certified Act of Terrorism** only to the extent coverage is provided under the terms and conditions of the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT attached to this Policy. Any difference in limit between loss recoverable under the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT and this Policy is not recoverable under this Policy.

### 4. Condominium Parcel Definition – PRO 620 (01/17)

**condominium parcel** means tenant's personal property in the Insured's custody at a **described location** awaiting pick up by a regular commercial licensed shipping or delivery service or delivery to a tenant.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



## I.  <u>INDEX OF FORMS</u>

The following forms are made part of this Policy:

| <u>Title</u> | <u>Form No.</u> | <u>Edition</u> |
|---|---|---|
| Declarations Page | PRO DEC 4100 | (04/15) |
| Declarations | PRO S-1 4100 | (01/20) |
| All Risk Coverage | PRO AR 4100 | (01/23) |
| Condominium Endorsement | PRO CO CRP 4100 | (01/17) |
| Supplemental United States Certified Act of Terrorism Endorsement | AFM 7312 | (06/21) |
| Illinois Amendatory Endorsement | AFM 1726 | (01/23) |

**PRO S-1 4100 (01/20)**
**Policy No. 1114546**

**Page 8 of 8**
*© 2019 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# ALL RISK COVERAGE

## Table of Contents

**ALL RISK COVERAGE** ...................................................................................................................**1**

   A.    **PROPERTY INSURED** .................................................................................................. **1**

   B.    **PROPERTY EXCLUDED** ............................................................................................... **1**

   C.    **EXCLUSIONS** ............................................................................................................ **2**

   D.    **ADDITIONAL COVERAGES** .......................................................................................... **5**

**BUSINESS INTERRUPTION** .......................................................................................................**18**

   A.    **LOSS INSURED** ........................................................................................................ **18**

   B.    **BUSINESS INTERRUPTION COVERAGE** ....................................................................... **18**

   C.    **PERIOD OF LIABILITY** .............................................................................................. **21**

   D.    **BUSINESS INTERRUPTION EXCLUSIONS** .................................................................... **22**

   E.    **BUSINESS INTERRUPTION COVERAGE EXTENSIONS** .................................................... **23**

**LOSS ADJUSTMENT AND SETTLEMENT** ..................................................................................**30**

   A.    **ABANDONMENT** ...................................................................................................... **30**

   B.    **APPRAISAL** ............................................................................................................. **30**

   C.    **COLLECTION FROM OTHERS** .................................................................................... **30**

   D.    **COMPANY OPTION** ................................................................................................. **30**

   E.    **CURRENCY FOR LOSS PAYMENT** .............................................................................. **30**

   F.    **LEGAL ACTION AGAINST THIS COMPANY** ................................................................. **30**

   G.    **LOSS ADJUSTMENT AND PAYABLE** ............................................................................ **31**

   H.    **OTHER INSURANCE** ................................................................................................. **31**

   I.    **REQUIREMENTS IN CASE OF LOSS** ........................................................................... **31**

   J.    **SETTLEMENT OF CLAIMS** ........................................................................................ **32**

   K.    **SUBROGATION** ....................................................................................................... **32**

   L.    **VALUATION** ........................................................................................................... **33**



FILED DATE: 3/17/2026 3:32 PM   2026CH02542

**GENERAL CONDITIONS** ................................................................................................**35**

    **A.**    **APPLICATION OF POLICY TO DATE OR TIME RECOGNITION**.................................................. 35

    **B.**    **CANCELLATION/NON-RENEWAL** ........................................................................................... 35

    **C.**    **CONFORMITY TO STATUTE** ................................................................................................. 35

    **D.**    **FIRST NAMED INSURED** ...................................................................................................... 35

    **E.**    **INCREASE IN HAZARD**......................................................................................................... 36

    **F.**     **INSPECTIONS** ..................................................................................................................... 36

    **G.**    **LIBERALIZATION CLAUSE** ................................................................................................. 36

    **H.**    **MISREPRESENTATION AND FRAUD**...................................................................................... 36

    **I.**     **MORTGAGEE/LENDERS LOSS PAYABLE** ............................................................................. 36

    **J.**     **POLICY MODIFICATION** ...................................................................................................... 37

    **K.**    **REINSTATEMENT OF LIMITS AFTER A LOSS**........................................................................ 38

    **L.**    **REPRESENTATION OF RISK**................................................................................................. 38

    **M.**    **SANCTIONS** ........................................................................................................................ 38

    **N.**    **SUSPENSION**....................................................................................................................... 38

    **O.**    **TRANSFER OF RIGHTS AND DUTIES UNDER THIS POLICY** .................................................... 38

**DEFINITIONS** ..............................................................................................................**39**

*© 2021 AFM. All rights reserved.*

# ALL RISK COVERAGE

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

## A. PROPERTY INSURED

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, at or within 1,000 feet of a **described location**, to the extent of the interest of the Insured in such property.

1. Real Property in which the Insured has an insurable interest.

2. Personal Property:

   a) Owned by the Insured.

   b) Consisting of improvements and betterments in which the Insured has an insurable interest.

   c) Of directors, officers and employees of the Insured.

   d) Of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

   e) Of others in the Insured's custody to the extent of the Insured's legal liability for insured physical loss or damage to such Personal Property.

   This Company may defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage to such Personal Property. This Company may, without prejudice, investigate, negotiate and settle any claim or suit as this Company deems expedient.

This Policy also insures the interest of contractors and subcontractors in insured property during construction, while at or within 1,000 feet of a **described location**, to the extent that the Insured has agreed, prior to loss, to keep such interest insured for insured physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and will not extend to any Business Interruption coverage provided in this Policy.

## B. PROPERTY EXCLUDED

This Policy excludes the following except as otherwise stated in this Policy:

1. Land, water or any substance in or on land.

2. Growing crops, standing timber or animals.

3. Bridges and tunnels intended for use by motor vehicles licensed for highway use.

4. Reservoirs, canals, dikes or dams.

5. Docks, piers or wharves which are not a structural part of a building.

6. Currency, money, notes or securities, except as provided by the Money and Securities coverage in this Policy.

7. Motor vehicles licensed for highway use or owned by directors, officers or employees of the Insured.

8. Satellites, aircraft or watercraft, except if on land, unfueled and manufactured by the Insured.



9.  Property sold by the Insured under conditional sale, trust agreement, installment payment or other deferred payment plan after delivery to the customer, except as provided by the Deferred Payment coverage in this Policy.

10. Underground mines or mine shafts or any property within such mine or shaft.

11. Property while in transit, except as otherwise provided in this Policy.

12. Electronic data, programs or software, except when incorporated into physical goods intended to be sold as:

    a)  Finished goods manufactured by the Insured; or

    b)  Other merchandise not manufactured by the Insured;

    or as provided by the Data Restoration coverage in this Policy.

13. Property while located **offshore**, except as provided by the Transit coverage in this Policy.

## C. <u>EXCLUSIONS</u>

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

**GROUP I**: This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss or damage:

1.  Nuclear reaction or nuclear radiation or radioactive contamination. However:

    a)  If physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, radiation or radioactive contamination.

    b)  This Policy does insure physical damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the **location,** provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel on the **location**. This coverage does not apply to any act, loss or damage excluded in Group I Item 2g of this Exclusions clause.

    This exclusion Group I Item 1 and the exceptions in Group I Item 1a and Group I Item 1b above do not apply to any act, loss or damage which also comes within the terms of exclusion Group I Item 2c of this Exclusions clause.

2.  a)  Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

    i)   Government or sovereign power (de jure or de facto);

    ii)  Military, naval or air forces; or

    iii) Agent or authority of any party specified in i) or ii) above.

    b)  Hostile or warlike cyberattack in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected cyberattack by any:

    i)   Government or sovereign power (de jure or de facto);

    ii)  Military, naval or air force; or

    iii) Agent or authority of any party specified in i) or ii) above.

    c)  Discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**PRO AR 4100 (01/23)**                                                                                                          **Page 2 of 42**
*© 2021 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

d)   Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

e)   Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

f)   Risks of contraband, or illegal transportation or trade.

g)   **Terrorism**, including action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**, except to the extent provided in the Terrorism coverage of this Policy.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion or any other risk of physical loss or damage covered elsewhere in this Policy.

If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Items 2a or 2b of this Exclusions clause then Group I Items 2a or 2b applies in place of this Group I Item 2g exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Item 2c of this Exclusions clause then Group I Item 2c applies in place of this Group I Item 2g exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Item 2d of this Exclusions clause then Group I Item 2d applies in place of this Group I Item 2g exclusion.

If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this Group I Item 2g exclusion applies in place of Group I Item 1 of this Exclusions clause.

3.   Any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time by:

a)   An Insured or any proprietor, partner, director, trustee, officer or employee of an Insured; or

b)   Any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured. This coverage does not apply to any act excluded in Group I Item 2g of this Exclusions clause. In no event does this Policy cover loss by theft by any individual specified in a or b above.

4.   Lack of incoming electricity, fuel, water, gas, steam or refrigerant; outgoing sewerage; or incoming or outgoing voice, data or video; all when caused by an event off the **location**, except as provided by the Data Service Provider and Off-Premises Service Interruption coverages in this Policy. If the lack of such a service directly causes insured physical damage at the **location**, then only that resulting damage is insured.

5.   **Earth movement**, except as otherwise provided in this Policy.

6.   **Flood**, except as otherwise provided in this Policy.

7.   Seepage or influx of water from natural underground sources.

**GROUP II**: This Policy excludes the following, however, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

1.   Wear and tear, deterioration, depletion, rust, corrosion, erosion, inherent vice or latent defect.

2.   Faulty workmanship, material, construction or design.

3.   Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested or otherwise worked on.

*© 2021 AFM. All rights reserved.*



4. Loss or damage caused by or resulting from:

    a) Changes of temperature, except damage to machinery or equipment including fire protective equipment;

    b) Changes in relative humidity,

    All whether atmospheric or not, except as provided by the Change of Temperature and Off-Premises Service Interruption coverages in this Policy.

5. Settling, cracking, shrinking, bulging or expansion of:

    a) Foundations.

    b) Walls.

    c) Floors.

    d) Pavements or roadways.

    e) Roofs.

    f) Ceilings.

6. Loss or damage to personal property in the open from rain, sleet, snow, sand or dust.

7. Theft of precious metal or stones, except when such property is used by the Insured for industrial purposes.

8. Insect, animal or vermin damage.

9. Loss or damage to the interior portion of buildings under construction from rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

**GROUP III**: This Policy excludes:

1. Indirect or remote loss or damage.

2. Interruption of business, except to the extent provided in this Policy.

3. Loss of market or loss of use.

4. Loss or damage or deterioration arising from any delay.

5. Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

6. Loss from enforcement of any law or ordinance:

    a) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

    b) Requiring the demolition of any property, including the cost in removing its debris;

    Except as provided by the Decontamination Costs and Demolition and Increased Cost of Construction coverages in this Policy.

7. Loss or damage resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense.

8. **Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage

*© 2021 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

caused by such **contamination** may be insured. This exclusion does not apply to radioactive contamination which is excluded elsewhere in this Policy.

9.  Shrinkage, evaporation or loss of weight, unless directly resulting from other physical damage not excluded by this Policy.

10. Changes in color, flavor, texture or finish, unless directly resulting from other physical damage not excluded by this Policy.

# D. ADDITIONAL COVERAGES

The Additional Coverages below are subject to all the terms and conditions of this Policy including, but not limited to, the limits of liability, deductibles and exclusions shown in the Declarations section.

## 1. Accounts Receivable

This Policy covers amounts which the Insured is unable to collect as a direct result of insured physical loss or damage to accounts receivable records at a **location**.

Coverage includes:

a)  Interest charges on any loan to offset impaired collections pending repayment of sums that cannot be collected. Unearned interest charges and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted.

b)  Collection expenses in excess of normal collection costs.

c)  Other reasonable expenses incurred by the Insured in recreating records of accounts receivable.

After payment of loss by this Company, all amounts recovered by the Insured on accounts receivable for which the Insured has been indemnified will belong to and be paid to this Company by the Insured up to the total amount of loss paid by this Company. All recoveries in excess of such amounts will belong to the Insured.

Accounts Receivable Exclusions: As respects Accounts Receivable, the following additional exclusions apply:

This Policy does not cover shortage resulting from:

a)  Bookkeeping, accounting, or billing error or omission.

b)  Alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property.

## 2. Arson or Theft Reward

This Policy covers payment of any reward offered by the Insured or on the Insured's behalf for information that leads to conviction of the perpetrator(s) of insured:

a)  Arson to; or

b)  Theft of;

Insured property.

## 3. Brand Protection

This Policy gives control of physically damaged property consisting of finished goods or merchandise manufactured by or for the Insured as follows:

a) The Insured will have full rights to the possession and control of damaged property in the event of insured physical loss or damage to such property provided proper testing is done to show which property is physically damaged.

b) The Insured using reasonable judgment will decide if the physically damaged property can be reprocessed or sold.

  Physically damaged property judged by the Insured to be:

  i) Unfit for reprocessing or selling will not be sold or disposed of except by the Insured, or with the Insured's consent.

  ii) Fit for reprocessing or selling and this Company elects to take all or any part of physically damaged branded and labeled property, the Insured may at this Company's expense:

  (a) Stamp "salvage" on the property or its containers; or

  (b) Remove or obliterate the brands or labels,

  If doing so will not damage the property.

  The Insured must relabel the property or containers in compliance with the applicable requirements of law.

c) Any salvage proceeds received will go to the:

  i) Company at the time of loss settlement; or

  ii) Insured if received prior to loss settlement and such proceeds will reduce the amount of loss payable accordingly.

## 4. Change of Temperature

This Policy covers spoilage of insured stock and supplies due to:

a) Changes of temperature or changes in relative humidity,

Directly resulting from the interruption, in whole or part, of services consisting of electricity, gas, fuel, steam, water or refrigeration by reason of any accidental event, other than insured physical loss or damage, at a **location**.

## 5. Communicable Disease – Property Damage

If a **described location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **described location** is limited, restricted or prohibited by:

a) An order of an authorized governmental agency regulating or as result of such presence of **communicable disease**; or

b) A decision of an Officer of the Insured as a result of such presence of **communicable disease,**

This Policy covers the reasonable and necessary costs incurred by the Insured at such **described location** for the:

a) Cleanup, removal and disposal of such presence of **communicable disease** from insured property; and

b) Actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from such presence of **communicable disease** on insured property.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to such presence of **communicable disease**.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

*© 2021 AFM. All rights reserved.*

Communicable Disease - Property Damage Exclusions: As respects Communicable Disease – Property Damage, the following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from **terrorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 6. Data Restoration

This Policy covers insured **physical loss or damage to electronic data, programs or software** while anywhere within this Policy's Territory, including while in transit.

With respect to **physical loss or damage to electronic data, programs or software** caused by or resulting from a **cyber event**, this coverage will apply when the time to recreate or restore such data, programs or software with due diligence and dispatch is in excess of the Qualifying Period shown in the Declarations section of this Policy.

This coverage includes:

a) The cost of the following reasonable and necessary actions taken by the Insured due to actual insured **physical loss or damage to electronic data, programs or software:**

    i) To temporarily protect and preserve insured electronic data, programs or software.

    ii) For the temporary repair of insured **physical loss or damage to electronic data, programs or software**.

    iii) To expedite the permanent repair or replacement of such damaged property.

b) The reasonable and necessary costs incurred by the Insured to temporarily protect or preserve insured electronic data, programs or software against immediately impending insured **physical loss or damage to electronic data, programs or software**. In the event that there is no physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such physical loss or damage.

This Additional Coverage excludes loss or damage to data, programs or software when incorporated into physical goods intended to be sold as:

a) Finished goods manufactured by the Insured; or

b) Other merchandise not manufactured by the Insured.

Data Restoration Exclusions: As respects Data Restoration, the following additional exclusion applies:

This Policy excludes the following but, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

a) Errors or omissions in processing or copying.

b) Loss or damage to data, programs or software from errors or omissions in programming or machine instructions.

c) Deterioration, inherent vice, vermin or wear and tear.

Data Restoration Valuation: On property insured under this coverage, the loss amount will not exceed:

a) The cost to repair, replace or restore data, programs or software including the costs to recreate, research and engineer; or

b) The blank value of the media if not repaired, replaced or restored within two years from the date of loss.

*© 2021 AFM. All rights reserved.*

7. **Data Service Provider - Property Damage**

This Policy covers insured physical loss or damage to insured property at a **location** when such physical loss or damage results from the interruption of **off-premises data processing or data transmission services** by reason of any accidental event at the facilities of the provider of such services, while anywhere within this Policy's Territory, that immediately prevents in whole or in part the delivery of such provided services.

This coverage will apply when such interruption of **off-premises data processing or data transmission services** is in excess of the Qualifying Period shown in the Declarations section of this Policy. Such interruption is the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored.

Additional General Conditions:

a) The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

b) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

Data Service Provider - Property Damage Exclusions: As respects Data Service Provider - Property Damage, the following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

a) Terrorism.

b) Accidental event to a satellite.

8. **Debris Removal**

This Policy covers the reasonable and necessary costs incurred to remove debris from a **location** that remains as the direct result of insured physical loss or damage.

This coverage does not cover the costs of removing:

a) Contaminated uninsured property; or

b) The **contaminant** in or on uninsured property;

Whether or not the contamination results from insured physical loss or damage.

This coverage includes the costs of removal of contaminated insured property or the contaminant in or on insured property only if the contamination, due to the actual not suspected presence of **contaminant(s)**, of the debris resulted directly from other physical damage not excluded by the Policy.

9. **Decontamination Costs**

If insured property is contaminated as a direct result of insured physical damage and there is in force at the time of the loss any law or ordinance regulating contamination due to the actual not suspected presence of **contaminant(s)**, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance. This coverage applies only to that part of insured property so contaminated due to such presence of **contaminant(s)** as a direct result of insured physical damage.

The Company is not liable for the costs required for removing:

---

**PRO AR 4100 (01/23)**              **Page 8 of 42**
*© 2021 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

a)   Contaminated uninsured property; or

b)   The **contaminant** in or on uninsured property;

Whether or not the **contamination** results from insured physical loss or damage.

## 10.   Deferred Payment

This Policy covers the Insured's interest in personal property of the type insured that has been sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan, if such property sustains physical loss or damage insured by this Policy and only to the extent the Insured is unable to collect the unpaid balance of such interest.

This coverage applies from the time the property is delivered to the buyer until the Insured's interest in it has ceased or the Policy terminates or expires, whichever is first.

Deferred Payment Exclusions: As respects Deferred Payment, the following additional exclusion applies:

This Policy excludes:

a)   Theft or conversion by the buyer of the property after the buyer has taken possession of such property.

b)   Property not within this Policy's Territory.

Deferred Payment Valuation: On property insured under this coverage, the loss amount will not exceed the lesser of the following:

a)   The total amount of unpaid installments less finance charges.

b)   The **actual cash value** of the property on the date of loss or damage.

c)   The cost to repair or replace with material of like size, kind and quality.

## 11.   Demolition and Increased Cost of Construction

This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

a)   Such law or ordinance is enforced as a direct result of insured physical loss or damage at a **location**;

b)   Such law or ordinance is in force at the time of such loss or damage; and

c)   Such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

Coverage A:

The reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that Regulates the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment.

As respects insured property, this Coverage A covers the reasonable and necessary costs to:

a)   Demolish any physically damaged and undamaged portions of the insured buildings, structures, machinery or equipment.

b)   Repair or rebuild the physically damaged and undamaged portions, whether or not demolition is required, of such insured buildings, structures, machinery or equipment.

The Company's maximum liability for this Coverage A at each **location** in any **occurrence** will not exceed the actual costs incurred in demolishing the physically damaged and undamaged portions of the insured property plus the lesser of:

a)   The reasonable and necessary cost, excluding the cost of land, to rebuild on another site; or

b)   The cost to rebuild on the same site.

Coverage B:

The reasonable estimated cost to repair, replace or rebuild insured property consisting of buildings, structures, machinery or equipment that the Insured is legally prohibited from repairing, replacing or rebuilding to the same height, floor area, number of units, configuration, occupancy or operating capacity, because of the enforcement of any law or ordinance that regulates the construction, repair, replacement or use of buildings, structures, machinery or equipment.

Demolition and Increased Cost of Construction Coverage B Valuation: On property covered under this Coverage B that cannot legally be repaired or replaced, the loss amount will be the difference between:

a)   The actual cash value; and

b)   The cost that would have been incurred to repair, replace or rebuild such lost or damaged property had such law or ordinance not been enforced at the time of loss.

Demolition and Increased Cost of Construction Exclusions: As respects Demolition and Increased Cost of Construction, the following additional exclusions apply:

This Policy does not cover:

a)   Any cost incurred as a direct or indirect result of enforcement of any law or ordinance regulating any form of **contamination**.

b)   Any machinery or equipment manufactured by or for the Insured, unless used by the Insured in its operation at the **location** suffering the physical loss or damage.

## 12.   Earth Movement

This Policy covers physical loss or damage caused by or resulting from **earth movement**.

## 13.   Errors and Omissions

If physical loss or damage is not payable under this Policy solely due to an error or unintentional omission:

a)   In the address of a property insured by this Policy which existed at the inception date of this Policy or in any subsequent amendments to this Policy;

b)   That fails to include any **location**:

   i)   Owned; or

   ii)   Occupied by the Insured; or

c)   That results in cancellation of insured property under this Policy;

Then coverage applies to the extent this Policy would have provided coverage had the error or unintentional omission not been made.

It is a condition of this Additional Coverage that any error or unintentional omission be reported by the Insured to the Company when discovered and corrected.

### 14. Expediting Expenses

This Policy covers the reasonable and necessary costs incurred to:

a) Temporarily repair or replace; and

b) Expedite the permanent repair or replacement of;

Insured property that has sustained insured physical loss or damage.

This coverage does not include expenses payable elsewhere in this Policy including the cost of permanent repair or replacement of damaged property.

### 15. Fine Arts and Valuable Papers and Records

This Policy covers **fine arts** and **valuable papers and records** while anywhere within this Policy's Territory including while in transit.

Fine Arts and Valuable Papers and Records Exclusion: As respects Fine Arts and Valuable Papers and Records, the following additional exclusion applies:

This Policy excludes:

a) Loss or damage to any fine arts as a result of restoring, repairing or retouching processes.

b) Errors or omissions in the processing or copying of valuable papers and records.

Fine Arts and Valuable Papers and Records Valuation: On property insured under this coverage, the loss amount will not exceed the lesser of the following:

a) The cost to repair or restore the article to the condition that existed immediately prior to the loss;

b) The cost to replace the article; or

c) The value designated for the article as shown in the Declarations section of this Policy or on a schedule on file with this Company.

In case of physical loss or damage to a **fine arts** or **valuable papers and records** article that is part of a pair or a set, this Company will pay the lesser of the full value or the amount scheduled, if any, of the value of such pair or set only if the damaged article cannot be repaired or restored to its condition before the loss and the Insured surrenders the remaining article or articles of the pair or set to this Company.

### 16. Flood

This Policy covers physical loss or damage caused by or resulting from **flood**.

### 17. Green Coverage

This Policy covers the reasonable and necessary additional costs incurred by the Insured, as a direct result of insured physical loss or damage:

a) To repair or replace physically damaged insured property with material of like kind and quality which qualifies as **Green**.

b) To replace the insured physically damaged portions of insured roofing systems with vegetative roof(s), including but not limited to the addition of trees, shrubs, plants and lawns to those roof(s), which qualify as **Green,** if this Policy covers Real Property.

*© 2021 AFM. All rights reserved.*



FILED DATE: 3/17/2026 3:32 PM   2026CH02542

c)  As part of **Green** reconstruction, to flush out the air in the area of the physically damaged insured property with 100 percent outside air and to provide replacement filtration media for the building's ventilation system that controls the damaged area.

d)  For an accredited professional certified by a **Green Authority** to participate in the design and construction for repairing or rebuilding the physically damaged insured property as **Green**.

e)  For the process of certification or recertification of the repaired or replaced insured property as **Green.**

f)  For **Green** removal, disposal or recycling of the damaged insured property.

Notwithstanding any other provision in this Policy, the Insured must repair or replace the insured real and/or personal property lost, damaged or destroyed as a condition of this coverage.

Green Coverage Exclusions: As respects Green Coverage, the following additional exclusions apply:

This Policy excludes:

a)  Stock, **raw materials**, work in process, finished goods, merchandise, **production machinery and equipment**, electronic data processing equipment not used in the functional support of the real property, molds and dies, property in the open, property of others for which the Insured is legally liable, personal property of directors, officers or employees of the Insured.

b)  Any property adjusted on other than repair or replacement per the Valuation clauses of this Policy.

c)  Any loss recoverable elsewhere in this Policy.

## 18.  Land and Water Clean Up Expense

This Policy covers the reasonable and necessary costs to remove, dispose of or clean up the actual but not the suspected presence of **contaminant(s)** from uninsured land or water or any substance in or on land, at a **location**, when such property is contaminated as a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to clean up, remove and dispose of **contamination** from such property:

a)  At any **location** insured for Personal Property only.

b)  When the Insured fails to give written notice of loss to this Company within 180 days after the inception of the loss.

## 19.  Locks and Keys

This Policy covers the reasonable and necessary cost incurred by the Insured to replace undamaged keys and to replace, adjust or reprogram undamaged locks to accept new keys or entry codes as a result of insured physical loss or damage.

## 20.  Money and Securities

This Policy covers physical loss or damage to money and securities at a **location** resulting from:

a)  Fire, explosion or sprinkler leakage.

## 21.  Newly Acquired Property

This Policy covers property of the type insured that is newly acquired while located anywhere within this Policy's Territory, excluding while in transit.

This coverage terminates:

a)  When the newly acquired property is bound by this Company; or

*© 2021 AFM. All rights reserved.*

b) When agreement is reached that the property will not be insured under this Policy; or

c) 120 days after the date of acquisition of the property; or

d) At the termination or expiration of this Policy;

Whichever occurs first.

## 22. Off-Premises Service Interruption - Property Damage

This Policy covers insured physical loss or damage at a **location** caused by or resulting from the interruption, in whole or part, of incoming electric, gas, fuel, steam, water, refrigeration, or outgoing sewerage.

The interruption of such services must be by reason of an accidental event, not otherwise excluded by this Policy, at the facilities of the service provider(s) while anywhere within this Policy's Territory.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Additional Conditions:

This Company will not be liable for deliberate act(s) by the service provider to shed load to maintain system integrity.

Off-Premises Service Interruption - Property Damage Exclusion: As respects Off-Premises Service Interruption - Property Damage the following additional exclusions apply:

a) This Policy excludes loss or damage directly or indirectly caused by or resulting from **terrorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 23. Professional Fees

This Policy covers the reasonable and necessary expenses incurred by the Insured of:

a) Auditors;

b) Accountants;

c) Architects;

d) Engineers; or

e) Other professionals; and

f) The Insured's own employees,

For producing and certifying particulars or details to determine the amount of loss payable under this Policy for which this Company has accepted liability.

This coverage does not include the fees and expenses of attorneys, public adjusters, loss appraisers, loss consultants or any of their subsidiaries or related or associated entities.

## 24. Property Removed from a Location

This Policy covers insured property when removed from a **location** to avoid or prevent immediately impending insured physical loss or damage to such property. This Policy covers such property for physical loss or damage as provided at the **location** from which the property was removed.

This coverage applies for a period:

a) Of 120 days from the date of removal; but

*© 2021 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

b) Not beyond the termination or expiration date of this Policy.

## 25. Protection and Preservation of Property - Property Damage

This Policy covers the reasonable and necessary costs incurred for:

a) Actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

b) Fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the insured property.

c) Restoring and recharging fire protection systems following an insured loss.

d) The water used for fighting a fire in, on or exposing the insured property.

e) Temporary security for a period of time not to exceed 30 consecutive days due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

This coverage does not cover costs incurred for actions to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by the Terrorism coverage of this Policy.

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage happened.

## 26. Tax Treatment

This Policy covers the increased tax liability as a direct result of insured physical loss or damage to insured property. When such tax liability is greater than the tax liability that would have been incurred had there been no such loss or damage, then this Policy will cover only the increased tax liability for the profit portion of a loss payment under this Policy involving finished stock manufactured by the Insured and/or the profit portion of the Business Interruption loss payment.

## 27. Tenants Legal Liability

This Policy covers direct physical loss or damage, caused by or resulting from **named perils**, to that part of buildings of others, including permanently attached building fixtures, leased to and occupied by the Insured at a **described location** to the extent of the Insured's legal liability for such loss or damage.

This coverage also includes the following:

a) The reasonable expenses of defending the Insured against only that part of any suit alleging the Insured's legal liability for such physical loss or damage;

b) The reasonable expenses incurred by this Company, this Company's proportionate share of costs taxed against the Insured in any such suit, and this Company's proportionate share of interest accruing after entry of judgment until this Company has paid, tendered or deposited into court its proportionate share of such judgment; and

c) The reasonable expenses, other than loss of earnings, incurred at this Company's request.

This coverage does not include:

a) That part of any settlement by the Insured to which this Company has not given its prior written consent; or

b) Any legal liability for loss or damage assumed by the Insured under any contract or agreement, whether oral or written, expressed or implied.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Additional Provisions: This Company may:

a)  Investigate, negotiate and settle any claim or suit as this Company deems expedient and will not be prejudiced under this coverage for failure to settle for any amount within the Company's applicable limit of liability.

b)  Pay, tender or deposit into court the Company's applicable limit of liability, less any expenses incurred by the Company, in full satisfaction of its liability under this coverage, and thereby terminate any further liability for any expense amount described in paragraphs a, b or c above.

Tenants Legal Liability Exclusion: As respects Tenants Legal Liability, the following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from **terrorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 28. Terrorism

This Policy covers physical loss or damage caused by or resulting from **terrorism** only at a **described location**.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion or any other risk of physical loss or damage covered elsewhere in this Policy.

Amounts recoverable under this coverage are excluded from coverage elsewhere in this Policy.

This coverage does not cover loss or damage which also comes within the terms of either Group I Items 2a, 2b or 2d of the Exclusions clause of this Policy.

This coverage does not in any event cover loss or damage directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this Policy contributing concurrently or in any other sequence to the loss:

a)  That involves the use, release or escape of nuclear materials or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination or that involves the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act; or

b)  That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

c)  In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

d)  That involves action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**.

## 29. Transit

This Policy covers the following insured personal property:

a)  Owned by the Insured;

b)  Of others to the extent of the Insured's interest or legal liability while in the actual or constructive custody of the Insured;

c)  Shipped to others on Free on Board (FOB), Cost and Freight (C&F) or similar terms. The Insured's contingent interest in such shipments is admitted,

d)  Of others sold by the Insured, that the Insured has agreed prior to the loss to insure during course of delivery including:



Member of the FM Global Group

i) When shipped by the Insured's direct contract service provider or by the Insured's direct contract manufacturer to the Insured or to the Insured's customer;

ii) When shipped by the Insured's customer to the Insured or to the Insured's contract service provider or to the Insured's contract manufacturer,

While in transit within the Policy's Territory:

a) From the time the property leaves the original point of shipment for transit; and

b) Continuously in the due course of transit until delivered at the destination.

c) Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This coverage:

a) Insures physical loss or damage caused by or resulting from:

i) Unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts by the Insured or the Insured's agent, customer or consignee.

ii) Any unauthorized person(s) representing themselves to be the proper party(ies) to receive the property for shipment or to accept it for delivery.

b) Covers general average and salvage charges on shipments covered while waterborne.

Additional Conditions:

a) Permission is granted to the Insured, without prejudice to this insurance, to accept ordinary bills of lading used by carriers, including:

i) Released and/or undervalued bills of lading; or

ii) Shipping or messenger receipts.

b) The Insured may waive subrogation against railroads under sidetrack agreements.

c) The Insured may not enter into any special agreement with carriers releasing them from their common law or statutory liability.

d) This coverage shall not inure directly or indirectly to the benefit of any carrier or bailee.

Transit Exclusions: As respects Transit, the following additional exclusions apply:

This Policy excludes:

a) Property shipped by mail.

b) Shipments by air unless made by regularly scheduled airlines.

c) Waterborne shipments via the Panama Canal or waterborne shipments to and from:

i) Alaska.

ii) Hawaii.

iii) Commonwealth of Puerto Rico.

*© 2021 AFM. All rights reserved.*



FILED DATE: 3/17/2026 3:32 PM   2026CH02542

iv)  Virgin Islands.

d)  Any transporting vehicle.

e)  Property of others, including the Insured's legal liability, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

f)  Property insured under any import or export ocean marine insurance.

Transit Valuation: On property insured under this coverage, the loss amount will not exceed the following:

a)  For property shipped to or for the account of the Insured: the actual invoice to the Insured, including such costs and charges (including the commission of the Insured as selling agent) as may have accrued and become legally due on such property.

b)  For property that has been sold by the Insured and shipped to or for the account of the purchaser (if covered by this Policy), the amount of the Insured's selling invoice, including prepaid or advanced freight.

c)  For property not under invoice:

i)  For property of the Insured, at the valuation provisions of the Policy applying at the place from which the property is being transported; or

ii)  For other property, the actual cash value at point of destination on the date of loss,

Less any charges saved which would have become due and payable upon arrival at destination.

## 30.  Unnamed Property

This Policy covers insured property anywhere within this Policy's Territory, excluding property while in transit.

Unnamed Property Exclusion: As respects Unnamed Property, the following additional exclusion applies:

This Policy excludes:

**Transmission and distribution systems**, except at a premises owned, leased or rented by the Insured.

*© 2021 AFM. All rights reserved.*

# BUSINESS INTERRUPTION

The Business Interruption loss, as provided in the Business Interruption Coverage and Business Interruption Coverage Extensions of this section, is subject to all the terms and conditions of this Policy including, but not limited to, the limits of liability, deductibles and exclusions shown in the Declarations section.

## A. LOSS INSURED

This Policy insures Business Interruption loss, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured:

1. To property as described elsewhere in this Policy and not otherwise excluded by this Policy;

2. Used by the Insured;

3. While at a **location** or while in transit as provided by this Policy; and

4. During the Period of Liability as described elsewhere in this Policy.

This Policy insures Business Interruption loss only to the extent it cannot be reduced through:

1. The use of any property or service owned or controlled by the Insured;

2. The use of any property or service obtainable from other sources;

3. Working extra time or overtime; or

4. The use of inventory;

All whether at a **location** or at any other premises. This Company reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the amount of loss.

In determining the amount of loss payable, this Company will consider:

1. Any amount recovered elsewhere under this Policy for loss or damage to finished goods or merchandise at selling price as having been sold to the Insured's regular customers and credited against net sales.

2. The experience of the business before and after and the probable experience during the Period of Liability. The probable experience will also consider any increase or decrease in demand for the Insured's goods or services during the Period of Liability, even if such increase or decrease is from the same event that caused physical loss or damage starting the Period of Liability.

3. The continuation of only those normal charges and expenses that would have been earned had there been no interruption of production or business operations or services.

This Policy also covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this Policy. The amount of such recoverable expenses will not exceed the amount by which the loss is reduced.

## B. BUSINESS INTERRUPTION COVERAGE

### 1. Gross Earnings

The recoverable Gross Earnings loss is the actual loss sustained by the Insured of **gross earnings**, less all charges and expenses that do not necessarily continue, plus all other earnings derived from the operations of the business, excluding loss covered under Rental Income, during the Period of Liability.

*© 2021 AFM. All rights reserved.*

**gross earnings** means:

The net sales value of production or business operations or services less the cost of:

a)   Raw stock;

b)   Materials and supplies; and

c)   Merchandise sold;

Used in production or business operations or services rendered by the Insured.

The recoverable Gross Earnings loss payable is limited to the extent the Insured is:

a)   Wholly or partially prevented from producing goods or continuing business operations or services;

b)   Unable to make up lost production within a reasonable amount of time, not limited to the period during which production is interrupted;

c)   Unable to continue such operations or services during the Period of Liability; and

d)   Able to demonstrate a loss of sales for the production or business operations or services prevented.

## 2.   Gross Profits

The recoverable Gross Profits loss is the actual loss sustained by the Insured of the:

a)   Reduction in sales; and the

b)   **Increased cost of doing business**,

Resulting from the necessary interruption of business during the Period of Liability.

As respects Gross Profits, Business Interruption Exclusion Items 2a, 2c and 3 do not apply.

For purposes of measuring the loss:

**gross profits** means:

The sum produced by adding the **net profit** to the **insured fixed charges**. If there is no **net profit** the amount of all **insured fixed charges** less that proportion of any loss from business operations as the amount of the **insured fixed charges** bears to all fixed charges.

**increased cost of doing business** means:

The reasonable and necessary costs incurred to avoid or diminish a reduction in sales but not to exceed the sum produced by applying the **rate of gross profit** to the amount of the reduction avoided; all less any sums saved as may cease or be reduced during the Period of Liability.

**insured fixed charges** means:

All fixed charges unless specifically excluded in the Declarations section.

**net profit** means:

The net operating profit excluding:

a)   Capital receipts and accruals; and

b)   Outlay properly chargeable to capital;

*© 2021 AFM. All rights reserved.*

Resulting from the business of the Insured after due provision has been made for all fixed charges and any other expenses, including depreciation, but before deduction of any taxes on profits.

**rate of gross profit** means:

The rate of Gross Profit earned on Sales during the twelve (12) full months immediately before the date of the loss or damage to the insured property.

**reduction in sales** means:

The amount produced by applying the **rate of gross profit** to the amount by which the **sales** during the Period of Liability fall short of the **standard sales**.

**sales** means:

The money, excluding loss covered under Rental Income, paid or payable to the Insured for:

a)   Goods sold and delivered; and

b)   Services rendered;

In the conduct of the Insured's business.

**standard sales** means:

The **sales** during the period of the twelve (12) months immediately before the date of the loss or damage to the insured property which corresponds with the Period of Liability.

## 3.   Rental Income

The recoverable Rental Income loss is the actual loss sustained by the Insured of the following during the Period of Liability:

a)   The fair rental value of any portion of the property occupied by the Insured;

b)   Income reasonably expected from the rentals of unoccupied or unrented portions of such property;

c)   The rental income from the rented portions of such property, according to bona fide leases, contracts or agreements, in force at the time of loss;

All less charges and expenses that do not continue.

Rental Income Exclusion: As respects Rental Income, the following additional exclusion applies:

This Policy does not insure:

a)   Any loss of rental income during any period in which the insured property would not have been rented for any reason other than an insured loss.

## 4.   Extra Expense

The recoverable Extra Expense loss is the reasonable and necessary extra expense incurred by the Insured of the following during the Period of Liability to:

a)   Temporarily continue as close to normal the conduct of the Insured's business; and

b)   Temporarily use the property or facilities of the Insured or others;

All less any value remaining at the end of the Period of Liability for property obtained in connection with the above.

If the Insured makes claim in accordance with the terms and conditions of the BI Select clause, the Period of Liability for Extra Expense coverage will be the Period of Liability applicable to the Business Interruption Coverage option selected.

Extra Expense Exclusions: As respects Extra Expense, the following additional exclusions apply:

This Policy does not insure:

a)   Any loss of income.

b)   Expenses that usually would have been incurred in conducting the business during the same period had no physical loss or damage happened.

c)   The cost of permanent repair or replacement of property that has been damaged or destroyed.

d)   Any expense recoverable elsewhere in this Policy.

**5.   BI Select™**

If this Policy insures Gross Earnings and Gross Profit the Insured has the option to make claim based on either:

a)   Gross Earnings; or

b)   Gross Profit.

If such claim involves more than one **location**, including interdependency at one or more **locations**, all such claims will be adjusted using the coverage option chosen above.

This option may be exercised any time prior to meeting the conditions set forth in the Settlement of Claims provisions in the Loss Adjustment and Settlement section of this Policy.

## C.   <u>PERIOD OF LIABILITY</u>

The Period of Liability for Business Interruption Coverage and Business Interruption Coverage Extensions, unless otherwise stated elsewhere in this Policy, is as follows:

The Gross Earnings, Rental Income or Extra Expense Period of Liability is:

1.   The period starting from the time of physical loss or damage of the type insured; and

2.   Ending when, with due diligence and dispatch,

a)   The lost or damaged property could be repaired or replaced and made ready for production or business operations or services under the same or equivalent physical operating conditions that existed prior to the loss or damage; or

b)   The lost or damaged property under the course of construction or renovation could be repaired or replaced to the same or equivalent degree of completion that existed prior to the loss or damage. This period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened.

3.   For **raw materials** or supplies, the period of time:

a)   Resulting from the inability to procure suitable **raw materials** or supplies to replace those physically lost or damaged, but

b)   For no more than the period of time for which such physically lost or damaged **raw materials** or supplies would have supplied production or business operating or servicing needs.

4. For property covered under Data Restoration:

    a) The period of time starting from the time of insured physical loss or damage to electronic data, programs or software; and

    b) Ending when with due diligence and dispatch the electronic data, programs or software could have been recreated or restored and made ready for production or business operations or services under the same or equivalent physical operating conditions that existed prior to the physical loss or damage.

The Gross Profit Period of Liability is:

The period starting from the time of physical loss or damage of the type insured and ending no later than the period of time shown in the Declarations section during which the results of the business shall be directly affected by such damage.

Period of Liability Conditions:

The Period of Liability will not include any additional time:

1. Due to the Insured's inability to resume production or business operations or services regardless of the reason, including but not limited to:

    a) Making change(s) to the buildings, structures or equipment, for any reason except as provided by the Demolition and Increased Cost of Construction coverage in this Policy; or

    b) Restaffing or retraining employees. However, this item does not apply to additional time needed to train staff to use new machinery or equipment which replaces machinery or equipment that suffered insured physical loss or damage, provided that such training is completed within 90 days after the new machinery or equipment has been installed.

If two or more Periods of Liability apply such periods will not be cumulative and will not be limited by the expiration of this Policy.

## D. BUSINESS INTERRUPTION EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to Business Interruption loss:

This Policy does not insure:

1. Any loss during any idle period, including but not limited to when production, operations or services or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

    a) Physical loss or damage not insured by this Policy.

    b) Planned or rescheduled shutdown.

    c) Strike or other work stoppage.

    d) Any other reason other than physical loss or damage insured under this Policy.

2. Any increase in loss due to:

    a) The suspension, cancellation, or lapse of any lease, contract, license or order.

    b) Damages for breach of contract, or for late or non-completion of orders.

    c) Fines or penalties of any nature, except as provided by the Contractual Penalties coverage in this Policy.

    d) Any other consequential or remote loss.

*© 2021 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM    2026CH02542

3. Any loss resulting from physical loss or damage to merchandise or finished goods valued at the regular cash selling price or the time required for their reproduction.

## E. <u>BUSINESS INTERRUPTION COVERAGE EXTENSIONS</u>

### 1.  Attraction Property

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to a **described location** and is within one (1) statute mile of the **described location**.

Attraction Property Exclusion: As respects Attraction Property, the following additional exclusion applies:

This Policy does not insure loss resulting from:

a)  Physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

### 2.  Civil or Military Authority

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a **location** provided such order is the direct result of physical damage of the type insured at a **location** or within five (5) statute miles of it.

Item B. 3. of Property Excluded does not apply to this Business Interruption Coverage Extension.

The Period of Liability for this Business Interruption Coverage Extension will be:

a)  The period of time starting at the time of such order of civil or military authority, but not to exceed the number of consecutive days shown in the Declarations section of this Policy.

### 3.  Communicable Disease - Business Interruption

If a **described location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **described location** is limited, restricted or prohibited by:

a)  An order of an authorized governmental agency regulating such presence of **communicable disease**; or

b)  A decision of an Officer of the Insured as a result of such presence of **communicable disease**,

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability at such **described location** with such presence of **communicable disease.**

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Communicable Disease - Business Interruption Exclusions: As respects Communicable Disease - Business Interruption, the following additional exclusions apply:

This Policy does not insure loss resulting from:

a)  The enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of **communicable disease**.

b)  Loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

The Period of Liability for this Business Interruption Coverage Extension will be:

The period of time:

*© 2021 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

a)   Starting at the time of the order of the authorized governmental agency or the Officer of the Insured; but

b)   Not to exceed the time limit shown in the Sub-Limits clause in the Declarations section,

This period of time is part of and not in addition to any Period of Liability applying to any coverage provided in the Business Interruption section.

### 4.   Contractual Penalties

This Policy covers contractual penalties incurred by the Insured during the Period of Liability due to late or non-completion of orders as a direct result of insured physical loss or damage to property of the type insured.

This extension of coverage applies provided that such contractual penalties:

a)   Are written in the provisions of a contract prior to the time of such direct physical loss or damage, and

b)   Will be limited to the contractual sales value of such late or non-completed orders.

### 5.   Crisis Management

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a **described location,** provided such order is a direct result of:

a)   A violent crime, suicide, attempted suicide or armed robbery; or

b)   A death or bodily injury caused by a workplace accident;

At that **described location**.

For the purpose of this Business Interruption Coverage Extension only, a violent crime, suicide, attempted suicide or armed robbery at a **described location** will be considered direct physical loss or damage insured by this Policy.

Crisis Management Exclusion: As respects Crisis Management, the following additional exclusion applies:

This Policy does not insure loss resulting from:

a)   Physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

The Period of Liability for this Business Interruption Coverage Extension will be:

a)   The period of time starting at the time of such order of civil or military authority, but not to exceed the number of consecutive days shown in the Declarations section of this Policy.

### 6.   Data Service Provider - Business Interruption

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability at a **location** of **off-premises data processing or data transmission services**, when the interruption is caused by any accidental event at the facilities of the provider of such services, while anywhere within this Policy's Territory, that immediately prevents in whole or in part the delivery of such provided services.

This coverage will apply when such interruption of **off-premises data processing or data transmission services** is in excess of the Qualifying Period shown in the Declarations section of this Policy.

Additional General Conditions:

a)   The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

b) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

Coverage provided in this Extension is excluded from coverage elsewhere in this Policy.

This Extension does not cover the Business Interruption Coverage loss incurred by the Insured covered by Owned Network Interruption coverage as provided in this section of this Policy.

Data Service Provider - Business Interruption Exclusions: As respects Data Service Provider - Business Interruption, the following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

a) Terrorism.

b) Accidental event to a satellite.

The Period of Liability for this Business Interruption Coverage Extension will be:

a) The period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the Period of Liability clause in this section.

b) Is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

c) Does not extend to include the interruption of operations caused by any reason other than interruption of the provided service(s).

7. **Extended Period of Liability**

The Gross Earnings and Rental Income coverage is extended to cover the reduction in sales resulting from:

a) The interruption of business as covered by Gross Earnings or Rental Income;

b) For such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss happened; and

c) Commencing with the date on which the liability of the Company for loss resulting from interruption of business would terminate if this Business Interruption Coverage Extension had not been included in this Policy.

However, this Business Interruption Coverage Extension does not apply to Gross Earnings or Rental Income loss resulting from physical loss or damage caused by or resulting from **terrorism**.

As respects Extended Period of Liability, Business Interruption Exclusion Item 2a does not apply.

Coverage under this Business Interruption Coverage Extension for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the extended period of liability.

Coverage under this Business Interruption Coverage Extension does not apply for more than the number of consecutive days shown in the Sub-Limits clause of the Declarations section of this Policy.

*© 2021 AFM. All rights reserved.*

### 8. Ingress/Egress

This Policy covers the Business Interruption Coverage loss incurred by the Insured due to the necessary interruption of the Insured's business when ingress to or egress from a **described location(s)** is physically prevented, either partially or totally, as a direct result of physical loss or damage of the type insured to property of the type insured whether or not at a **described location**.

Item B. 3. of Property Excluded does not apply to this Business Interruption Coverage Extension.

Ingress/Egress Exclusion: As respects Ingress/Egress, the following additional exclusion applies:

This Policy does not insure loss resulting from:

a) Physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

### 9. Leasehold Interest

This Policy covers the loss incurred by the Insured of Leasehold Interest as follows:

If the lease agreement requires continuation of rent; and if the property is wholly untenantable or unusable, the actual rent payable for the unexpired term of the lease; or if the property is partially untenantable or unusable, the proportion of the rent payable for the unexpired term of the lease.

If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law; the **Lease Interest** for the first three months following the loss; and the **Net Lease Interest** for the remaining unexpired term of the lease.

Leasehold Interest Exclusions: As respects Leasehold Interest, the following applies:

a) Business Interruption Exclusions 1, 2 and 3 do not apply and the following applies instead:

This Policy does not insure any increase in loss resulting from the suspension, lapse or cancellation of any license, or from the Insured exercising an option to cancel the lease; or from any act or omission of the Insured that constitutes a default under the lease.

b) This Policy does not insure loss directly resulting from physical loss or damage to Personal Property.

As used above, the following terms mean:

**Net Lease Interest**:

That sum which placed at 6 percent interest rate compounded annually would equal the Lease Interest (less any amounts otherwise payable hereunder).

**Lease Interest:**

The excess rent paid for the same or similar replacement property over actual rent payable plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the Insured's lease.

### 10. Logistics Extra Cost

This Policy covers the extra cost incurred by the Insured during the Period of Liability due to disruption of the normal movement of goods or materials:

a) Directly between **described locations**; or

b) Directly between a **location** and the premises of a direct supplier, direct customer or direct contract service provider to the Insured;

*© 2021 AFM. All rights reserved.*

Provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured within the Policy's Territory.

Item B. 3. of Property Excluded does not apply to this Business Interruption Coverage Extension.

The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

a)   Extra costs to temporarily continue as close to normal the movement of goods or materials.

Logistics Extra Cost Exclusions: As respects Logistics Extra Cost, the following shall apply:

This Policy does not insure any loss resulting from:

a)   Disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.

b)   Disruption caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

c)   Disruption caused by physical loss or damage to personal property of the Insured while in transit.

d)   Disruption in the movement of goods or materials between the premises of a supplier, customer or contract service provider to the Insured and the premises of another supplier, customer or contract service provider to the Insured.

e)   Costs that usually would have been incurred in conducting the business during the same period had there been no disruption of normal movement of goods or materials; or

f)   Loss of income.

g)   Costs of permanent repair or replacement of property that has been damaged or destroyed.

The Period of Liability for this Business Interruption Coverage Extension will be:

The period of time:

a)   Starting at the time of physical loss or damage causing the disruption of the normal movement of goods or materials; and

b)   Ending not later than when with due diligence and dispatch the normal movement of goods or materials could be resumed.

## 11.  Off-Premises Service Interruption - Business Interruption

This Policy covers Business Interruption Coverage loss incurred by the Insured during the Period of Liability caused by the interruption, in whole or part, of incoming electric, gas, fuel, steam, water, refrigeration, and outgoing sewerage services at a **location**.

The interruption of such services must be by reason of any accidental event, not otherwise excluded by this Policy, at the facilities of the service provider(s) while anywhere within this Policy's Territory.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Additional Conditions:

This Company will not be liable for deliberate act(s) by the supplying utility to shed load to maintain system integrity.

Off-Premises Service Interruption - Business Interruption Exclusion: As respects Off-Premises Service Interruption - Business Interruption the following additional exclusions apply:

*© 2021 AFM. All rights reserved.*

This Policy excludes loss or damage directly or indirectly caused by or resulting from terrorism regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

The Period of Liability for this Business Interruption Coverage Extension will be:

a) The period starting with the time when an interruption of specified services happens; and

b) Ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could or would have resumed normal operations under the same or equivalent physical and operating conditions. Resultant and concurrent interruptions are considered as one event.

### 12. Owned Network Interruption

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability directly resulting from:

a) The failure of the Insured's **electronic data processing equipment or media** to operate provided that such failure is the direct result of a **cyber event** directed at the Named Insured; or

b) The Insured's reasonable action to temporarily protect the Insured's electronic data processing equipment or media against an actual or immediately impending **cyber event** directed at the Named Insured, provided such action is necessary to prevent failure of the Insured's **electronic data processing equipment or media** to operate.

While anywhere within this Policy's Territory.

As respects item a) above, this coverage will apply when the Period of Liability below is in excess of the Qualifying Period shown in the Declarations section of this Policy.

The Period of Liability for this Business Interruption Coverage Extension will be:

a) The period of time starting when the Insured's **electronic data processing equipment or media** fails to operate and ending when, with due diligence and dispatch, the Insured's electronic data processing equipment or media could be restored to the same or equivalent operating condition that existed prior to the failure; and

b) Does not include the additional time to make changes to the Insured's **electronic data processing equipment or media**.

### 13. Protection and Preservation of Property - Business Interruption

This Policy covers the Business Interruption Coverage loss incurred by the Insured for a period of time not to exceed 48 hours prior to and 48 hours after the Insured first taking reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending insured physical loss or damage to such insured property.

This Business Interruption Coverage Extension does not cover loss sustained by the Insured to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by Terrorism coverage as provided in this Policy.

This Business Interruption Coverage Extension is subject to the deductible provisions that would have applied had the physical loss or damage happened.

### 14. Research and Development

Gross Earnings and Gross Profits coverages are extended to cover the actual loss sustained by the Insured of continuing fixed charges and **ordinary payroll** directly attributable to the interruption of research and development activities that in themselves would not have produced income during the Period of Liability.

The Period of Liability for this Business Interruption Coverage Extension will be:

*© 2021 AFM. All rights reserved.*

The period of time:

a)   Starting at the time of physical loss or damage of the type insured; and

b)   Ending when the property could be repaired or replaced and made ready for operations.

### 15. Soft Costs

This Policy covers **soft costs** incurred by the Insured during the Period of Liability arising out of the delay in the completion of buildings and additions under construction directly resulting from physical loss or damage of the type insured to insured property under construction at **locations**.

### 16. Supply Chain

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability directly resulting from physical loss or damage of the type insured to property of the type insured at the premises of any of the following within the Policy's Territory:

a)   Direct suppliers, direct customers or direct contract service providers to the Insured;

b)   Any company under any royalty, licensing fee or commission agreement with the Insured; or

c)   Any company that is a direct or indirect supplier, customer or contract service provider of those described in a) above,

But not at the premises of entities directly or indirectly supplying to or receiving from a **location** electricity, fuel, water, steam, refrigeration, sewerage, voice, data or video.

Business Interruption Coverage loss recoverable under this Business Interruption Coverage Extension is extended to include the following Business Interruption Coverage Extensions:

a)   Civil or Military Authority

b)   Extended Period of Liability

c)   Ingress/Egress

d)   Off-Premises Service Interruption - Business Interruption

e)   Supply Chain

Supply Chain Exclusions: As respects Supply Chain coverage, the following additional exclusion applies:

This Policy does not insure loss resulting from:

a)   Physical loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

*© 2021 AFM. All rights reserved.*

# LOSS ADJUSTMENT AND SETTLEMENT

## A. ABANDONMENT

There shall be no abandonment to this Company of any property.

## B. APPRAISAL

If the Insured and this Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

1.  The Insured has fully complied with all provisions of this Policy.

2.  This Company has received a signed and sworn Proof of Loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within 30 days then, on the request of the Insured or this Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of loss, stating separately the **actual cash value** and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage or if, for Business Interruption loss, the amount of loss for each Business Interruption coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss.

The Insured and this Company will each:

1.  Pay its chosen appraiser; and

2.  Bear equally the other expenses of the appraisal and umpire.

A demand for Appraisal shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under Requirements in Case of Loss.

This Company will not be held to have waived any of its rights by any act relating to appraisal.

## C. COLLECTION FROM OTHERS

This Company will not be liable for any loss to the extent that the Insured has collected for such loss from others.

## D. COMPANY OPTION

This Company has the option to take all or any part of damaged property at the agreed or appraised value. This Company must give notice to the Insured of its intention to do so within 30 days after receipt of Proof of Loss.

## E. CURRENCY FOR LOSS PAYMENT

Losses will be adjusted and paid in the currency of the United States of America, except in Canada where losses will be paid in Canadian currency, unless directed otherwise by the First Named Insured.

## F. LEGAL ACTION AGAINST THIS COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

1. The Insured has fully complied with all the provisions of this Policy; and

2. Legal action is started within two years after inception of the loss.

If under the insurance laws of the jurisdiction in which the property is located, such two-year limitation is invalid, then any such legal action must be started within the shortest limit of time permitted by such laws.

## G. LOSS ADJUSTMENT AND PAYABLE

Loss or damage will be adjusted with the First Named Insured and payable to or as the First Named Insured directs subject to the Mortgagee/Lenders Loss Payable clause in the General Conditions section of this Policy.

Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee on a Certificate of Insurance issued by this Company prior to the loss.

When named on a Certificate of Insurance issued by the Insured's broker with this Company's permission, such additional interests are added to this Policy as their interests may appear when such Certificate of Insurance is issued prior to the loss and on file with this Company. The effective date of any such interest will be the issue date of the certificate unless a later date is specified on the Certificate of Insurance. The Certificate of Insurance will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

## H. OTHER INSURANCE

1. If there is any other insurance that would apply in the absence of this Policy, this Policy will apply only after such insurance whether collectible or not.

2. In no event will this Policy apply as contributing insurance.

3. The Insured is permitted to have other insurance over any limits or sublimits of liability specified elsewhere in this Policy without prejudice to this Policy. The existence of any such insurance will not reduce any limit or sublimit of liability in this Policy. Any other insurance that would have provided primary coverage in the absence of this Policy will not be considered excess.

4. The Insured is permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only after such other insurance has been exhausted.

5. If this Policy is deemed to contribute with other insurance, the limit of liability applicable at each **location**, for the purposes of such contribution with other insurers, will be the latest amount described in this Policy or the latest **location** value on file with this Company.

## I. REQUIREMENTS IN CASE OF LOSS

The Insured will:

1. Give immediate written notice to this Company of any loss.

2. Protect the property from further loss or damage.

3. Promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, **actual cash value**, replacement value and amount of loss claimed.

4. Give a signed and sworn proof of loss to the Company within 90 days after the loss, unless that time is extended in writing by this Company. The proof of loss must state the knowledge and belief of the Insured as to:

**PRO AR 4100 (01/23)**  **Page 31 of 42**
*© 2021 AFM. All rights reserved.*

a) The time and origin of the loss.

b) The Insured's interest and that of all others in the property.

c) The **actual cash value** and replacement value of each item and the amount of loss to each item; all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property.

d) Any changes in the title, use, occupation, location**,** possession or exposures of the property since the effective date of this Policy.

e) By whom and for what purpose any **location** insured by this Policy was occupied on the date of loss, and whether or not it then stood on leased ground.

5. Include a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.

6. Further, the Insured, will as often as may be reasonably required:

a) Exhibit to any person designated by the Company all that remains of any property;

b) Submit to examination under oath by any person designated by the Company and sign the written records of examinations; and

c) Produce for examination at the request of the Company:

i) All books of accounts, business records, bills, invoices and other vouchers; or

ii) Certified copies if originals are lost,

At such reasonable times and places that may be designated by the Company or its representative and permit extracts and machine copies to be made.

## J. <u>SETTLEMENT OF CLAIMS</u>

The amount of loss for which this Company may be liable will be paid within 30 days after:

1. Proof of loss as described in this Policy is received by this Company; and

2. When a resolution of the amount of loss is made either by:

a) Written agreement between the Insured and this Company; or

b) The filing with this Company of an award as provided in the Appraisal clause of this section.

In the event of insured physical loss or damage determined by this Company's representatives to be in excess of the applicable policy deductible, this Company will advance mutually agreed-upon partial payment(s), subject to the Policy's provisions. To obtain such partial payments, the Insured will submit a signed and sworn proof of loss as described in this Policy, with adequate supporting documentation.

## K. <u>SUBROGATION</u>

The Insured shall cooperate in any subrogation proceedings. This Company may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of this Company's payment.

This Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss. No such waiver will affect the Insured's rights under this Policy.

**PRO AR 4100 (01/23)** **Page 32 of 42**
*© 2021 AFM. All rights reserved.*

Any recovery from subrogation proceedings, less costs incurred by this Company in such proceedings, will be payable to the Insured in the proportion that the amount of:

1.  Any applicable deductible; and/or

2.  Any provable uninsured loss,

Bears to the entire provable loss amount.

## L. VALUATION

Adjustment of the physical loss amount(s) under this Policy will be as of the date of loss at the place of loss, and for no more than the interest of the Insured.

1.  Adjustment of physical loss to property will be determined based on the lesser of the following unless stated otherwise below or elsewhere in this Policy:

    a)  The cost to repair.

    b)  The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

    c)  The cost to rebuild, repair or replace on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

    d)  On real property or machinery and equipment, other than stock, offered for sale on the date of the loss, the selling price.

2.  On **raw materials**, supplies and merchandise not manufactured by the Insured, the replacement cost.

3.  On **stock in process**, the value of **raw materials** and labor expended plus the proper proportion of overhead charges.

4.  On finished goods manufactured by the Insured, the regular cash selling price, less all discounts and charges to which such finished goods would have been subject had no loss happened.

5.  On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from backup or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

6.  On personal property that is part of a pair or set, and the physically damaged personal property cannot be replaced or repaired, the reduction in value of the undamaged portion of insured personal property. If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such property to this Company.

7.  On unrepairable electrical or mechanical equipment, including computer equipment, the cost to replace such equipment with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

8.  On property scheduled for demolition, the increased cost of demolition, if any, directly resulting from insured loss.

9.  On improvements and betterments, the unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

10. On property that is useless to the Insured, the **actual cash value**.

11. On property if not repaired, replaced or rebuilt on the same or another site within two years from the date of loss, unless such time is extended by the Company, the **actual cash value**.

*© 2021 AFM. All rights reserved.*

The Insured may elect not to repair or replace the insured real or personal property under Item 1 above that is lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at a described **location** under this Policy. This item does not extend to Demolition and Increased Cost of Construction.

*© 2021 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# GENERAL CONDITIONS

## A. APPLICATION OF POLICY TO DATE OR TIME RECOGNITION

With respect to situations caused by any **date or time recognition** problem by **electronic data processing equipment or media** (such as the so-called Year 2000 problem), this Policy applies as follows:

1. This Policy does not pay for remediation, change, correction, repair or assessment of any **date or time recognition** problem, including the Year 2000 problem, in any **electronic data processing equipment or media**, whether preventative or remedial, and whether before or after a loss, including temporary protection and preservation of property. This Policy does not pay for any business interruption loss resulting from the foregoing remediation, change, correction, repair or assessment.

2. Failure of **electronic data processing equipment or media** to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000, is not insured physical loss or damage. This Policy does not pay for any such incident or for any business interruption loss resulting from any such incident.

Subject to all of its terms and conditions, this Policy does pay for physical loss or damage not excluded by this Policy that results from a failure of **electronic data processing equipment or media** to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000. Such covered resulting physical loss or damage does not include any loss, cost or expense described in 1. or 2. above. If such covered resulting physical loss or damage happens, and if this Policy provides business interruption coverage, then, subject to all of its terms and conditions, this Policy also covers any insured business interruption loss directly resulting therefrom.

## B. CANCELLATION/NON-RENEWAL

This Policy may be:

1. Cancelled at any time at the request of the First Named Insured by surrendering this Policy to this Company or by giving written notice to this Company stating when such cancellation will take effect; or

2. Cancelled by this Company by giving the First Named Insured not less than:

   a) 60 days written notice of cancellation; or

   b) 10 days written notice of cancellation if the First Named Insured fails to remit, when due, payment of premium for this Policy; or

3. Non-renewed by this Company by giving the First Named Insured not less than 60 days written notice of non-renewal.

Return of any unearned premium will be calculated on the customary short rate basis if the First Named Insured cancels and on a pro-rata basis if the Company cancels this Policy. Return of any unearned premium will be made by the Company as soon as practicable.

## C. CONFORMITY TO STATUTE

Terms of this Policy that conflict with the statutes of the jurisdiction where the insured property is located, are amended to conform to such statutes.

## D. FIRST NAMED INSURED

The First Named Insured shown in the Declarations section:

1. Is responsible for the payment of all premiums.

**PRO AR 4100 (01/23)**                                                                                                  **Page 35 of 42**
*© 2021 AFM. All rights reserved.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

2. Will be the payee for any return premiums.

3. May authorize changes in the terms and conditions of this Policy with the consent of this Company.

## E. INCREASE IN HAZARD

This Policy will not apply to any **location** where there is an increase in hazard over which the Insured has control and knowledge. Any increase in hazard at one or more **locations** will not affect coverage at other **locations** where, at the time of loss or damage, the increase in hazard does not exist.

## F. INSPECTIONS

This Company, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property. This Company does not address life, safety or health issues.

This Company's:

1. Right to make inspections; or

2. Making of inspections; or

3. Providing recommendations or other information in connection with any inspections,

Will not constitute an undertaking, on behalf of or for the benefit of the Insured or others.

This Company will have no liability to the Insured or any other person because of any inspection or failure to inspect.

When this Company is not providing jurisdictional inspections, the Owner/Operator has the responsibility to assure that jurisdictional inspections are performed as required, and to assure that required jurisdictional Operating Certificates are current for their pressure equipment.

## G. LIBERALIZATION CLAUSE

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

## H. MISREPRESENTATION AND FRAUD

This entire Policy will be void if, whether before or after a loss, an Insured has:

1. Willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, any insurance claim, or the interest of an Insured.

2. Made any attempt to defraud this Company.

3. Made any false swearing.

## I. MORTGAGEE/LENDERS LOSS PAYABLE

Loss or damage, if any, to specified property insured under this Policy shall be payable to each specified Lenders Loss Payable (hereinafter referred to as Lender) and specified Mortgagee as its interest may appear.

This insurance as to the interest of the Lender or Mortgagee shall not be invalidated by:

1. Any act or neglect of the debtor, mortgagor or owner (as the case may be) of the property.

*© 2021 AFM. All rights reserved.*

2. Foreclosure, notice of sale or similar proceedings with respect to the property.

3. Change in the title or ownership of the property.

4. Change to a more hazardous occupancy.

The Lender or Mortgagee will notify this Company of any known change in ownership, occupancy or hazard and, within 10 days of written request by this Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

If the Insured fails to render proof of loss within the time provided in this Policy, the Lender or Mortgagee shall render proof of loss within sixty days after having knowledge of the Insured's failure in the form and manner provided by this Policy, and, further, shall be subject to the provisions of this Policy relating to Appraisal, Legal Action Against this Company, and Settlement of Claims.

If this Policy is cancelled at the request of the First Named Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate 10 days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

1. Sooner terminated by authorization, consent, approval, acceptance or ratification of the Insured's action by the Lender or Mortgagee, or its agent.

2. This Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

This Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice 60 days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor or owner has failed to pay any premium due under this Policy, this Company may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice 10 days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

Whenever this Company shall pay the Lender or Mortgagee for loss or damage under this Policy and shall deny payment to the debtor, mortgagor or owner, this Company shall, to the extent of such payment, be subrogated to the rights of the Lender or Mortgagee under all collateral held to secure the debt or mortgage. No subrogation shall impair the right of the Lender or Mortgagee to recover the full amount due. At its option, this Company may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to this Company, and the remaining debt or mortgage will be paid to this Company.

This Company may invoke this Policy's Suspension clause. The suspension of insurance will apply to the interest of the Lender or Mortgagee in any machine, vessel, or part of any machine or vessel subject to the suspension. This Company will provide the Lender or Mortgagee at the last reported address a copy of the suspension notice.

All notices sent to the Lender shall be sent to its last reported address.

Other provision relating to the interests and obligations of the Lender or Mortgagee may be added to this Policy by agreement in writing.

## J. POLICY MODIFICATION

This Policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. This Policy can be changed only by endorsements issued by the Company and made a part of this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not:

1. Create a waiver, or change any part of this Policy; or

*© 2021 AFM. All rights reserved.*

2. Prevent the Company from asserting any rights under the provisions of this Policy.

## K. REINSTATEMENT OF LIMITS AFTER A LOSS

Except for an **annual aggregate** limit of liability, any loss or payment of any claim will not reduce the amount payable under this Policy.

## L. REPRESENTATION OF RISK

This Policy has been issued based on the statement of values declared by the Insured prior to inception of this Policy. The Insured will provide the Company 100% values by **location** annually no later than sixty (60) days prior to the Policy anniversary or renewal, unless otherwise agreed to. The Insured will also promptly report 100% of values for any **location(s)** purchased, leased or rented by the Insured after the inception, anniversary or renewal dates of this Policy.

Types of Values

1. Property values in accordance with the Valuation clause of the Loss Adjustment and Settlement section of this Policy.

2. Stock and Supplies values based on the average and maximum values for the previous 12-month period.

3. Business Interruption values projected for the 12 months following the inception date of this Policy and for every renewal thereof, and the actual Business Interruption values for the previous 12-month period.

If the Company determines that any of the above values reported by the Insured are not accurate, the Insured will cooperate with the Company to conduct an appraisal or analysis of such values.

## M. SANCTIONS

This Policy shall not provide coverage for any claim, under any provision, if coverage and payment of such claim would expose this Company to any sanctions, prohibitions or restrictions under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

## N. SUSPENSION

Upon discovery of a dangerous condition, this Company may immediately suspend the **boiler and machinery** insurance with respect to any machine, vessel or part thereof by giving written notice to the Insured. The insurance that is suspended may be reinstated by this Company. The Insured will be allowed the return of the unearned portion of the premium resulting from the suspension of insurance.

## O. TRANSFER OF RIGHTS AND DUTIES UNDER THIS POLICY

The Insured's rights, interests and duties under this Policy may not be transferred or assigned without this Company's written consent.

*© 2021 AFM. All rights reserved.*

# DEFINITIONS

**actual cash value** means the cost to repair or replace the property, on the date of the loss or damage, with material of like kind and quality, less proper deduction for obsolescence and physical depreciation.

**annual aggregate** means the Company's maximum amount payable during any policy year.

**boiler and machinery** means:

1. Direct physical loss or damage originating within:

   a) Boilers, fired or unfired pressure vessels, vacuum vessels and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

      i) Waste disposal piping;

      ii) Any piping forming part of a fire protective system;

      iii) Furnaces; and

      iv) Any water piping other than:

         (a) Boiler feed water piping between the feed pump or injector and the boiler;

         (b) Boiler condensate return piping; or

         (c) Water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

   b) All mechanical, electrical, electronic or fiber optic equipment;

1. And caused by, resulting from or consisting of:

   a) Mechanical breakdown; or

   b) Electrical or electronic breakdown; or

   c) Extremes or changes of temperature; or

   d) Rupture, bursting, bulging, implosion or steam explosion.

2. **boiler and machinery** as used in this Policy does not mean:

   Physical loss or damage caused by or resulting from any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

   a) Combustion explosions, except from within combustion gas turbines; or

   b) Explosions from liquids coming in contact with molten materials; or

   c) Accidental discharge, escape, leakage, backup or overflow to the open of any material from confinement within piping, plumbing systems or tanks except from property described in Item 1a above; or

   d) Fire, or from the use of water or other means to extinguish a fire.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

**communicable disease** means disease which is:

1.  Transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges, or

2.  Legionellosis.

**contaminant** means anything that causes **contamination**.

**contamination** means any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

**cyber event** means any act involving the malicious or unauthorized access to, operation of, or use of **electronic data processing equipment or media**, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, explosion or sprinkler leakage resulting from **cyber event** will not be considered to be loss by **cyber event** within the terms and conditions of this Policy.

**date or time recognition** means the recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or processing of data involving one or more dates or times, including the Year 2000.

**described location(s)** means the locations described in the Insurance Provided clause of the Declarations section of this Policy.

**earth movement** means any natural or man-made earth movement, including but not limited to earthquake or landslide regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, explosion, sprinkler leakage or **flood** resulting from **earth movement** will not be considered to be loss by **earth movement** within the terms and conditions of this Policy.

**electronic data processing equipment or media** means any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

**fine arts** means paintings; etchings; pictures; tapestries; rare or art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money and securities.

**flood** means flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not; or sewer backup resulting from any of the foregoing; regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss. Physical loss or damage from **flood** associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be **flood** within the terms of this Policy. However, physical loss or damage by fire, explosion or sprinkler leakage resulting from **flood** is not considered to be loss by **flood** within the terms and conditions of this Policy.

**Green** means products, materials, methods and processes certified by a **Green Authority** that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

**Green Authority** means an authority on **Green** buildings, products, materials, methods or processes that are certified and accepted by Leadership in Energy and Environmental Design (LEED®), Green Building Initiative Green Globes®, Energy Star Rating System or any other recognized **Green** rating system.

**irreplaceable** means an item which cannot be replaced with other of like kind and quality.

**location** means a location described in the Insurance Provided clause of the Declarations section or included as Newly Acquired Property or Unnamed Property coverages.

*© 2021 AFM. All rights reserved.*

**named perils** means fire, lightning, **wind**, hail, explosion, smoke, impact from aircraft and vehicles, objects falling from aircraft, strike, riot, civil commotion, vandalism, theft, attempted theft, sprinkler leakage or collapse of buildings.

**occurrence** means the sum total of all loss or damage of the type insured, including any insured Business Interruption loss, arising out of or caused by one discrete event of physical loss or damage, except as respects the following:

1. **terrorism: occurrence** will mean the sum total of all loss or damage of the type insured, including any insured Business Interruption loss, arising out of or caused by all acts of **terrorism** during a continuous period of seventy-two (72) hours.

2. **earth movement: occurrence** will mean the sum total of all loss or damage of the type insured, including any insured Business Interruption loss, arising out of or caused by all **earth movement(s)** during a continuous period of seventy-two (72) hours.

**off-premises data processing or data transmission services** means the storage or processing of data performed off-premises of the Insured's property, including the transmission of voice, data or video over a single, or combination of, computer or communication networks.

**offshore** means away from the shore but not connected to the shore by docks, piers or any other physical connection other than pipelines.

**ordinary payroll** means:

1. Wages of all employees except officers, executives, department managers, and employees under contract or similar key employees; and

2. Includes taxes and charges dependent on the payment of those wages.

**physical loss or damage to electronic data, programs or software** means the destruction, distortion or corruption of electronic data, programs or software.

**production machinery and equipment** means any production or process machine(s) or apparatus that processes, forms, cuts, shapes, grinds or conveys **raw materials**, materials in process or finished goods and any associated equipment utilized in production including but not limited to electrical cabling, transformers, HVAC and any equipment or apparatus that is mounted upon or used exclusively with any one or more production or process machine(s) or apparatus.

**raw materials** mean materials and supplies in the state in which the Insured receives them for conversion by the Insured into finished goods.

**soft costs** means the expenses over and above normal expenses at **locations** undergoing alterations or additions to existing property and property in the course of construction limited to the following:

1. Construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, and charges by the lenders for the extension or renewal of loans necessary.

2. Commitment fees, leasing and marketing expenses - the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of releasing and marketing of the Insured Project due to loss of tenant(s) or purchaser(s).

3. Additional fees - for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

4. Carrying costs - building permits, additional interest on loans, insurance premiums and property and realty taxes.

**stock in process** means **raw materials** or stock, which has undergone any aging, seasoning, mechanical or other process or manufacture, but which is not finished goods.

**PRO AR 4100 (01/23)**      **Page 41 of 42**
*© 2021 AFM. All rights reserved.*

**terrorism** means:

1. Any act, involving the use or threat of: force, violence, dangerous conduct, interference with the operations of any business, government or other organization or institution, or any similar act,

2. When the effect or apparent purpose is:

   To influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or to further, or to express support for, or opposition to, any political, religious, social, ideological or similar type of objective or position.

**transmission and distribution systems** means transmission and distribution systems including but not limited to electricity, gas, fuel, steam, water, refrigeration, sewerage, voice, data and video. Such systems shall include poles, towers and fixtures, overhead conductors and devices, underground and underwater conduit, underground and underwater conductors and devices, line transformers, service meters, street lighting and signal systems.

**valuable papers and records** means inscribed, printed or written: documents; manuscripts or records including abstracts; and, books, deeds, drawings, films, maps or mortgages, all of which must be of value to the Insured. **Valuable papers and records** are not: money, securities and stamps; converted data programs or instructions used in the Insured's data processing operations; or, materials on which data is recorded.

**water damage** means the accidental discharge, escape, leakage, backup or overflow of water from piping, plumbing systems or tanks. **Water damage** does not mean or include anything defined as **flood** in this Policy.

**wind** means direct action of wind including substance driven by wind. **Wind** does not mean or include anything defined as **flood** in this Policy.

**workplace accident** means a sudden, fortuitous event that happens during working hours and arises out of work performed in the course and the scope of employment.

*© 2021 AFM. All rights reserved.*




# Condominium Endorsement

This Endorsement is a part of this Policy and the terms and conditions of this Policy are amended as described herein. All other terms and conditions of this Policy remain unchanged.

## 1. Condominium Maintenance Fees

This Policy covers the actual loss incurred by the Insured of condominium maintenance fees that the Insured is unable to collect during the Period of Liability as a direct result of insured physical loss or damage to insured property.

Condominium Maintenance Fees Exclusion: As respects Condominium Maintenance Fees, the following additional exclusions apply:

This Policy excludes:

**a)** Loss caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

The Period of Liability for this coverage will be:

The period of time:

**a)** Starting from the time of insured physical loss or damage; and

**b)** Ending when, with due diligence and dispatch, the lost or damaged property could be repaired or replaced and made tenantable under the same or equivalent physical conditions that existed prior to the loss or damage.

## 2. Contingent Real Property

This Policy covers Real Property that is the contractual responsibility of the Insured's lessee to insure for physical loss or damage of the type insured. Coverage under this Policy shall apply only after the coverage provided under the lessee's policy has been exhausted. The lessee's policy will be the first policy to respond in the event of loss or damage. Upon exhaustion of coverage under the lessee's policy, this Policy will cover:

**a)** The difference in definitions, perils, conditions or coverages between the lessee's policy and this Policy; and

**b)** The difference between the limit(s) of liability stated in the lessee's policy and this Policy;

Provided that:

**a)** The coverage is provided under this Policy;

**b)** The limit(s) of liability has been exhausted under the lessee's policy; and

**c)** The deductible(s) applicable to such claim for loss or damage under the lessee's policy has been applied. If the deductible applied in the lessee's policy is different from the deductible that would have been applied for such loss under this Policy, then this Policy will provide for such difference in deductible.

Notwithstanding the foregoing, in the event that the lessee has not placed coverage, or has allowed a policy to lapse, be non-renewed or cancelled, then this Policy shall act as primary insurance as respects the loss or damage. In the event this Policy shall become primary insurance, each claim for loss or damage under this Policy shall be subject to the applicable deductible(s) under this Policy.

**PRO CO CRP 4100 (01/17)**     **Page 1 of 3**
*© 2017 AFM. All rights reserved.*

This Policy will not cover any loss due to insolvency or bankruptcy of the insurance company issuing the lessee's policy.

Any coverage provided by the lessee's policy that is not provided in this Policy does not extend to this Policy.

## 3. Emergency Evacuation Expense

This Policy covers the reasonable and necessary costs incurred by the Insured for the emergency evacuation and subsequent return of tenants or lawful occupants when the Insured's management, using reasonable discretion, or a civil authority orders the emergency evacuation of a described location as a direct result of immediately impending physical loss or damage of the type insured by this Policy.

Emergency Evacuation Expense Exclusions: As respects Emergency Evacuation Expense, the following additional exclusions apply:

This Policy excludes:

a) The cost to move personal property of tenants or lawful occupants.

b) The cost of temporary or permanent housing or lodging.

c) Loss caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage happened.

## 4. Tenant Relocation Expense

This Policy covers the reasonable and necessary **tenant relocation expenses** incurred by the Insured to relocate and return tenants or lawful occupants to other quarters within this Policy's Territory when rented space or living quarter(s) at a **described location** are made uninhabitable as a direct result of physical loss or damage insured by this Policy.

Tenant Relocation Expense Exclusions: As respects Tenant Relocation Expense, the following additional exclusions apply:

This Policy excludes:

a) Loss caused by the termination of a lease or other agreement.

b) Security deposits, rent or other payments made to the landlord or lessors of the new quarters.

c) Down payments, purchase price, legal fees and closing costs for the purchase of new quarters.

d) The cost of permanent housing or lodging.

e) Loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

For purposes of this coverage, **tenant relocation expenses** means the cost to:

a) Pack and transport personal property of the type insured of tenants or lawful occupants.

**PRO CO CRP 4100 (01/17)**
*© 2017 AFM. All rights reserved.*



FILED DATE: 3/17/2026 3:32 PM   2026CH02542

**b)**   Store such personal property while awaiting possession of other quarters or restoration of existing quarters.

**c)**   Search for new quarters.

**d)**   Disconnect and reconnect fixtures and equipment.

**e)**   Re-establish new utility services less refunds from discontinued services.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# SUPPLEMENTAL UNITED STATES
# CERTIFIED ACT OF TERRORISM ENDORSEMENT

**This Endorsement is applicable to all property in the United States, its territories and possessions and the Commonwealth of Puerto Rico.**

**Coverage for Certified Act of Terrorism Under The Terrorism Risk Insurance Act of 2002, as amended.**

In consideration of a premium charged of USD 0, this Policy, subject to the terms and conditions therein and in this Endorsement, covers direct physical loss or damage to insured property and any resulting Business Interruption loss, as provided in the Policy, caused by or resulting from a **Certified Act of Terrorism**.

Notwithstanding anything contained elsewhere in this Policy, any exclusion or limitation of terrorism in this Policy and any endorsement attached to and made a part of this Policy, is hereby amended to the effect that such exclusion or limitation does not apply to a **Certified Act of Terrorism** as defined herein. This amendment does not apply to any limit of liability for a **Certified Act of Terrorism**, if any, stated under any Sub-Limits clause in the Declarations section of this Policy.

With respect to any one or more **Certified Act(s) of Terrorism**, this Company will not pay any amounts for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act of 2002 (including subsequent action of Congress pursuant to the Act) which includes a provision stating that if the aggregate insured losses exceed USD 100,000,000,000 during any calendar year, neither the United States Government nor any insurer that has met its insurer deductible shall be liable for the payment of any portion of the amount of such losses that exceed USD 100,000,000,000. If the aggregate insured losses for all insurers exceed USD 100,000,000,000, your coverage may be reduced.

The coverage provided under this Endorsement for a **Certified Act of Terrorism** will be partially reimbursed by the United States Government under a formula established by Federal Law. Under this formula, the United States pays 80% of covered terrorism losses exceeding a statutorily established retention by the insurer referenced in this Policy. The premium charged for this coverage is provided above.

The terms and limitations of any **terrorism** exclusion, or the inapplicability or omission of **terrorism** exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Endorsement or the Policy.

The coverage provided by this Endorsement only applies to a **Certified Act of Terrorism**.

For the purposes of this Endorsement, a **Certified Act of Terrorism** means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 as amended. The criteria contained in that Act for a **Certified Act of Terrorism** include the following:

a. The act resulted in aggregate losses in excess of USD 5,000,000; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542





# ILLINOIS

# AMENDATORY ENDORSEMENT

With respect to any insured location in the State of Illinois this policy is amended:

The following applies if, under the statutory law of the State of Illinois, Standard Fire Policy (SFP) requirements must apply to physical loss or damage by fire resulting from **terrorism**:

A. Exclusion Group I Item 2g under the EXCLUSIONS clause the ALL RISK COVERAGE section is replaced with:

    **g)** **Terrorism**, including action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**, except to the extent provided in the Terrorism coverage of this Policy. However, if direct loss or damage by fire results from any of these acts (unless committed by or on behalf of the Insured), then this Policy covers only to the extent of the **actual cash value** of the resulting direct loss or damage by fire to insured property. This coverage exception for such resulting fire loss or damage does not apply to:

        **i)** Direct loss or damage by fire which results from any other applicable exclusion in the Policy, including the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

        **ii)** Any coverage provided in the Business Interruption section of this Policy or to any other coverages provided by this Policy.

    Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion or any other risk of physical loss or damage covered elsewhere in this Policy.

    If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Items 2a or 2b of this Exclusions clause then Group I Items 2a or 2b applies in place of this Group I Item 2g exclusion.

    If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Item 2c of this Exclusions clause then Group I Item 2c applies in place of this Group I Item 2g exclusion.

    If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Item 2d of this Exclusions clause then Group I Item 2d applies in place of this Group I Item 2g exclusion.

    If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this Group I Item 2g exclusion applies in place of Group I Item 1 of this Exclusions clause.

B. The following is added to the BUSINESS INTERRUPTION EXCLUSIONS clause in the BUSINESS INTERRUPTION section:

    Any loss resulting from the **actual cash value** portion of direct physical loss or damage by fire caused by or resulting from **terrorism**.

C. The following is added under VALUATION in the LOSS ADJUSTMENT AND SETTLEMENT section:

    On property that is damaged by fire and such fire is the result of **terrorism**, the **actual cash value** of the fire damage loss. Any remaining fire damage loss shall be adjusted according to the terms and conditions of the Valuation clause(s) of the Policy and shall be subject to the limit(s) of liability for Terrorism, and if stated the

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

**AFM 1726 (01/23)**                                                                                                 **Page 1 of 4**




FILED DATE: 3/17/2026 3:32 PM   2026CH02542

limit of liability for SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S), as shown in the Limits of Liability clause in the Declarations section.

**CANCELLATION** - This policy shall be cancelled at any time at the request of the Insured in which case this Company shall upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.

This policy is subject to cancellation by this company as follows:

This Company will give not less than thirty (30) days' written notice of cancellation if this policy has been in effect for sixty (60) days or less, or not less than sixty (60) days' written notice of cancellation if this policy has been in effect for sixty-one (61) days or more, or not less than sixty (60) days' written notice of intention not to renew.  All such notices shall include a specific explanation of the reason or reasons for cancellation or nonrenewal.  Such notices shall be sent to the Named Insured by certified mail and copies thereof shall be sent to the agent of record and/or the Insured's broker, if known, and to the mortgagee or lienholder as named in this policy at the Insured's last known address.  However, this policy may be cancelled by this Company if the Insured fails to remit, when due, the payment of premium for such policy, by giving the Insured not less than ten (10) days' written notice of cancellation.

After this policy has been in effect for sixty (60) days, it may be cancelled only for one of the following reasons:

1.  Nonpayment of premium;

2.  This policy was obtained through a material misrepresentation;

3.  Any Insured violated any of the terms and conditions of this policy;

4.  The risk originally accepted has measurably increased;

5.  Certification to the Director of the loss of reinsurance by the insurer which provided coverage to the insurer for all or a substantial part of the underlying risk insured; or

6.  A determination by the Director that the continuation of this policy could place the insurer in violation of the insurance laws of this State.

Should this Company fail to comply with the foregoing provisions concerning notice of intention not to renew, this policy shall terminate only on the effective date of any similar insurance procured by the Insured with respect to the same subject or location designated in both policies.

Return of any unearned premium will be calculated on a pro-rata basis if the Company cancels this Policy.

**NONRENEWAL**

Should the Company fail to give at least 60 days' notice prior to expiration of intention not to renew, but:

a)  Give at least 31 days notice, this Policy shall be extended for a period of 60 days or until the effective date of any similar insurance procured by the Insured, whichever is less, on the same terms and conditions as the policy sought to be terminated; or

b)  Give less than 31 days notice, this Policy shall be extended for a period of one year or until the effective date of any similar insurance procured by the Insured, whichever is less, on the same terms and conditions as the policy sought to be terminated unless the Company has manifested its willingness to renew at a premium which represents an increase not exceeding 30%.

c)  The Company shall provide a specific explanation of the reasons for nonrenewal.




FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Renewal of this Policy does not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal.

**PREMIUM OR COVERAGE CHANGES** - If the Company intends to renew this policy with a premium increase of thirty percent (30 %) or more, the Company will mail a written notice of the change to the Named Insured at the mailing address shown on the policy at least 60 days prior to the expiration date.  In case of notice to the agent of record, the notice will be mailed at least 60 days prior to the expiration date.  Failure to do so will result in the policy being extended for an additional year under the same terms, conditions and premium.

**ADDITIONAL PROVISIONS APPLICABLE ONLY TO RESIDENTIAL PROPERTY - (UP TO FOUR FAMILY DWELLING) AND PERSONAL OR HOUSEHOLD PROPERTY INCIDENTAL THERETO**

1.  If this policy has been in effect for one year, or is a renewal policy, this company may exercise its right of cancellation for only one or more of the following reasons: (a) nonpayment of premium; (b) misrepresentation or fraud; (c) an act that measurably increases the risk originally accepted.

2.  If this policy has been effective or renewed for five (5) or more years, this company may not exercise its right of nonrenewal unless: (a) this policy was obtained by misrepresentation or fraud; (b) the risk originally accepted has measurably increased, or (c) the Insured has received sixty (60) days' notice of this company's intention not to renew.

**OTHER INSURANCE –** When there is other insurance with like terms, conditions and coverages this coverage will share proportionately with other similar coverages.

**SUSPENSION -** The Suspension clause in the policy to which this is attached shall apply to Boiler and Machinery Insurance by which the Chief Inspector or his authorized representative may at any time suspend an Inspection Certificate when, in his opinion, the boiler or pressure vessel for which it was issued cannot be operated without menace to public safety, when the boiler or pressure vessel is found not to comply with the rules and regulations herein provided, or when an owner or operator has failed to pay any required fees or refused to allow inspection.  In that event, the Chief Inspector or his representative shall issue a Notice of Suspension, which shall be posted in a conspicuous location on or near the posted Inspection Certificate.  Each suspension of an Inspection Certificate shall continue in effect until the boiler or pressure vessel has been made to conform to the rules and regulations of the Board, and until the Inspection Certificate has been reinstated.

**LEGAL ACTION AGAINST THIS COMPANY –** No suit, action, or proceeding for the recovery of any claim under this policy, will be sustainable in any court of law or equity unless:

1.  The Insured has fully complied with all terms and conditions of the policy;

2.  It is Initiated within two years after the date on which the direct physical loss or damage first commenced or occurred, extended by the number of days between the date the proof of loss was filed until the date the claim is denied in whole or in part.

**APPRAISAL** – The appraisal agreement as found in the Appraisal clause in this policy is voluntary between the Named Insured and the Company. Neither party shall be deprived of the right to trial by jury on any question of fact arising under this policy.





FILED DATE: 3/17/2026 3:32 PM   2026CH02542

**MISREPRESENTATION AND FRAUD -** The provision MISREPRESENTATION AND FRAUD is replaced by:

1.  This entire Policy will be void if an Insured has:

    a)  Willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, or the interest of an Insured;

    b)  Such fact or circumstance is stated in the policy, endorsement or rider attached thereto, or in the written application therefore; and

    c)  The concealment or misrepresentation is made with the intent to deceive, or materially affected either the acceptance of the risk or the hazard assumed by the Company.

2.  This Company will not pay for any loss or damage if an Insured has:

    a)  Willfully concealed or misrepresented any material fact or circumstance concerning the loss or damage, or the interest of an Insured; and

    b)  The concealment or misrepresentation is made with the intent to deceive or materially affected the claim.

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# EXHIBIT 2



Member of the FM Global Group

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

June 5, 2024

Martin McDonagh IL-CAM, CMCA, AMS          (sent via email: Martin.McDonagh@fsresidential.com)
First Service Residential

Re:

|  |  |
|---|---|
| Named Insured: | Park 1500 Lofts Condominium Association |
|  | 1500 West Monroe, c/o Building Office |
|  | Chicago, IL 60607, USA |
| Location Address: | 6 South Laflin Street and 1500 West Monroe |
|  | and 1501-1507 West Madison, Chicago, IL 60607, USA |
| Policy No.: | 1114546 - (Location No. 001) |
| Loss Description: | Miscellaneous (Fractured/Displaced Wood Column) |
| Date of Loss: | 28-Jan-2024 |
| AFU File No.: | 826938 |

Dear Mr. McDonagh,

The purpose of this letter is to outline the application of Property Damage and Time Element coverages under the AFM Policy related to the fracture/displacement of the 11-inch by 11-inch wood column located inside Unit 324.

## Loss Description

On January 28, 2024, the owners of Units 324 and 424 reported hearing loud noise that resulted in the cracking of a wood post. A representative from the Park 1500 Lofts Condominium Association ("Association") contacted and retained Wiss, Janney, Elstner Associates, Inc. ("WJE") the same day to investigate the loss and determine the cause of loss. Upon arrival, WJE in an attempt to support the load that the 11-inch by 11-inch wood column in Unit 324 was meant to support, and installed metal bands around the wood column after additional cracks were discovered. Reportedly, the floor inside Unit 424 shifted downward slightly, after the wood column cracked in Unit 324.

Initially, the City of Chicago Department of Buildings did not approve the shoring and instructed the Association to provide calculations and designs for more comprehensive shoring. Subsequently, the City of Chicago Department of Buildings issued a vacate order on January 29, 2024, ordering that a total of 36 units across eight floors be evacuated. This vacate order was lifted on February 21, 2024, after the approved shoring was installed inside Unit 324. 29 of the 36 Units vacated were allowed to be re-occupied, and 7 Units remained under a vacate order from the City of Chicago Department of Buildings.

## Coverage

This confirms our review of your Policy No. 1114546 with AFM Insurance Company, which insures against all risks of direct physical loss or damage, **where no exclusion applies**, to the Scheduled Location No. 001, as described in the Policy.

Coverage for the loss is provided for the fractured/displacement damage to Real and Personal Property at the above-referenced location resulting from this loss, subject to the terms and conditions of the Policy. In addition, coverage is provided for the actual Time Element losses directly resulting from the fracture/displacement damage, subject to the terms and conditions of the Policy.

FILED DATE: 3/17/2026 3:32 PM    2026CH02542

Under the "L. Valuation" section of the Policy, adjustment of the physical loss or damaged property will be computed as of the date of loss at the place of the loss, and for no more than the interest of the insured.

Adjustment of physical loss to property will be determined based on the lesser cost to repair, cost to rebuild or replace the damaged property on the same site with new material of like size, kind and quality.

*The covered loss is subject to the "All-Other Loss" USD 10,000 deductible.*

**Loss Adjustment/Payables**

All claim payment(s) issued towards this loss will be made payable to the Park 1500 Lofts Condominium Association, or as directed by the Park 1500 Lofts Condominium Association.

In reviewing the Policy, under "**H. SPECIAL TERMS AND CONDITIONS**" the following payables appear to have an interest in the loss. *We ask that you please confirm in writing that our understanding is correct.*

1. **Additional Named Insured - PRO 65 (04/15)**

   The following are added as Additional Named Insured(s) on property described below, as their interest may appear:

   | **Additional Named Insured and Address** | **Location/Interest** |
   | --- | --- |
   | RS Commercial, LLC<br>1501 West Madison Street<br>Chicago, Illinois, 60607<br>United States of America | Real Property Only |

2. **Mortgagee/Lenders Loss Payable - PRO 66 (04/15)**

   Subject to the **GENERAL CONDITIONS, MORTGAGEE/LENDERS LOSS PAYABLE**, loss, if any, under this Policy will be adjusted with and made payable to the Insured and the following, as their interest may appear:

   | **Mortgagee/Lender and Address** | **Location/Interest** |
   | --- | --- |
   | Lakeside Bank, ISAOA<br>141 West Jackson St.<br>Suite 130-A<br>Chicago, Illinois, 60604 United States of America | All Locations |

C.     **EXCLUSIONS**

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

**GROUP II**:     This Policy excludes the following, however, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

1. Wear and tear, deterioration, depletion, rust, corrosion, erosion, inherent vice or latent defect.
2. Faulty workmanship, material, construction or design.
5. Settling, cracking, shrinking, bulging or expansion of:

> a) Foundations.
> b) Walls.
> c) Floors.
> d) Pavements or roadways.
> e) Roofs.
> f) Ceilings.

8.   **Debris Removal**

This Policy covers the reasonable and necessary costs incurred to remove debris from a **location** that remains as the direct result of insured physical loss or damage.

This coverage does not cover the costs of removing:

a)      Contaminated uninsured property; or
b)      The **contaminant** in or on uninsured property;

Whether or not the contamination results from insured physical loss or damage.

This coverage includes the costs of removal of contaminated insured property or the contaminant in or on insured property only if the contamination, due to the actual not suspected presence of **contaminant(s)**, of the debris resulted directly from other physical damage not excluded by the Policy.

***This coverage is subject to the Policy Limit.***

14.   **Expediting Expenses**

This Policy covers the reasonable and necessary costs incurred to:

a)      Temporarily repair or replace; and
b)      Expedite the permanent repair or replacement of;

Insured property that has sustained insured physical loss or damage.

This coverage does not include expenses payable elsewhere in this Policy including the cost of permanent repair or replacement of damaged property.

***This coverage is subject to a Sub-Limit amount of 250,000 USD.***

23.   **Professional Fees**

This Policy covers the reasonable and necessary expenses incurred by the Insured of:

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

a)      Auditors;
b)      Accountants;
c)      Architects;
d)      Engineers; or
e)      Other professionals; and
f)      The Insured's own employees,

***For producing and certifying particulars or details to determine the amount of loss payable under this Policy for which this Company has accepted liability.***

This coverage does not include the fees and expenses of attorneys, public adjusters, loss appraisers, loss consultants or any of their subsidiaries or related or associated entities.

***This coverage is subject to a Sub-Limit amount of 100,000 USD.***

## Condominium Endorsement

This Endorsement is a part of this Policy, and the terms and conditions of this Policy are amended as described herein. All other terms and conditions of this Policy remain unchanged.

### 3.  Emergency Evacuation Expense

This Policy covers the reasonable and necessary costs incurred by the Insured for the emergency evacuation and subsequent return of tenants or lawful occupants when the Insured's management, using reasonable discretion, or a civil authority orders the emergency evacuation of a described location as a direct result of immediately impending physical loss or damage of the type insured by this Policy.

Emergency Evacuation Expense Exclusions: As respects Emergency Evacuation Expense, the following additional exclusions apply:

This Policy excludes:

**a)**  The cost to move personal property of tenants or lawful occupants.
**b)**  The cost of temporary or permanent housing or lodging.
**c)**  Loss caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage happened.

***This coverage is subject to a Sub-Limit amount of 250,000 USD.***

### 4.  Tenant Relocation Expense

This Policy covers the reasonable and necessary **tenant relocation expenses** incurred by the Insured to relocate and return tenants or lawful occupants to other quarters within this Policy's Territory when rented

4

space or living quarter(s) at a **described location** are made uninhabitable as a direct result of physical loss or damage insured by this Policy.

Tenant Relocation Expense Exclusions: As respects Tenant Relocation Expense, the following additional exclusions apply:

This Policy excludes:

a) Loss caused by the termination of a lease or other agreement.
b) Security deposits, rent or other payments made to the landlord or lessors of the new quarters.
c) Down payments, purchase price, legal fees and closing costs for the purchase of new quarters.
d) The cost of permanent housing or lodging.
e) Loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

For purposes of this coverage, **tenant relocation expenses** means the cost to:

a) Pack and transport personal property of the type insured of tenants or lawful occupants. **b)** Store such personal property while awaiting possession of other quarters or restoration of existing quarters.
c) Search for new quarters.
d) Disconnect and reconnect fixtures and equipment.
e) Re-establish new utility services less refunds from discontinued services.

*This coverage is subject to a Sub-Limit amount of 250,000 USD.*

Additional comments on Policy coverage will be made at a later date should the need arise.

We are committed to paying claims in a timely manner, should you require an advanced payment(s) on the amount which exceeds the applicable deductible please let us know. After receiving and reviewing the required supporting documentation for the amount being claimed, which may include documents such as proposals, quotes, final itemized invoices, purchase orders, labor records, production & financial records, we will confirm how much we can offer at that time.

Should you have questions in this regard, please do not hesitate to contact me.

Best Regards,

**Kenneth K. Jones** | Senior General Adjuster, AVP – Chicago Operations (Claims)

5

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Cc:     Noelle Kaushik                    (sent via email: Noelle.Kaushik@alliant.com)
        Alliant

Cc:     Nancy Ayers                       (sent via email: Nancy.Ayers@alliant.com)
        Alliant

Cc:     Andy Hickey                       (Andy.Hickey@fsresidential.com)
        Community Association Manager
        First Service Residential

Cc:     Bill Russo                        (sent via email: Bill.Russo@englemartin.com)
        General Adjuster
        Engle Martin

6

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 3

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



CITY OF CHICAGO

──────────────────────✳──────────────────────

DEPARTMENT OF BUILDINGS

February 16, 2024

Martin McDonagh
Community Association Manager
First Service Residential
Park 1500 Lofts
1500 West Monroe
Chicago, IL 60607

Dear Mr. McDonagh:

On January 28, 2024, the Chicago Fire Department responded to a 911 call at 1500 West Monroe in response to a heavy timber structural failure of a column in unit 324.

The Fire Department made the determination to vacate the building Pursuant to 14A-3-307.1 of the Chicago Construction Code, "Where a *building*, *structure*, or *premises* has been damaged by fire, deterioration, or other cause, or ***shows clear evidence of structural failure***, and where it constitutes an actual and imminent danger to the public, the *building official, fire code official*, Superintendent of Police, or Commissioner of Public Health is authorized to order said *building*, *structure*, or *premises* vacated and closed."

Respectfully,

Marlene Hopkins
First Deputy Commissioner

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

2026CH02542

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 4

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



CITY OF CHICAGO

＊

DEPARTMENT OF BUILDINGS

April 26, 2024

Martin McDonagh
Community Association Manager
First Service Residential - Park 1500 Lofts
1500 West Monroe
Chicago, IL 60607

Dear Mr. McDonagh:

On April 26, 2024, the Department of Buildings was notified by Wiss, Janney, Elstner Associates, Inc. of a second failed structural column in Tier 22 of 1500 West Monroe while performing a condition assessment of the wood framing.

Pursuant to 14A-3-307.1 of the Chicago Construction Code, "Where a *building*, *structure*, or *premises* has been damaged by fire, deterioration, **or other cause**, or *shows clear evidence of structural failure*, and where it **constitutes an actual and imminent danger to the public**, the *building official, fire code official*, Superintendent of Police, or Commissioner of Public Health is authorized to order said *building*, *structure*, or *premises* vacated and closed."

It has therefore been determined that Tier 22 of the building constitutes an imminent and actual danger to the tenants and occupants, and to the public at large. THEREFORE, by the police powers vested in me Marlene Hopkins as Chicago Building Commissioner, I hereby order that **units 122, 222, 322, 422, 522, 622, 721, 722, located at 1500 West Monroe Street,** Chicago, Illinois, be immediately vacated, and remain vacant, and that entry be denied except by licensed and bonded contractors engaged to examine, repair, and otherwise correct the aforementioned conditions, or otherwise by authorized City of Chicago personnel until further order. Occupants may enter the premises under the supervision of the Property Management to remove personal items from said property.

As the property management company and owners, if you determine that additional units need to be vacated as an additional safety measure, please contact me via email at Marlene.Hopkins@cityofchicago.org.

Respectfully,

Marlene Hopkins
Commissioner
cc:    Annette Nance-Holt, Commissioner, Department of Fire
       Jose Tirado, Executive Director, OEMC
       Robert Fahlstrom, Manager of Regulatory Review
       Dixit Patel, Structural Engineer
       Marc Peterson, Building Construction Inspector

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# EXHIBIT 5

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

CITY OF CHICAGO

---*---

DEPARTMENT OF BUILDINGS

May 1, 2024

Martin McDonagh
Community Association Manager
First Service Residential - Park 1500 Lofts
1500 West Monroe
Chicago, IL 60607

Dear Mr. McDonagh:

On May 1, 2024, the Department of Buildings was notified by Wiss, Janney, Elstner Associates, Inc. has identified a structural timber column in the east wing of the building at 1500 West Monroe Street having characteristics that present an actual and imminent danger to the public. Based upon WJE's experience with this building, this first floor column has characteristics that place it at elevated risk of sudden loss of load-carrying capacity with little to no warning.

Pursuant to 14A-3-307.1 of the Chicago Construction Code, "Where a *building, structure, or premises* has been damaged by fire, deterioration, **or other cause**, or *shows clear evidence of structural failure*, and where it **constitutes an actual and imminent danger to the public**, the *building official, fire code official*, Superintendent of Police, or Commissioner of Public Health is authorized to order said *building, structure,* or *premises* vacated and closed."

It has therefore been determined that entire the building constitutes an imminent and actual danger to the tenants and occupants, and to the public at large. THEREFORE, by the police powers vested in me Marlene Hopkins as Chicago Building Commissioner, I hereby order that **the entire premises on the east wing impacting units 122, 123, 124, 125, 126, 127, 221, 222, 223, 224, 225, 226, 227, 321, 322, 323, 324, 325, 326, 327, 421, 422, 423, 424, 425, 426, 427, 521, 522, 523, 524, 525, 526, 527, 621, 622, 623 ,624, 625, 626, 627, 720, 721, 722, 723, 724, 725, 726, 727, and 825, located at 1500 West Monroe Street,** Chicago, Illinois, be immediately vacated, and remain vacant, and that entry be denied except by licensed and bonded contractors engaged to examine, repair, and otherwise correct the aforementioned conditions, or otherwise by authorized City of Chicago personnel until further order. Occupants may enter the premises under the supervision of the Property Management to remove personal items from said property.

As the property management company and owners, if you determine that additional units need to be vacated as an additional safety measure, please contact me via email at Marlene.Hopkins@cityofchicago.org.

Respectfully,

Marlene Hopkins
Commissioner

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 6



**CITY OF CHICAGO**

——————————✦——————————

DEPARTMENT OF BUILDINGS

June 6, 2025

Martin McDonagh
Community Association Manager
First Service Residential - Park 1500 Lofts
1500 West Monroe
Chicago, IL 60607

Dear Mr. McDonagh:

Between January 28, 2024 and May 1, 2024, The City of Chicago issued Vacate Orders for portions of the building at 1500 West Monroe Street, each summarized below:

- o **January 28, 2024:** The Chicago Fire Department evacuated Unit Tiers 23, 24, 25, 26, and 27 after the sudden failure of a heavy timber structural column in unit 324.
- o **February 22, 2024:** The Department of Buildings lifted the evacuation order for Unit Tiers 23, 25, 26, 27, and Unit 724 effective February 21, 2024 after temporary shoring was installed inside the first through sixth floors of Unit Tier 24, which was ordered to remain vacant because of the shoring inside the units.
- o **April 26, 2024:** The Department of Buildings was notified by Wiss, Janney, Elstner Associates, Inc. of a second failed heavy timber structural column in Unit Tier 22 and issued a Vacate Order impacting units 122, 222, 322, 422, 522, 622, 721, and 722.
- o **May 1, 2024:** The Department of Buildings was notified by Wiss, Janney, Elstner Associates, Inc. of a third heavy timber structural column having characteristics placing it at elevated risk for sudden loss of load carrying capacity with little to no warning and issued a Vacate Order impacting the entire east wing of the building, including units **122, 123, 124, 125, 126, 127, 221, 222, 223, 224, 225, 226, 227, 321, 322, 323, 324, 325, 326, 327, 421, 422, 423, 424, 425, 426, 427, 521, 522, 523, 524, 525, 526, 527, 621, 622, 623, 624, 625, 626, 627, 720, 721, 722, 723, 724, 725, 726, 727, and 825.**

Pursuant to 14A-3-307.1 of the Chicago Construction Code, "Where a *building*, *structure*, or *premises* has been damaged by fire, deterioration, **or other cause**, or *shows clear evidence of structural failure*, and where it **constitutes an actual and imminent danger to the public**, the *building official, fire code official*, Superintendent of Police, or Commissioner of Public Health is authorized to order said *building*, *structure*, or *premises* vacated and closed."

The Department of Buildings is prohibited from lifting the order to vacate pursuant to the provisions of the Chicago Construction Code Section 302.2 of the *2019 Chicago Building Rehabilitation Code with May 2020 Supplement* which states "***The building official shall require the elimination of dangerous conditions. The building official shall have the authority to require the elimination or abatement of unsafe conditions***".

FILED DATE: 3/17/2026 3:32 PM    2026CH02542

The Chicago Rehabilitation Construction Code definitions of "dangerous" and "unsafe" are listed below:

**Unsafe (From CBRC Chapter 2):** Buildings, structures or equipment that are unsanitary, or that are deficient due to inadequate means of egress facilities, inadequate light and ventilation, or that constitute a fire hazard, or in which the structure of individual structural members meet the definition of *"Dangerous"*, or that are involve illegal or improper occupancy or inadequate maintenance shall be deemed unsafe. A vacant structure that is not secured against entry shall be deemed unsafe.

**Dangerous (From CBRC Chapter 2 referencing Chicago Minimum Requirements for Existing Buildings, Ch 14X-2):** A *building* or *structure* that meets either of the conditions described below:

- The *building* or *structure* has collapsed, has partially collapsed, has moved off its foundation, or lacks the necessary support of the ground.

- There exists a significant risk of collapse, detachment, or dislodgement of any portion, member, appurtenance, or ornamentation of the *building* or *structure* under service loads.

At this current time, while work is in progress, the entire building remains imminently dangerous to the tenants and occupants, and to the public at large. Therefore, I hereby order and affirm that the May 1, 2024 Vacate Order remain in effect for **the entire premises on the east wing impacting units 122, 123, 124, 125, 126, 127, 221, 222, 223, 224, 225, 226, 227, 321, 322, 323, 324, 325, 326, 327, 421, 422, 423, 424, 425, 426, 427, 521, 522, 523, 524, 525, 526, 527, 621, 622, 623, 624, 625, 626, 627, 720, 721, 722, 723, 724, 725, 726, 727, and 825, located at 1500 West Monroe Street,** Chicago, Illinois, which shall all remain **vacant**, until such time that all repairs and inspections to abate dangerous and unsafe conditions are completed and minimum standards for habitability are reestablished.

Respectfully,

Marlene Hopkins
Commissioner
cc:   Annette Nance-Holt, Commissioner, Department of Fire
       Frank Velez, Executive Director, OEMC
       Robert Fahlstrom, Manager of Regulatory Review
       Dixit Patel, Structural Engineer
       Marc Peterson, Building Construction Inspector

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 7



**Affiliated**

January 28, 2025

Martin McDonagh IL-CAM, CMCA, AMS
First Service Residential

Re:

| | |
|---|---|
| Named Insured: | Park 1500 Lofts Condominium Association |
| | 1500 West Monroe, c/o Building Office |
| | Chicago, IL 60607, USA |
| Location Address: | 1500 West Monroe, Chicago, IL 60607, USA |
| Policy No.: | 1114546 - (Location No. 001) |
| Loss Description: | Miscellaneous |
| Date of Loss: | 26-Apr-2024 (Date of Discovery) |
| AFU File No.: | 829163 |

Dear Mr. McDonagh,

This letter serves to outline the application of coverage under FM Affiliated Policy No.1114546 for structural conditions in several areas of the building that were discovered during a recent structural analysis.

These reported conditions were detailed in a 265-page document titled 'Summary of Timber Failures' provided by Wiss, Janney, Elstner Associates, Inc. (WJE) on November 21, 2024.

Our review of this document revealed the following reported conditions:

- Interior Column – Unit 122/222: A 11-inch by 11-inch wooden column is crushed at the base due to past construction activities. The column is not able to support its tributary share of the weight of the building loads.

- Interior Column– Unit 522/622: A wooden column is bowed due to past construction activities.

FM Affiliated retained Engineering System Inc. (ESi) to review the documents provided by WJE, investigate and determine the cause of the reported structural issues, and ESi issued a report on December 30, 2024, which is enclosed.

The report includes the following findings:

- Interior Column – Unit 122/222: The 11-inch by 11-inch timber column was crushed as a result of past construction in the building and not the result of any discrete event of physical loss or damage.

- Interior Column– Unit 522/622: The column was bowed and showed no signs of distress or displacement.

---

## POLICY REVIEW

This confirms our review of FM Affiliated Policy No. 1114546, with effective dates 01-May-2023 to 01-May-2024 (the "Policy Term") and issued to Park 1500 Lofts Condominium Association (the "Policy"). Subject to all its terms, conditions, limitations, and exclusions, the Policy provides coverage during the Policy Term against all risks of direct physical loss or damage, where **no exclusion applies**, to the covered property at scheduled location No.001 at 6 South Laflin Street and 1500 West Monroe and 1501-1507 West Madison, Chicago, IL, 60607 USA.

The Policy contains the following provisions:

\*\*\*

## ALL RISK COVERAGE

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

\*\*\*

## C. EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

**GROUP II**: This Policy excludes the following, however, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

\*\*\*

2. Faulty workmanship, material, construction or design.

\*\*\*

5. Settling, cracking, shrinking, bulging or expansion of:

    a) Foundations.

    b) Walls.

    c) Floors.

    d) Pavements or roadways.

    e) Roofs.

    f) Ceilings.

\*\*\*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM  2026CH02542

**GROUP III**: This Policy excludes:

6.  Loss from enforcement of any law or ordinance:

    a)  Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or
    b)  Requiring the demolition of any property, including the cost in removing its debris;

    Except as provided by the Decontamination Costs and Demolition and Increased Cost of Construction coverages in this Policy.

***

## D. ADDITIONAL COVERAGES

### 11.  Demolition and Increased Cost of Construction

This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

a)  Such law or ordinance is enforced as a direct result of insured physical loss or damage at a **location**;

b)  Such law or ordinance is in force at the time of such loss or damage; and

c)  Such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

Coverage A:

The reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that Regulates the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment.

As respects insured property, this Coverage A covers the reasonable and necessary costs to:

a)  Demolish any physically damaged and undamaged portions of the insured buildings, structures, machinery or equipment.

b)  Repair or rebuild the physically damaged and undamaged portions, whether or not demolition is required, of such insured buildings, structures, machinery or equipment.

The Company's maximum liability for this Coverage A at each **location** in any **occurrence** will not exceed the actual costs incurred in demolishing the physically damaged and undamaged portions of the insured property plus the lesser of:

a) The reasonable and necessary cost, excluding the cost of land, to rebuild on another site; or

b) The cost to rebuild on the same site.

Coverage B:

The reasonable estimated cost to repair, replace or rebuild insured property consisting of buildings, structures, machinery or equipment that the Insured is legally prohibited from repairing, replacing or rebuilding to the same height, floor area, number of units, configuration, occupancy or operating capacity, because of the enforcement of any law or ordinance that regulates the construction, repair, replacement or use of buildings, structures, machinery or equipment.

Demolition and Increased Cost of Construction Coverage B Valuation: On property covered under this Coverage B that cannot legally be repaired or replaced, the loss amount will be the difference between:

a) The actual cash value; and

b) The cost that would have been incurred to repair, replace or rebuild such lost or damaged property had such law or ordinance not been enforced at the time of loss.

Demolition and Increased Cost of Construction Exclusions: As respects Demolition and Increased Cost of Construction, the following additional exclusions apply:

This Policy does not cover:

a) Any cost incurred as a direct or indirect result of enforcement of any law or ordinance regulating any form of **contamination**.

b) Any machinery or equipment manufactured by or for the Insured, unless used by the Insured in its operation at the **location** suffering the physical loss or damage.

***

**COVERAGE DECISION**

Based on our investigation, the issues noted above are all a result of the structural members' condition and inability to support loads. These issues are not discrete as they have occurred over time or during the building reconstruction activities that occurred several decades prior. Finally, our investigation found no evidence of any direct physical loss or damage to insured property arising from an April 26, 2024, event.

In addition to the foregoing, we note that the Policy excludes losses that result from settling, cracking, shrinking, bulging, or expansion of foundations, walls, floors, pavements, roadways, roofs, or ceilings. The structural members inability to support expected load is a known risk of loss and no longer fortuitous.

Regarding Demolition and Increased Cost of Construction Additional Coverage, since our investigation found no direct physical loss or damage covered by the policy, this Additional Coverage does not apply to this reported claim.

FILED DATE: 3/17/2026 3:32 PM    2026CH02542



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

In view of the absence of liability, we make no comment relative to the amount of physical loss or damage, nor whether there was physical loss or damage in excess of any deductible but include those issues within the rights reserved. Accordingly, we will not plan any further adjustment activities and close our file.

Neither this letter nor our investigation waives any right or duties of either party under the FM Affiliated Policy No. 1114546. Anything done by FM Affiliated, or on its behalf, in connection with the above described matter, including but not limited to, any investigation into the cause or amount of loss or other matter relative thereto, shall not waive, invalidate, forfeit or modify any of its rights under the Policy issued by it and FM Affiliated hereby expressly reserves all of its rights and defenses thereunder.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Should you have any questions in this regard, please let me know.

Sincerely,

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)

Cc:     Andy Hickey
        Community Association Manager
        First Service Residential

Cc:     Noelle Kaushik Snow, AIC
        Claims Advocate – Lead
        Assistant Vice President
        Alliant Americas

Cc:     Nancy J. Ayers, CPCU, CIC
        Executive Vice President
        Alliant Americas

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 8



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

January 28, 2025

Martin McDonagh IL-CAM, CMCA, AMS
First Service Residential

Re:

| | |
|---|---|
| Named Insured: | Park 1500 Lofts Condominium Association |
| | 1500 West Monroe, c/o Building Office |
| | Chicago, IL 60607, USA |
| Location Address: | 1500 West Monroe, Chicago, IL 60607, USA |
| Policy No.: | 1114546 - (Location No. 001) |
| Loss Description: | Miscellaneous |
| Date of Loss: | 28-Apr-2024 (Date of Discovery) |
| AFU File No.: | 829521 |

Dear Mr. McDonagh,

This letter serves to outline the application of coverage under FM Affiliated Policy No.1114546 for structural conditions in several areas of the building that were discovered during a recent structural analysis.

These reported conditions were detailed in a 265-page document titled 'Summary of Timber Failures' provided by Wiss, Janney, Elstner Associates, Inc. (WJE) on November 21, 2024.

Our review of this document revealed the following reported conditions:

- Unit 127: A 13-inch by 13-inch wooden column showed no present signs of any direct physical loss or damage; however, the engineering firm opined that this timber may not be able to withstand future building loads.

- Unit 622: A wooden floor beam was noted to be crushed due to past construction activities.

- Unit 522: The wooden floor beam was noted to be deflected and cracked.

FM Affiliated retained Engineering System Inc. (ESi) to review the documents provided by WJE, investigate and determine the cause of the reported structural issues, and ESi issued a report on December 30, 2024, which is enclosed.

The report includes the following findings:

- Interior Wooden Column – Unit 127:  The 13-inch by 13-inch timber column showed no signs of distress or displacement.

- Wooden Beam – Unit 622: The end of the wooden floor beam was crushed from past construction in the building and not the result of any discrete event of physical loss or damage.

---

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

- Wooden Beam – Unit 522: The floor beam has moved and sagged over time and was not the result of any recent discrete event of physical loss or damage.

## POLICY REVIEW

This confirms our review of FM Affiliated Policy No. 1114546, with effective dates 01-May-2023 to 01-May-2024 (the "Policy Term") and issued to Park 1500 Lofts Condominium Association (the "Policy"). Subject to all its terms, conditions, limitations, and exclusions, the Policy provides coverage during the Policy Term against all risks of direct physical loss or damage, where **no exclusion applies**, to the covered property at scheduled location No.001 at 6 South Laflin Street and 1500 West Monroe and 1501-1507 West Madison, Chicago, IL, 60607 USA.

The Policy contains the following provisions:

\*\*\*

## **ALL RISK COVERAGE**

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

\*\*\*

## **C. EXCLUSIONS**

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

**GROUP II**: This Policy excludes the following, however, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

\*\*\*

2. Faulty workmanship, material, construction or design.

\*\*\*

5. Settling, cracking, shrinking, bulging or expansion of:

   a) Foundations.

   b) Walls.

   c) Floors.

   d) Pavements or roadways.

   e) Roofs.

   f) Ceilings.

\*\*\*



**Affiliated**

**GROUP III**: This Policy excludes:

6. Loss from enforcement of any law or ordinance:

   a) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or
   b) Requiring the demolition of any property, including the cost in removing its debris;

   Except as provided by the Decontamination Costs and Demolition and Increased Cost of Construction coverages in this Policy.

***

## D. ADDITIONAL COVERAGES

**11.     Demolition and Increased Cost of Construction**

This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

a) Such law or ordinance is enforced as a direct result of insured physical loss or damage at a **location**;

b) Such law or ordinance is in force at the time of such loss or damage; and

c) Such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

Coverage A:

The reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that Regulates the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment.

As respects insured property, this Coverage A covers the reasonable and necessary costs to:

a) Demolish any physically damaged and undamaged portions of the insured buildings, structures, machinery or equipment.

b) Repair or rebuild the physically damaged and undamaged portions, whether or not demolition is required, of such insured buildings, structures, machinery or equipment.

The Company's maximum liability for this Coverage A at each **location** in any **occurrence** will not exceed the actual costs incurred in demolishing the physically damaged and undamaged portions of the insured property plus the lesser of:

a) The reasonable and necessary cost, excluding the cost of land, to rebuild on another site; or

b) The cost to rebuild on the same site.

Coverage B:

The reasonable estimated cost to repair, replace or rebuild insured property consisting of buildings, structures, machinery or equipment that the Insured is legally prohibited from repairing, replacing or rebuilding to the same height, floor area, number of units, configuration, occupancy or operating capacity, because of the enforcement of any law or ordinance that regulates the construction, repair, replacement or use of buildings, structures, machinery or equipment.

Demolition and Increased Cost of Construction Coverage B Valuation: On property covered under this Coverage B that cannot legally be repaired or replaced, the loss amount will be the difference between:

a) The actual cash value; and

b) The cost that would have been incurred to repair, replace or rebuild such lost or damaged property had such law or ordinance not been enforced at the time of loss.

Demolition and Increased Cost of Construction Exclusions: As respects Demolition and Increased Cost of Construction, the following additional exclusions apply:

This Policy does not cover:

a) Any cost incurred as a direct or indirect result of enforcement of any law or ordinance regulating any form of **contamination**.

b) Any machinery or equipment manufactured by or for the Insured, unless used by the Insured in its operation at the **location** suffering the physical loss or damage.

***

**COVERAGE DECISION**

Based on our investigation, the issues noted above are all a result of the structural members' condition and inability to support loads. These issues are not discrete as they have occurred overtime or during the building reconstruction activities that occurred several decades prior. Finally, our investigation found no evidence of any direct physical loss or damage to insured property arising from an April 28, 2024, event.

In addition to the foregoing, we note that the Policy excludes losses that result from settling, cracking, shrinking, bulging, or expansion of foundations, walls, floors, pavements, roadways, roofs, or ceilings. The structural members inability to support expected load is a known risk of loss and no longer fortuitous.

Regarding Demolition and Increased Cost of Construction Additional Coverage, since our investigation found no direct physical loss or damage covered by the policy, this Additional Coverage does not apply to this reported claim.



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

In view of the absence of liability, we make no comment relative to the amount of physical loss or damage, nor whether there was physical loss or damage in excess of any deductible but include those issues within the rights reserved. Accordingly, we will not plan any further adjustment activities and close our file.

Neither this letter nor our investigation waives any right or duties of either party under the FM Affiliated Policy No. 1114546. Anything done by FM Affiliated, or on its behalf, in connection with the above described matter, including but not limited to, any investigation into the cause or amount of loss or other matter relative thereto, shall not waive, invalidate, forfeit or modify any of its rights under the Policy issued by it and FM Affiliated hereby expressly reserves all of its rights and defenses thereunder.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Should you have any questions in this regard, please let me know.

Sincerely,

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)

Cc:     Andy Hickey
        Community Association Manager
        First Service Residential

Cc:     Noelle Kaushik Snow, AIC
        Claims Advocate – Lead
        Assistant Vice President
        Alliant Americas

Cc:     Nancy J. Ayers, CPCU, CIC
        Executive Vice President
        Alliant Americas

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# EXHIBIT 9



**AFM**
Member of the FM Global Group

## MEASUREMENT SUMMARY SPREADSHEET

| | |
|---|---|
| Prepared by: | Kenneth Jones, SGA - AVP |
| Client: | The Park 1500 Lofts Condominium Association |
| Location: | 1500 W. Monroe Ave, Chicago, IL 60607 |
| Date of Loss: | 28-Jan-2024 |
| Description: | Miscellaneous (Unit 324 - Fractured/Displaced Wood Column) |
| Adjustment File No: | 826938 |

| ITEM | DOCUMENTS | DESCRIPTION | DATE | INVOICE NO. | INSURED'S CLAIMED AMOUNT | ADJUSTMENTS +/- | GROSS LOSS RECOVERABLE AMOUNT | PROPERTY DAMAGE APPROVED AMOUNT | TIME ELEMENT APPROVED AMOUNT | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Doc No. 5 - The Park 1500 - Monroe Conversion Dwgs | Drawings for Condo conversion 24 years ago | 2/14/2000 | | $ - | $ - | $ - | $ - | $ - | |
| 2 | Declarations and Bylaws - Rules and Regulations | Condo Documents | 11/26/2001 | | $ - | $ - | $ - | $ - | $ - | |
| 3 | WJE Engagement Letter with insured | Provides Rates - no amount proposed | 1/30/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 4 | KSN invoice | Board consulted with their counsel | 2/12/2024 | 1578417 | $ 672.50 | $ 672.50 | | $ - | $ - | The Policy does not provide coverage for fees and expenses of attorneys. |
| 5 | Chicago Department of Buildings letter | Chicago DOB referred to structural failure by Chicago FD. | 2/16/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 6 | WJE Summary of Column Failure, Emergency Shoring, and Proposed Occupancy | Presented to insured | 2/21/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 7 | Chicago Dept of Buildings letter | Revision of vacate order | 2/22/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 8 | WJE Structural Calculations for Emergency Shoring-compressed | calculations for shoring presented to DOB | 3/1/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 9 | WJE Summary Status Update | Status summary - no value | 3/1/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 10 | Doc No. 1 - 1500 West Monroe - Structural Calculations for Emergency Shoring | Shoring Rational | 3/1/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 11 | Doc No. 2 - 2024-04-05_1500 W MONORE - IFP | Column Repair drawings - for permit | 4/5/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 12 | Doc No. 3 - 2024-04-05 - 1500 West Monroe - Structural Calculations - Issue for Permit | Design Calculations for New Steel Column | 4/5/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 13 | Doc No. 4 - 2024-05-23 - 1500 W Monroe - Summary of Column Failure Events | Summary of Column Failure Events | 5/23/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 14 | WJR RFI Reply | Reply to FM Request for information. | 5/24/2024 | | $ - | $ - | $ - | $ - | $ - | |
| 15 | WJE 1500 West Monroe Column Investigation – Proposal | Column Failure Response and Emergency Shoring | 2/28/2024 | | $114,800.00 | $ - | | $ - | $ - | WJE: Please match proposed amount to the actual invoiced amount for the loss related damages in Unit 324. |
| 16 | WJE 1500 West Monroe Column Investigation – Proposal | column repair design and implementation | 2/28/2024 | | $128,000.00 | $ - | | $ - | $ - | WJE: Please match proposed amount to the actual invoiced amount for the loss related damages in Unit 324. |
| 17 | WJE 1500 West Monroe Column Investigation – Proposal | Condition assessment of building's wood framing, with emphasis on the wood columns | 2/28/2024 | | $265,000.00 | $ 265,000.00 | | | $ - | Not Loss Related |
| 18 | WJE 1500 West Monroe Column Investigation – Proposal | Root cause investigation | 2/28/2024 | | $40,000.00 | | | $ - | $ - | Covered Loss Related Amount to be Determined. |
| 19 | WJE Invoice | Investigate timber column distress | 2/14/2024 | 571576 | $42,381.82 | $ - | | $ - | | WJE: Please match proposed amount to the actual invoiced amount for the loss related damages in Unit 324. |
| 20 | WJE invoice | Work from February 6, to March 2, 2024 appears to be related to 324 column only - need to confirm | 3/14/2024 | 574548 | $84,791.74 | $ - | | $ - | | WJE: Please match proposed amount to the actual invoiced amount for the loss related damages in Unit 324. |
| 21 | WJE invoice | Work from March 4 to March 31, 2024 includes "condition assessment pre-planning" | 4/19/2024 | 578326 | $31,052.16 | $ - | | $ - | | WJE: Please match proposed amount to the actual invoiced amount for the loss related damages in Unit 324. |
| 23 | WJE invoice | Investigate timber column distress through June 2, 2024 | 6/20/2024 | 583606 | $114,708.20 | | | | | WJE: Please match proposed amount to the actual invoiced amount for the loss related damages in Unit 324. |
| 22 | WJE invoice | Work from April 1 to May 5, 2024 122 & 127 column, as well as assessment of building. | 5/16/2024 | 579822 | $163,296.00 | $ 163,296.00 | | $ - | $ - | Not Loss Related |
| 24 | WJE summary | Includes 3 Lines 19 to 21 above | 6/13/2024 | | $ - | | $ - | $ - | $ - | |
| 25 | LS Contracting | Unit 324: shoring installation January 28 to March 3, 2024 | 2/29/2024 | 24-110-01 | $128,404.79 | $ - | $ 128,404.79 | $ 128,404.79 | $ - | WJE: How much is the monthly shoring rental fee for the shoring in unit 324? |
| 26 | LS Contracting | Unit 324: March 21st to April 17th - shoring rental | 4/30/2024 | 24-110-02 | $4,023.56 | $ - | $ 4,023.56 | $ 4,023.56 | $ - | |
| 27 | LS Contracting | WJE inspection assistance and openings. (General inspection assistance and 122 column?) | 5/31/2024 | 24-110-03 | $82,676.45 | $ 82,676.45 | | $ - | $ - | Not Loss Related |
| 28 | LS Contracting | Unit 324: April 18th to May 15th - shoring rental | 5/31/2024 | 24-110-04 | $4,023.56 | $ - | $ 4,023.56 | $ 4,023.56 | $ - | |
| 29 | ULINE ORDER # 12540071 | Insured purchased signage to mark closed area of building. | 2/1/2024 | | $523.98 | $ - | $ 523.98 | $ 523.98 | $ - | |

FILED DATE: 3/17/2026 3:32 PM    2026CH02542

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

| # | Document | Description | Date | | | | | | Notes |
|---|----------|-------------|------|---|---|---|---|---|-------|
| | | | | $ - | $ - | $ - | $ - | $ - | |
| | | Unit Owner Expenses - Rent Mortgage - Hotel - Moving | | $ - | $ - | $ - | $ - | $ - | |
| | **Unit 224:** | | | | | | | | |
| 30 | Unit 224 owner email | Unit 224 claims Condo Association is to pay her mortgage due to Chicago DOB vacate order | 3/17/2024 | $ - | $ - | $ - | $ - | $ - | |
| 31 | Unit 224 Chase Statement owner | Unit 224 mortgage payment | 2/1/2024 | $1,943.08 | $ 1,943.08 | | $ - | $ - | No coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 32 | Unit 224 Chase Statement owner | Unit 224 mortgage payment | 3/1/2024 | $1,943.08 | $ 1,943.08 | | $ - | $ - | No coverage for temporary or permanet housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| | **Unit 324:** | | | | | | | | |
| 33 | Unit 324 State Farm email 03 15 24 | Unit 324 insurer email to us | 3/15/2024 | $ - | $ - | $ - | $ - | $ - | |
| 34 | Unit 324 Pinnacle Furnished Suite Rent Invoice 324 owner Giana Marelli | Summary Unit 324 temporary housing expense | | $ - | $ - | $ - | $ - | $ - | |
| 35 | Unit 324 Pinnacle Furnished Suite statement with parking invoice 324 owner Giana Marelli | Summary Unit 324 temporary housing expense | | $ - | $ - | $ - | $ - | $ - | |
| 36 | Unit 324 Pinnacle Furnished Suites Payment Receipt 324 owner Giana Marelli - Account No. 694524 | Unit 324 temporary housing expense | 5/9/2024 | $2,000.00 | $ 2,000.00 | | $ - | $ - | No coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 37 | Unit 324 Pinnacle Furnished Suites Payment Receipt 324 owner Giana Marelli - Account No. 694524 | Unit 324 temporary housing expense | 5/10/2024 | $2,000.00 | $ 2,000.00 | | $ - | $ - | No coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 38 | Unit 324 Pinnacle Furnished Suites Payment Receipt 324 owner Giana Marelli - Account No. 694524 | Unit 324 temporary housing expense | 5/11/2024 | $650.00 | $ 650.00 | | $ - | $ - | No coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 39 | Unit 324 Giana Marelli - Emai Dated - 05/13/2024 | May Rent & Parking Space | 5/13/2024 | $4,650.00 | $ 4,650.00 | | $ - | $ - | No rental income coverage for tenant or lawful occupants under AFM Policy. The recoverable Rental Income loss is the actual loss sustained by the Insured (Association). Please refer to Page 20 of 42 in the Policy for details |
| 40 | **Unit 424:** | | | $ - | $ - | $ - | $ - | $ - | |
| 41 | Unit 424 Courtyard by Marriot | Hotel | 2/5/2024 | $679.58 | $ 679.58 | | $ - | $ - | No coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 42 | Unit 424 Courtyard by Marriot | Hotel | 2/24/2024 | $1,182.90 | $ 1,182.90 | | $ - | $ - | No coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 43 | Unit 424 JW Marriot | Hotel | 2/20/2024 | $4,181.05 | $ 4,181.05 | | | $ - | No coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 44 | Unit 424 The Professionals | Labor - moving company to move out of risk. | 3/2/2024 | $2,295.74 | $ - | $ 2,295.74 | $ 2,295.74 | $ - | |
| 45 | Unit 424 FS Residential | Move out fee from insured to unit owner | 4/1/2024 | $300.00 | $ - | $ 300.00 | $ 300.00 | $ - | |
| 46 | Unit 424 email summary | Unit 424 total of lines 41 - 46 above $8,639.27 | 4/30/2024 | $ - | $ - | $ - | $ - | $ - | |
| 47 | **Unit 624:** | | | | | | | | |
| 48 | Unit 624 Attorney for Mr. Thomas Scheller unit 624 owner - letter 02 26 24 | Counsel for tenant of unit 624 to owner of unit 624 breaking lease due to loss | 2/26/2024 | $ - | $ - | $ - | $ - | $ - | |
| 49 | Unit 624 Lease | Monthly lease unit 624 | 9/1/2023 | $2,750.00 | $ 2,750.00 | | $ - | $ - | No rental income coverage for tenant or lawful occupants under AFM Policy. The recoverable Rental Income loss is the actual loss sustained by the Insured (Association). Please refer to Page 20 of 42 in the Policy for details |
| | **Unit 721:** | | | $ - | $ - | $ - | $ - | $ - | These expenses are not related to AFU No. 826938 - Unit 324. |

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

| # | Description | Detail | Date | Ref | Amount | Amount | | | | Note |
|---|---|---|---|---|---|---|---|---|---|---|
| 50 | Unit 721 Hyatt House - West Loop | Hotel - 04/28/24 to 05/01/24 | 5/1/2024 | 137356 | $1,263.15 | $ 1,263.15 | | $ - | $ - | These expenses are not related to AFU No. 829938 - Unit 324. Additionally, there is no coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 51 | Unit 721 Hyatt House - West Loop | Hotel - 05/01/24 to 05/03/24 | 5/3/2024 | 137595 | $467.22 | $ 467.22 | | $ - | $ - | These expenses are not related to AFU No. 829938 - Unit 324. Additionally, there is no coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 52 | Unit 721 Hyatt House - West Loop | Hotel - 05/05/24 to 05/11/24 | 5/11/2024 | 138340 | $1,401.66 | $ 1,401.66 | | $ - | $ - | These expenses are not related to AFU No. 829938 - Unit 324. Additionally, there is no coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 53 | Unit 721 Blue Ground one bedroom apartment | The Blueground.COM - Booking May 23rd through July 15th | 5/8/2024 | | $8,638.00 | $ 8,638.00 | | $ - | $ - | These expenses are not related to AFU No. 829938 - Unit 324. Additionally, there is no coverage for temporary or permanent housing or lodging under AFM Policy. Please refer to the "Condominium Endorsement" in the AFM Policy for details. |
| 54 | Unit 721 - temporary housing | Unit 721 - lines 50 to 53 summary of above from D.O.L - April 26th through July 15th $11,770.03 | 5/15/2024 | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| | | | | | $ - | $ - | $ - | $ - | $ - | |
| TOTALS | | | | | $1,240,700.22 | $ 545,394.67 | $ 139,571.63 | $ 139,571.63 | $ - | |

**GROSS LOSS RECOVERABLE AMOUNT - TBD** $ 139,571.63

**LESS: DEDUCTIBLE** $ (10,000.00)

**NET ADJUSTED RECOVERABLE AMOUNT - TBD** $ 129,571.63

**NET PAYMENT AMOUNT - TBD** $ 129,571.63

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 10



**Affiliated**

December 6, 2024

Noelle Kaushik, AIC            (sent via email: Noelle.Kaushik@alliant.com)
Claims Advocate – Lead
Assistant Vice President
Alliant Americas

Re:

| | |
|---|---|
| Named Insured: | Park 1500 Lofts Condominium Association |
| | 1500 West Monroe, c/o Building Office |
| | Chicago, IL 60607, USA |
| Location Address: | 1500 West Monroe, Chicago, IL 60607, USA |
| Policy No.: | 1114546 - (Location No. 001) |
| Loss Description: | Miscellaneous (Fractured/Displaced Wooden Column) |
| Date of Loss: | 28-Jan-2024 |
| AFU File No.: | 826938 |

Dear Mrs. Kaushik,

The purpose of this letter is to obtain the documentation needed to finalize the loss. This loss involves the replacement of the fractured and displaced 11 inch by 11 inch wooden column inside unit 324.

Pursuant to our recent communications, the Insured is required to perform the necessary repair or replacement of the damaged property with due diligence and dispatch. We are now ten (10) months post loss. Despite our reasonable approach to move the adjustment process along, the Insured has not ordered or taken the necessary steps to begin the process to fabricate the materials based on the designs, which we find unacceptable.

To move forward with the adjustment process and ensure the repair/replacement of the fractured and displaced wooden column is conducted efficiently and meets all safety standards, we engaged our consultant, Engineering Systems, Inc. (ESi), specifically Mr. August Domel, Ph.D., P.E., S.E., to provide us with his expert opinion regarding the repair design, required permits, construction process, and necessary time frame to complete the construction process.

Please note the following:

- **Repair Design**: ESi requires 4 to 6 weeks to provide a permit-ready detail to address the damage to this column (1 to 1.5 months).

- **Permit Submittal**: Based on ESi's experience, the City of Chicago requires a month to review the permit application. Additional time for the engineer of record to address city comments will be another 2 weeks, followed by a second city review estimated to take two weeks (1 to 2 months). Contractor bids would be obtained during this time frame.

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

- **Construction**: Once the repair material is obtained, the repairs can be fully completed within 2 weeks. Obtaining a matching wood column or a single steel column may require some lead time. Assume it will take 4 to 6 weeks to obtain materials (1.5 to 2 months).

In summary, the total time frame for the repair is:

- Repair Design: 1 to 1.5 months

- Permit Acquisition: 1 to 2 months

- Construction: 1.5 to 2 months

- Total Time: 5.5 months

The loss occurred on January 28, 2024, it would be expected that the single column repair/replacement should have been completed between May 1, 2024, and July 1, 2024. Please refer to the November 26, 2024, letter from ESi attached to the email for further details.

Based on the November 25, 2024 email communication from First Service Residential, the Insured still needs to order and fabricate the based on the designs before any physical replacement work begins. As discussed, this is not reasonable or acceptable.

As you are aware, we issued a property damage advance payment in the amount of USD 327,313.30 to replace the column based on the proposed costs provided by Wiss, Janney, Elstner Associates, Inc. Please refer to the adjuster's summary of expenses (spreadsheet) for details.

To date, we have not received any monthly shoring invoices since June 2024. However, as discussed, we will accept and honor the shoring expenses related to this loss that have been incurred by the Insured through November 30, 2024. We ask that you please obtain and provide us with the missing invoices by **December 16, 2024**. This will ensure that the final payment will be processed in December 2024.

In addition, the Policy covers the reasonable and necessary **tenant relocation expenses** incurred to relocate and return the tenants or lawful occupants associated with this loss. As discussed, we will pay up to the sub-limited amount of USD 250,000. We ask that you please obtain and provide us with any documentation to support this portion of the claim by **December 16, 2024**. This will ensure that the final payment will be processed in December 2024.

Once the requested information is received and reviewed, we will be in a position to finalize the loss.

Please confirm receipt of this letter at your earliest convenience.

Thank you for your understanding and cooperation.



Affiliated

Should you have any questions, please do not hesitate to contact me.

Sincerely,

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)


Cc: Nancy J. Ayers, CPCU, CIC  (sent via email to: Nancy.Ayers@alliant.com)
   Executive Vice President
   Alliant Americas

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# EXHIBIT 11



4215 Campus Drive
Aurora, IL  60504

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

November 26, 2024

Kenneth K. Jones, Sr.
Senior General Adjuster, Assistant Vice President | FM
300 South Northwest Highway -  Suite 100
Park Ridge, IL 60068

Via Email:  kenneth.jones@fmglobal.com

Re:     ESi Project - 103980
        PARK 1500 Lofts Condos Distressed Wood Column Assessment
        Column Replacement Time Frame

Dear Mr. Jones:

Engineering Systems Inc. (ESi) was retained by FM in regard to distress in a multi-family residential building.  The building, known as The Park 1500 Lofts Condominiums, was located at 1500 West Monroe Avenue in Chicago, Illinois. ESi was retained to investigate distress in several columns of the building.  There have been three different events that have occurred in this building.

This correspondence is in regard to AF claim number – 826938 (Date of occurrence January 8, 2024).  The only distressed item included in this claim is an 11 inch by 11 inch square interior wooden column in Unit 324.  The distress consisted of the east portion of the column splitting off and displacing downward.

FM recently requested ESi provide you with a time frame for the repair of this column.  In response to this request, please note the following:

| | |
|---|---|
| **Repair Design:** | ESi would require 4 to 6 weeks to provide a permit-ready detail to address the damage to this column. **(1 to 1.5 months).** |
| **Permit Submittal:** | Based on ESi's experience, the City of Chicago would require a month to review the permit application. Additional time for the engineer of record to address the city comments will be another 2 weeks and then a second city review is estimated to take two weeks. **(1 to 2 months).** Contractor bids would be obtained during this time frame. |
| **Construction:** | Once the repair material is obtained, the repairs can be fully completed within 2 weeks.  Obtaining of a matching wood column or a single steel column may require some lead time.  Assume it will take 4 to 6 weeks to obtain materials.  (**1.5 to 2 months).** |



FILED DATE: 3/17/2026 3:32 PM   2026CH02542

In summary, the total time frame for the repair is:

|  |  |  |
|---|---|---|
| Repair Design: | 1 to 1.5 months | |
| Permit Acquisition: | 1 to 2 months | |
| <u>Construction:</u> | <u>1.5 to 2 months</u> | |
| Total Time: | Best Case: | 3.5 months |
|  | Worst Case: | 5.5 months |

**Conclusion: If the distress occurred on January 8, 2024, it would be expected that the single column repair could have been completed between May 1, 2024 and July 1, 2024.**

Please contact us if you have any questions.

Sincerely,

August W. Domel, Ph.D., P.E., S.E.
Principal





FILED DATE: 3/17/2026 3:32 PM   2026CH02542

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 12



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

March 25, 2025

Andy Hickey
Community Association Manager
First Service Residential

Re:

| | |
|---|---|
| Named Insured: | Park 1500 Lofts Condominium Association |
| | 1500 West Monroe, c/o Building Office |
| | Chicago, IL 60607, USA |
| Location Address: | 6 South Laflin Street and 1500 West Monroe |
| | and 1501-1507 West Madison, Chicago, IL 60607, USA |
| Policy No.: | 1114546 - (Location No. 001) |
| Loss Description: | Miscellaneous (Damaged/Displaced Wood Column) |
| Date of Loss: | 28-Jan-2024 |
| AFU File No.: | 826938 |

Dear Mr. Hickey,

This letter serves as our formal response to a building tenant's email inquiry dated October 6, 2024, which states:

"I have reviewed the Policy and, as detailed below, it appears that Section 11 thereof (attached as a broken-off PDF) should cover all reasonable and necessary costs associated with bringing the building back into compliance with applicable laws and ordinances:

- The displacement of the 324 column constitutes an insured physical loss (11(a) #1).
- As a direct result of the insured physical loss, building officials enforced various laws and ordinances, necessitating a mandatory evacuation of the affected wing of Monroe East (11(a) #2).
- These laws and ordinances were in effect as of January 28, 2024 (11(b)).
- These laws and ordinances were not enforced against the building prior to the insured physical loss at the affected wing of Monroe East (11(c)).
- Virtually all expenses incurred by the Association to address the mandatory evacuation are "reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that regulates the repair or use of buildings," including the costs to "[repair or rebuild the physically damaged and undamaged portions of such insured buildings or structures]."

### **Policy Review**

As previously confirmed on June 5, 2024, coverage under Policy No. 1114546 with FM Affiliated Insurance Company, which insures against all risks of direct physical loss or damage, **where no exclusion applies**, to the Scheduled Location No. 001, as described in the Policy.

We direct your attention to the exclusion section of the policy on page 2 of 42, which explicitly states the following:

## C. EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

**GROUP II**: This Policy excludes the following, however, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

*** 

2. Faulty workmanship, material, construction or design.

*** 

5. Settling, cracking, shrinking, bulging or expansion of:

   a) Foundations.

   b) Walls.

   c) Floors.

   d) Pavements or roadways.

   e) Roofs.

   f) Ceilings.

*** 

**GROUP III**: This Policy excludes:

6. Loss from enforcement of any law or ordinance:

   a) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or
   b) Requiring the demolition of any property, including the cost in removing its debris;

   Except as provided by the Decontamination Costs and Demolition and Increased Cost of Construction coverages in this Policy.

*** 

Furthermore, we direct your attention to the additional coverages section of the policy on page 5 of 42, which explicitly states the following:

## D. ADDITIONAL COVERAGES

**11.    Demolition and Increased Cost of Construction**

---

**FM Insurance Company**
**300 S. Northwest Highway**
**Park Ridge, IL 60068, USA**

**Office:** +1(847) 430-7405



**Affiliated**

This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

a)  Such law or ordinance is enforced as a direct result of insured physical loss or damage at a **location**;

b)  Such law or ordinance is in force at the time of such loss or damage; and

c)  Such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

Coverage A:

The reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that Regulates the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment.

As respects insured property, this Coverage A covers the reasonable and necessary costs to:

a)  Demolish any physically damaged and undamaged portions of the insured buildings, structures, machinery or equipment.

b)  Repair or rebuild the physically damaged and undamaged portions, whether or not demolition is required, of such insured buildings, structures, machinery or equipment.

The Company's maximum liability for this Coverage A at each **location** in any **occurrence** will not exceed the actual costs incurred in demolishing the physically damaged and undamaged portions of the insured property plus the lesser of:

a)  The reasonable and necessary cost, excluding the cost of land, to rebuild on another site; or

b)  The cost to rebuild on the same site.

Coverage B:

The reasonable estimated cost to repair, replace or rebuild insured property consisting of buildings, structures, machinery or equipment that the Insured is legally prohibited from repairing, replacing or rebuilding to the same height, floor area, number of units, configuration, occupancy or operating capacity, because of the enforcement of any law or ordinance that regulates the construction, repair, replacement or use of buildings, structures, machinery or equipment.

Demolition and Increased Cost of Construction Coverage B Valuation: On property covered under this Coverage B that cannot legally be repaired or replaced, the loss amount will be the difference between:

a)  The actual cash value; and

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

b)  The cost that would have been incurred to repair, replace or rebuild such lost or damaged property had such law or ordinance not been enforced at the time of loss.

Demolition and Increased Cost of Construction Exclusions: As respects Demolition and Increased Cost of Construction, the following additional exclusions apply:

This Policy does not cover:

a)  Any cost incurred as a direct or indirect result of enforcement of any law or ordinance regulating any form of **contamination**.

b)  Any machinery or equipment manufactured by or for the Insured, unless used by the Insured in its operation at the **location** suffering the physical loss or damage.

***

## COVERAGE DECISION

Based on our review of the Additional Coverages, specifically:

11. Demolition and Increased Cost of Construction in AFM Policy No. 1114546 (page 9 of 42):

This coverage is contingent upon the law or ordinance being enforced as a direct result of insured physical loss or damage at a location, being in force at the time of such loss or damage, and the location not being required to comply with the law or ordinance prior to the insured physical loss or damage.

Based on the information obtained during the course of our investigation, we have not received any information from the City of Chicago Department of Buildings indicating that a specific law or ordinance was enforced or would be enforced due to the damaged or displaced wooden column in unit 324. Additionally, we have not received any information stating that the undamaged portion of the building was demolished due to the fractured or displaced wooden column in unit 324.

The City of Chicago requires a demolition permit for any building demolition or significant alteration, meaning all demolition work, including undamaged portions, must be documented and approved. The Department of Buildings enforces regulations and responds to complaints, so any enforcement actions regarding the damaged wooden column should be recorded.

Therefore, if you have written information from the City of Chicago Department of Buildings stating that the Association is obligated to comply with such law or ordinance due to the damaged wooden column in unit 324, please provide it for review and coverage consideration.

Additionally, if you have written information from the City of Chicago Department of Buildings stating that such law or ordinance was enforced as a direct result of the damaged wooden column in unit 324, please provide it for review and coverage consideration.

Factory Mutual Insurance Company reserves all rights and defenses under the Policy and at law. Any further action taken by Factory Mutual Insurance Company should not be construed as a waiver of any rights or defenses under any Policy or otherwise that exist, or which may arise in the future.



**Affiliated**

Should you have any questions in this regard, please let me know.

Sincerely,

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)

Cc:     Martin McDonagh IL-CAM, CMCA, AMS
        Community Association Manager
        First Service Residential

Cc:     Noelle Kaushik Snow, AIC
        Claims Advocate – Lead
        Assistant Vice President
        Alliant Americas

Cc:     Nancy J. Ayers, CPCU, CIC
        Executive Vice President
        Alliant Americas

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

2026CH02542

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 13



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

May 1, 2025

Andy Hickey
Community Association Manager
First Service Residential

Re:

| | |
|---|---|
| Named Insured: | Park 1500 Lofts Condominium Association |
| | 1500 West Monroe, c/o Building Office |
| | Chicago, IL 60607, USA |
| Location Address: | 6 South Laflin Street and 1500 West Monroe |
| | and 1501-1507 West Madison, Chicago, IL 60607, USA |
| Policy No.: | 1114546 - (Location No. 001) |
| Loss Description: | Miscellaneous (Damaged/Displaced Wood Column) |
| Date of Loss: | 28-Jan-2024 |
| AFU File No.: | 826938 |

Dear Mr. Hickey,

We have yet to receive a response to emails and letters from FM Affiliated or ESi. To proceed with the claims process, we kindly request an update on the status of the requested information and documentation.

We will diary our file for fourteen (14) business days in anticipation of receiving the requested information. Should we not receive the necessary details within this timeframe, we will finalize the claim based on the information currently available.

Thank you for your prompt attention to this matter.

Sincerely,

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)

Cc:      Martin McDonagh IL-CAM, CMCA, AMS
           Community Association Manager
           First Service Residential

Cc:      Noelle Kaushik Snow, AIC
           Claims Advocate – Lead
           Assistant Vice President
           Alliant Americas

Cc:      Nancy J. Ayers, CPCU, CIC
           Executive Vice President
           Alliant Americas

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

2026CH02542

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 14

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

## MEASUREMENT SUMMARY SPREADSHEET

**Prepared by:** Kenneth Jones, SGA - AVP
**Client:** The Park 1500 Lofts Condominium Association
**Location:** 1500 W. Monroe Ave, Chicago, IL 60607
**Date of Loss:** 28-Jan-2024
**Description:** Miscellaneous (Unit 324 - Fractured/Displaced Wood Column)
**Adjustment File No:** 826938

| ITEM | DOCUMENTS | DESCRIPTION | DATE | INVOICE NO. | INSURED'S CLAIMED AMOUNT | ADJUSTMENTS +/- | ADJUSTED GROSS CLAIM AMOUNT | PROPERTY DAMAGE APPROVED AMOUNT | TIME ELEMENT APPROVED AMOUNT | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|
| Property Damage: | | | | | | | | | | |
| 1 | KSN invoice | Board consulted with their counsel | 2/12/2024 | 1578417 | $ 672.50 | $ (672.50) | $ - | $ - | $ - | The Policy does not provide coverage for fees and expenses of attorneys. |
| 2 | Katten Invoice | For legal services rendered through January 13, 2025; estimate through closing and post-closing fees; disbursements and other charges | 1/13/2025 | 40247421 | $ 34,000.00 | $ (34,000.00) | $ - | | | The Policy does not provide coverage for fees and expenses of attorneys. |
| 3 | WJE Invoice | Unit 324: Investigate timber column distress - Services through February 4, 2024 | 2/14/2024 | 571576 | $ 42,381.82 | $ - | $ 42,381.82 | $ 42,381.82 | $ - | |
| 4 | WJE Invoice | Unit 324: Investigate timber column distress - Services through March 3, 2024 | 3/14/2024 | 574548 | $ 84,791.74 | $ - | $ 84,791.74 | $ 84,791.74 | $ - | |
| 5 | WJE Invoice | Unit 324 & Condition Assessment Work through March 31, 2024 | 4/19/2024 | 578326 | $ 31,052.16 | $ (3,383.90) | $ 27,668.26 | $ 27,668.26 | $ - | Condition Assessment work performed by WJE is not related to this discrete event. Adjustment made to the total invoiced amount in the amount of $3,383.90. |
| 6 | WJE Invoice | Unit 324 work including repair design/implementation and Condition Assessment Work through May 5, 2024 | 5/16/2024 | 579822 | $ 163,296.00 | $ (130,613.42) | $ 32,682.58 | $ 32,682.58 | $ - | Repair/Design/Implementation and Condition Assessment work performed by WJE is not related to this discrete event. Adjustment made to the total invoiced amount in the amount of $130,613.42. |
| 7 | WJE Invoice | Repair Design and Implemention | Professional service rendered through December 1, 2024. | 12/18/2024 | 600423 | $ 95,309.59 | $ (95,309.59) | $ - | $ - | $ - | Not Loss Related |

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

| # | Vendor | Description | Date | Invoice # | Amount | Adjustment | | | | Notes |
|---|--------|-------------|------|-----------|--------|------------|---|---|---|-------|
| 8 | WJE Invoice | Repair Design and Implemention \| Professional service rendered through December 29, 2024. | 1/15/2025 | 602770 | $ 79,232.78 | $ (79,232.78) | $ - | $ - | $ - | Not Loss Related |
| 9 | WJE Invoice | Repair Design and Implemention \| Professional service rendered through February 2, 2025. | 2/24/2025 | 605841 | $ 171,092.33 | $ (171,092.33) | $ - | $ - | $ - | Not Loss Related |
| 10 | WJE invoice | Investigate timber column distress through June 2, 2024 | 6/20/2024 | 583606 | $ 114,708.20 | $ (108,514.49) | $ 6,193.71 | $ 6,193.71 | $ - | Repair/Design/Implementation/Root Cause Investigation and Condition Assessment work performed by WJE is not related to this discrete event. Adjustment made to the total invoiced amount in the amount of $108,514.49. |
| 11 | LS Contracting Group, Inc. | Unit 324: Emergency shoring installation January 28 to March 2, 2024 | 2/29/2024 | 24-110-01 | $ 128,404.79 | $ - | $ 128,404.79 | $ 128,404.79 | $ - | |
| 12 | LS Contracting Group, Inc. | Unit 324: March 21st to April 17th - shoring rental | 4/30/2024 | 24-110-02 | $ 4,023.56 | $ - | $ 4,023.56 | $ 4,023.56 | $ - | |
| 13 | LS Contracting Group, Inc. | Inspection Assistance and Openings - Bldg #1, Tiers 22, 24, and 27 | 5/31/2024 | 24-110-03 | $ 82,676.45 | $ (82,676.45) | $ - | $ - | $ - | Not Loss Related |
| 14 | LS Contracting Group, Inc. | Unit 324: April 18th to May 15th - shoring rental | 5/31/2024 | 24-110-04 | $ 4,023.56 | $ - | $ 4,023.56 | $ 4,023.56 | $ - | |
| 15 | LS Contracting Group, Inc. | Unit 324: May 15th to Jun 12th - shoring rental | 6/30/2024 | 24-110-05 | $ 4,023.56 | $ - | $ 4,023.56 | $ 4,023.56 | | |
| 16 | LS Contracting Group, Inc. | Unit 324: | 7/31/2024 | 24-110-06 | $ 4,023.56 | | $ 4,023.56 | $ 4,023.56 | $ - | |
| 17 | LS Contracting Group, Inc. | Unit 324: | 8/31/2024 | 24-110-07 | $ 4,023.56 | | $ 4,023.56 | $ 4,023.56 | $ - | |
| 18 | LS Contracting Group, Inc. | Unit 324: | 9/30/2024 | 24-110-08 | $ 4,023.56 | | $ 4,023.56 | $ 4,023.56 | $ - | |
| 19 | LS Contracting Group, Inc. | Unit 324: | 10/1/2024 | 24-110-09 | $ 4,023.56 | | $ 4,023.56 | $ 4,023.56 | $ - | |
| 20 | LS Contracting Group, Inc. | Unit 324: 10/2/24 to 10/30/24 - Shoring Rental | 11/15/2024 | 24-110-10 | $ 4,023.56 | $ - | $ 4,023.56 | $ 4,023.56 | $ - | |
| 21 | LS Contracting Group, Inc. | Unit 324: 10/31/24 to 11/27/24 - Shoring Rental | 11/30/2024 | 24-110-11 | $ 4,023.56 | $ - | $ 4,023.56 | $ 4,023.56 | $ - | |
| 22 | LS Contracting Group, Inc. | Unit 324: 11/27/24 to 12/24/24 - Shoring Rental | 12/31/2024 | 24-110-12 | $ 4,023.56 | $ (4,023.56) | $ - | $ - | $ - | No coverage - These shoring costs is outside of the allotted ten month time frame to make the necessary repairs. |
| 23 | LS Contracting Group, Inc. | Unit 324: 11/27/24 to 12/24/24 - Shoring Rental | 1/21/2025 | 24-110-13 | $ 3,288.60 | $ (3,288.60) | $ - | $ - | $ - | No coverage - These shoring costs is outside of the allotted ten month time frame to make the necessary repairs. |
| 24 | LS Contracting Group, Inc. | Unit 324: 11/27/24 to 12/24/24 - Shoring Rental | 2/21/2025 | 24-110-14 | $ 4,508.06 | $ (4,508.06) | $ - | $ - | $ - | No coverage - These shoring costs is outside of the allotted ten month time frame to make the necessary repairs. |
| 25 | LS Contracting Group, Inc. | Building 1 Structural Repairs - Payment Application No. 1. | 9/30/2024 | 24-246-01 | $ 191,996.97 | $ (186,480.28) | $ 5,516.69 | $ 5,516.69 | $ - | Remaining cost is not loss related |
| 26 | LS Contracting Group, Inc. | Building 1 Structural Repairs - Payment Application No. 2. | 10/30/2024 | 24-246-02 | $ 196,611.30 | $ (187,746.48) | $ 8,864.82 | $ 8,864.82 | $ - | Remaining cost is not loss related |
| 27 | ULINE ORDER # 12540071 | Insured purchased signage to mark closed area of building. | 2/1/2024 | | $ 523.98 | $ - | $ 523.98 | $ 523.98 | $ - | |

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Time Element (Emeregency Evacuation Expenses): | | | | | | $ - | $ - | $ - | $ - | |
| 1 | Park 1500 Lofts Condominium Association | This Policy covers the reasonable and necessary costs incurred by the Insured for the emergency evacuation and subsequent return of tenants or lawful occupants when the Insured's management, using reasonable discretion, or a civil authority orders the emergency evacuation of a described location as a direct result of immediately impending physical loss or damage of the type insured by this Policy. This Policy excludes the following: a) the cost to move personal property of tenants or lawful occupants. b) the cost of temprary or permanent housing or lodging. | | | $ 250,000.00 | $ - | $ 250,000.00 | $ - | $ 250,000.00 | This coverage is sub-limited up to $250,0000. FM Affiliated is allowing the total sub-limited amount of $250,000 for this discrete event. |
| 2 | Park 1500 Lofts Condominium Association | This Policy covers the reasonable and necessary **tenant relocation expenses** incurred by the Insured to relocate and return tenants or lawful occupants to other quarters within this Policy's Territory when rented space or living quarter(s) at a **described location** are made uninhabitable as a direct result of physical loss or damage insured by this Policy. This Policy excludes: d) the cost of permanent housing or lodging. For the purposes of this coverage, tenant relocation expenses means the cost to: a) Pack and transport personal property of the type insured of tenants or lawful occupants. b) Store such personal property while awaiting possession of other quarters or restoration of existing quarters. c) Search for new quarters. d) Disconnect and reconnect fixtures and equipment. e) Re-establish new utility services less refunds from discontinued services. | | | $ 250,000.00 | $ - | $ 250,000.00 | $ - | $ 250,000.00 | This coverage is sub-limited up to $250,0000. We have agreed to allow the total sub-limited amount of $250,000 in this matter. |
| | | | | | | | | | | |
| **TOTALS** | | | | | **$ 1,964,782.87** | **$ (1,091,542.44)** | **$ 873,240.43** | **373,240.43** | **$ 500,000.00** | |

**PROPERTY DAMAGE LOSS RECOVERABLE AMOUNT (GROSS)** $ 873,240.43

**LESS: DEDUCTIBLE** $ (10,000.00)

**ADJUSTED RECOVERABLE AMOUNT (NET)** $ 863,240.43

**PROPERTY DAMAGE ADVANCE PAYMENT AMOUNT (NET)** $ (327,313.30)

**PROPERTY DAMAGE FINAL PAYMENT AMOUNT (NET)** $ 535,927.13

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

2026CH02542

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 15



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

June 30, 2025

Noelle Kaushik Snow, AIC
Claims Advocate – Lead
Assistant Vice President
Alliant Americas

Re:

|  |  |
|---|---|
| Named Insured: | Park 1500 Lofts Condominium Association |
|  | 1500 West Monroe, c/o Building Office |
|  | Chicago, IL 60607, USA |
| Location Address: | 6 South Laflin Street and 1500 West Monroe |
|  | and 1501-1507 West Madison, Chicago, IL 60607, USA |
| Policy No.: | 1114546 - (Location No. 001) |
| Loss Description: | Miscellaneous (Damaged/Displaced Wood Column) |
| Date of Loss: | 28-Jan-2024 |
| AFU File No.: | 826938 |

Dear Noelle,

I am writing to follow up on our phone conversation from Friday and to clarify the current status of the loss related to Unit 324.

As discussed with Mr. McDonaugh, the replacement of the fractured wooden column in Unit 324 has been completed. We have finalized our review of all submitted invoices and supporting documentation. Based on this review, a final settlement payment of **$535,927.13** will be issued. This amount represents the full and final settlement, not an interim disbursement. Please confirm whether the previously provided banking information remains valid or if there have been any updates. Upon receipt, we will process the payment.

We have also received a letter dated June 6, 2025, from the City of Chicago Department of Buildings. The letter confirms that "dangerous and unsafe" conditions continue to exist within the building, posing risks to tenants, occupants, and the public. Accordingly, the May 1, 2024, Vacate Order remains in effect for the entire east wing of the property located at **1500 West Monroe Street, Chicago, IL,** affecting the following units:

*122, 123, 124, 125, 126, 127, 221, 222, 223, 224, 225, 226, 227, 321, 322, 323, 324, 325, 326, 327, 421, 422, 423, 424, 425, 426, 427, 521, 522, 523, 524, 525, 526, 527, 621, 622, 623, 624, 625, 626, 627, 720, 721, 722, 723, 724, 725, 726, 727, and 825.*

To address the City's findings and review outstanding expenses, if any, related to the column replacement in Unit 324, we propose an in-person meeting at our downtown Chicago office, located at **111 S. Wacker Drive, Chicago, IL 60606**, on one of the following dates: **July 15, 28, 29, or 30**, beginning at **10:00 a.m. CST**.

Attendees will include August W. Domel (ESI), Bill Russo (Engle Martin), and myself. Please confirm the availability of Tim Fitzgerald (WJE), Andy Hickey (FS Residential), the Insured, and yourself. If these dates are not suitable, feel free to suggest alternatives.

Sincerely,

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)


Cc:     Martin McDonagh IL-CAM, CMCA, AMS
          Community Association Manager
          First Service Residential

Cc:     Andy Hickey
          Community Association Manager
          First Service Residential

Cc:     Nancy J. Ayers, CPCU, CIC
          Executive Vice President
          Alliant Americas

Cc:     August W. Domel, Ph.D., P.E., S.E.
          Principal
          ESI

Cc:     Bill Russo
          General Adjuster (Independent)
          Engle Martin

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

**FM Insurance Company**
**300 S. Northwest Highway**
**Park Ridge, IL 60068, USA**

**Office:** +1(847) 430-7405

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

2026CH02542

FILED DATE: 3/17/2026 3:32 PM    2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 16

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

| From: | Andy Hickey |
| --- | --- |
| To: | Stephanie Majca; Rebecca Novak; Michael Melzer; William Briggs; Craig Anderson |
| Cc: | Martin McDonagh; Edina Devic |
| Subject: | Fw: UPDATE: The Park 1500 Lofts Condominium Association AFU No. 826938 \| D.O.L.: 28-Jan-2024 |
| Date: | Wednesday, July 9, 2025 4:41:02 PM |



Thank you,



**ANDY HICKEY, IL-CAM, CMCA, AMS**
**Community Association Manager**
**Park 1500 Lofts Condominium Association**
6 S. Laflin Street & 1500 W. Monroe | Chicago, IL 60607
Direct 312.666.5209
Email Andy.Hickey@fsresidential.com
**www.fsresidential.com**

**FSR 24-hour Emergency Call Center : 877.999.6491**

Facebook | LinkedIn | Twitter | YouTube

**From:** Noelle Kaushik <noelle.kaushik@alliant.com>

**Sent:** Wednesday, July 9, 2025 4:05:07 PM
**To:** Andy Hickey <andy.hickey@fsresidential.com>; Martin McDonagh <martin.mcdonagh@fsresidential.com>
**Cc:** Edina Devic <edina.devic@fsresidential.com>; Nancy Ayers <Nancy.Ayers@alliant.com>; Sean Gaynor <Sean.Gaynor@firstservicefinancial.com>
**Subject:** UPDATE: The Park 1500 Lofts Condominium Association AFU No. 826938 | D.O.L.: 28-Jan-2024

Andy,

Please see below for the updated amount due.

Ken also responds to the concerns regarding the 10 month shoring allowance as well as the Board's comments on FM's position on DICC.
Attached are the supporting documents and the wiring instructions on file. **Please confirm these instructions are still valid**.

Noelle
312-595-8092

This email and its attachments are for the exclusive use of the intended recipients, and may contain proprietary information and trade secrets of Alliant Insurance Services, Inc. and its subsidiaries. This email may also contain information that is confidential, or otherwise protected from disclosure by contract or law. Any unauthorized use, disclosure, or distribution of this email and its attachments is prohibited. If you are not the intended recipient, let us know by reply email and then destroy all electronic and physical copies of this message and attachments. Nothing in this email or its attachments is intended to be legal, financial, or tax advice, and recipients are advised to consult with their appropriate advisors regarding any legal, financial, or tax implications.

**From:** Jones, Kenneth (Chicago Office) <kenneth.jones@fm.com>
**Sent:** Tuesday, July 8, 2025 6:16 PM
**To:** Noelle Kaushik <noelle.kaushik@alliant.com>
**Cc:** Nancy Ayers <nancy.ayers@alliant.com>; Zwayer, Matthew <matthew.zwayer@fm.com>; Russo, Bill <bill.russo@englemartin.com>; Gus W. Domel <awdomel@engsys.com>
**Subject:** The Park 1500 Lofts Condominium Association AFU No. 826938 | D.O.L.: 28-Jan-2024 (request for clarification)

**This message has originated externally from organization.**

Noelle,

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

I have completed a review with my consultants of all invoices and pay applications submitted to date related to the replacement of the damaged column in Unit 324. The final loss determination is as follows:

- **Gross recoverable amount:** USD 1,378,158.49
- **Less deductible:** USD 10,000.00
- **Advance payment issued:** USD 327,313.30
- **Final property damage & time element payment to be issued: USD 1,040,845.19**

Please refer to the attached revised expense summary and payment schedule for full details.

In accordance with the FM Affiliated Policy, payment will be made to **FirstService Residential LLC**, or as otherwise directed.

Kindly confirm that the attached **banking instructions** are correct and that the attached **loss payable letters** remain applicable. Please also confirm that funds should be disbursed to the account ending in 5177.

Additionally, I would like to address the points raised in your June 30, 2025 email:

1. **Shoring Invoices:** "Ken's exclusion of previously uncontested shoring invoices appears to be based on a 10-month coverage limit."
   As stated in our letter dated December 6, 2024 (attached), FM Affiliated agreed to honor all shoring expenses incurred through November 30, 2024. This timeline aligns with our consultant's assessment that the column replacement should have been completed within 5.5 months under worst-case conditions.
2. **DICC Coverage:** Our position, as outlined in our letter dated March 25, 2025, remains unchanged. Please also refer to the attached declination letters for adjustment file numbers 829163 and 821521, which reaffirm our stance.

We look forward to your confirmation.

Sincerely,

---

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)
M: 630.740.9761
W: 847.430.7405
300 South Northwest Highway | Suite 100 | Park Ridge, IL 60068

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

*Beginning March 31, 2025, you can reach me at my new email address ending in @fm.com*

fm.com



To report a new loss email: newlosschicago@fmglobal.com
Or call: +1 877 NEWLOSS (24 hours, 7 days a week)

*CONFIDENTIALITY NOTICE*
*This electronic transmission, including any attachments, is the property of FM. It may contain information confidential in nature or subject to legal privilege. It may also include information developed to reduce the possibility of loss to property. FM undertakes no duty to any party by providing such information. Disclosure, copying, distribution, or use of the contents of this transmission by anyone other than the intended recipient(s) is strictly prohibited. If you have received this message in error, please notify me by reply e-mail and delete the original transmission.*

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

FILED DATE: 3/17/2026 3:32 PM 2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 17

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



**From:** Jones, Kenneth (Chicago Office) <kenneth.jones@fm.com>
**Sent:** Thursday, August 14, 2025 8:43 PM
**To:** Michael Melzer <vicepresident2@park1500lofts.org>
**Cc:** Noelle Kaushik <noelle.kaushik@alliant.com>; Nancy Ayers <nancy.ayers@alliant.com>; Stephanie Majca <president@park1500lofts.org>; Rebecca Novak <secretary@park1500lofts.org>; Craig Anderson <vicepresident1@park1500lofts.org>; William Briggs <Treasurer@park1500lofts.org>; Fitzgerald, Tim <tsfitzgerald@wje.com>; Tom Laird <tlaird@lscontracting.com>; Joshua Decker <jdecker@lscontracting.com>; Martin McDonagh <martin.mcdonagh@fsresidential.com>; Edina Devic <Edina.Devic@fsresidential.com>; Tucker, Kaylee <ktucker@wje.com>; Andy Hickey <Andy.Hickey@fsresidential.com>; Gus W. Domel <awdomel@engsys.com>; Bill Russo <brusso.adj@yahoo.com>
**Subject:** Summary of Meeting – DICC Coverage and Structural Evaluation

Michael,

This email summarizes our meeting held today at our downtown Chicago offices. We reviewed the scope of coverage under the Demolition and Increased Cost of Construction ("DICC") provisions in AFM Policy No. 1144546 and discussed the circumstances surrounding the cause of loss, including the fractured wooden column in Unit 324 and broader structural concerns resulting from the existing overloading condition in the building.

**Key topics discussed:**

- The Demolition and Increased Cost of Construction ("DICC") provisions in AFM Policy No. 1144546.
- The nature and extent of structural damage to the wooden column in Unit 324.
- Issues with other wooden columns throughout the building, which are not covered by insurance.
- The June 6, 2025 letter from the City of Chicago Department of Buildings.
- Findings from the engineering condition assessment performed by WJE.

**Next steps:**

- WJE will provide a detailed scope of work required to address the unsafe conditions and facilitate removal of the vacate order detailed in the June 6, 2025 letter from the City of Chicago Department of Buildings.
- WJE will submit five (5) outstanding invoices to FM Affiliated for coverage consideration.

We agreed to review the submitted materials upon receipt and the DICC provisions in the Policy, and reconvene once additional information is available to support a final coverage determination.

Please feel free to contact me with any questions, or if any part of this summary requires clarification or correction.

Sincerely,

---

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)
M: 630.740.9761
W: 847.430.7405
300 South Northwest Highway | Suite 100 | Park Ridge, IL 60068

*Beginning March 31, 2025, you can reach me at my new email address ending in @fm.com*

fm.com



To report a new loss email: newlosschicago@fmglobal.com

Or call: +1 877 NEWLOSS (24 hours, 7 days a week)

***CONFIDENTIALITY NOTICE***

*This electronic transmission, including any attachments, is the property of FM. It may contain information confidential in nature or subject to legal privilege. It may also include information developed to reduce the possibility of loss to property. FM undertakes no duty to any party by providing such information. Disclosure, copying, distribution, or use of the contents of this transmission by anyone other than the intended recipient(s) is strictly prohibited. If you have received this message in error, please notify me by reply e-mail and delete the original transmission.*

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

# EXHIBIT 18

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



**CITY OF CHICAGO**

**✦**

**DEPARTMENT OF BUILDINGS**

October 30, 2025

Martin McDonagh
Community Association Manager
First Service Residential - Park 1500 Lofts
1500 West Monroe
Chicago, IL 60607

Dear Mr. McDonagh:

As stated in the June 6, 2025, Vacate Order letter, the Vacate Order remains in effect. The letter affirms that the Department of Buildings (DOB) is prohibited from lifting the order until all dangerous and unsafe conditions have been fully abated.

The Vacate Order cites the following provisions of the Chicago Construction Codes:

- Section 307.1 of Chapter 14A-3, titled *"Enforcement"* of the Administrative Provisions, which grants the building official the authority to order the building closed.

- Section 302.2 of the Rehabilitation Code, which provides that *"The building official shall require the elimination of dangerous conditions. The building official shall have the authority to require the elimination or abatement of unsafe conditions."*

Additionally, the following definitions are applicable:

- "Dangerous" – As defined in *Chapter 14X-2 of the Existing Building Code*: A building or structure that has either collapsed, partially collapsed, or lacks necessary ground support; or that exhibits existing conditions indicating a significant risk of collapse, detachment, or dislodgement of any portion, member, appurtenance, or ornamentation under service loads.

- "Unsafe" – As defined in *Chapter 2 of the Rehabilitation Code*: A building in which the structure or individual structural members meet the definition of "Dangerous," among other criteria.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



**CITY OF CHICAGO**

**★**

**DEPARTMENT OF BUILDINGS**

WJE Scope of Work

The Department of Buildings has reviewed the scope of work outlined in WJE's correspondence dated October 2, 2025. As presented in Table 1: Scope of Repair Work to Meet DOB Criteria to Lift Vacate Order, the proposed work addresses the requirements necessary to eliminate dangerous and unsafe conditions and to satisfy applicable code provisions.

| Scope Item | DOB Criteria Reference | Code Section(s) |
|---|---|---|
| Design and construct emergency shoring to stabilize the building after Unit 324 column failure. | Building Structure | 14A-3-307.1 (Vacate Order); 14R-3-302.2 (Required Elimination of Dangerous Conditions); 14A-6-603.5 (Condition Report) |
| Remove and replace fractured Unit 324 column, including all associated engineering investigations, testing, construction documents, site control measures, and repair work. | Building Structure | 14A-3-307.1 (Vacate Order); 14R-3-302.2 (Required Elimination of Dangerous Conditions) |
| Perform condition assessment of existing timber framing, including assessment of the structural grade of existing timber columns and beams within Building 1, and evaluation of allowable load capacity. Submit Condition Report to the Department of Buildings. | Building Structure | 14A-3-307.1 (Vacate Order); 14A-6-603.5 (Condition Report) |

FILED DATE: 3/17/2026 3:32 PM    2026CH02542



**CITY OF CHICAGO**

**DEPARTMENT OF BUILDINGS**

| Scope Item | DOB Criteria Reference | Code Section(s) |
|---|---|---|
| Strengthen all existing timber columns within Building 1 to eliminate Dangerous and Unsafe conditions, including all associated engineering investigations, testing, construction documents, site control measures, and repair work. | Building Structure | 14A-3-307.1 (Vacate Order); 14R-3-302.2 (Required Elimination of Dangerous Conditions) |
| Strengthen selected timber beams and joists within Building 1 to eliminate Dangerous and Unsafe conditions, including all associated engineering investigations, testing, construction documents, site control measures, and repair work. | Building Structure | 14A-3-307.1 (Vacate Order); 14R-3-302.2 (Required Elimination of Dangerous Conditions) |
| Rebuild interior walls and floors that were removed during the course of performing structural repairs. | Fire Separation | 14A-3-307.1 (Vacate Order) |
| Restore essential sanitary and utility services that were interrupted during the course of performing structural repairs. | Architectural, Mechanical, Electrical, and Plumbing | 14A-3-307.1 (Vacate Order); 14X-7-701.2 (Electrical Requirements); 14X-8-802.2 (Heating Systems); 14X-9-902.1 (Required Fixtures); 14X-905.2 (Hot or Tempered Water) |

FILED DATE: 3/17/2026 3:32 PM  2026CH02542



CITY OF CHICAGO

★

DEPARTMENT OF BUILDINGS

## Department Determination

Based on the review of WJE's proposed scope of work, the Department of Buildings finds that the outlined measures are generally consistent with the requirements of the Chicago Construction Codes and are appropriate to address the dangerous and unsafe conditions identified in the Vacate Order.

The Department concurs that completion of the specified structural repairs, strengthening measures, and restoration of essential building systems will satisfy the conditions necessary to lift the Vacate Order, provided that:

1. All work is completed under valid permits and in accordance with approved plans and specifications;

2. All required inspections are conducted and approved by the Department of Buildings; and

3. A final Condition Report and Engineer's Letter of Compliance are submitted certifying that the building no longer contains dangerous or unsafe conditions as defined in the Chicago Construction Codes.

Upon verification of the above, the Department will re-inspect the premises and determine whether the Vacate Order may be lifted.

Respectfully,

Marlene Hopkins
Commissioner

Hearing Date: 5/18/2026 10:00 AM
Location: Court Room 2502
Judge: Weaver-Boyle, Lynn

2026CH02542

FILED
3/17/2026 3:32 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02542
Calendar, 13
37147090

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

# EXHIBIT 19



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM    2026CH02542

November 6, 2025

Ms. Stephanie Majca
President
Park Lofts 1500 Condominium Association
1500 W. Monroe Street, Unit 714
Chicago, IL 60607
president@park1500lofts.org

|     |     |     |
| --- | --- | --- |
| Re: | Named Insured: | Park 1500 Lofts Condominium Association ("Association") |
|     | Location Address: | 6 South Laflin Street and 1500 West Monroe and 1501-1507 West Madison, Chicago, IL 60607, USA |
|     | Policy No.: | 1114546 - (Location No. 001) |
|     | Loss Description: | Miscellaneous (Damaged/Displaced Wood Column) |
|     | Date of Loss: | 28-Jan-2024 |
|     | AFU File No.: | 826938 |

Dear Ms. Majca:

We received a copy of the City of Chicago's October 30, 2025 letter to the property manager of the Park 1500 Lofts Condominium Association, which your insurance broker forwarded to us on October 31, 2025. This will confirm that, with its final supplemental payment of $99,428.52 net, Affiliated FM Insurance Company ("AFM"), has now paid a net total of $1,467,587.01. The basis for the amounts paid has been explained in prior meetings, correspondence, emails and spreadsheets provided to the Association. At this time, however, AFM must advise the Association that no further amounts are owed with respect to this claim.

As you know, on January 28, 2024 a column in Unit 324 suddenly cracked and shifted. The AFM policy contains the following insuring clause and exclusions relevant to the column in Unit 324 that cracked and shifted:

**ALL RISK COVERAGE**

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

**C. EXCLUSIONS**

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

**GROUP II**: This Policy excludes the following, however, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

1. Wear and tear, deterioration, depletion, rust, corrosion, erosion, inherent vice or latent defect.

2. Faulty workmanship, material, construction or design.

5. Settling, cracking, shrinking, bulging or expansion of:

a) Foundations.

b) Walls.

c) Floors.

d) Pavements or roadways.

e) Roofs.

f) Ceilings.

**GROUP III**: This Policy excludes:

6. Loss from enforcement of any law or ordinance:

a) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

b) Requiring the demolition of any property, including the cost in removing its debris;

Except as provided by the Decontamination Costs and Demolition and Increased Cost of Construction coverages in this Policy.

The cracking and shifting of the column in Unit 324 resulted from wear and tear, faulty design and constituted settling and cracking of walls, floors and ceilings. Coverage was provided by the policy for the discrete resulting damage from the cracking and shifting not otherwise excluded by the policy terms. On January 29, 2024, the Chicago Fire Department ordered evacuation all floors of units in certain portions of the building, pending the installation of temporary shoring. The portions of the floors evacuated were referred to as tiers, based on the last two numbers of the unit; for example, the "24" tier referred to units 124 through 724 as those units were stacked on top of each other. Tiers 23 through 27 were ordered to be evacuated on January 29, 2024. The City of Chicago lifted the evacuation order for tiers 23, 25, 26 and 27, along with Unit 724 on February 22, 2024.

We understand the Association hired the engineering firm Wiss Janney & Elstner ("WJE") to assess the condition of the column in Unit 324 and to determine proper methods for stabilizing the column. In addition, we understand that the Association also asked WJE to survey the structural condition of the timber framing in Building 1 of the 3 buildings comprising the Park 1500 Lofts condominium complex. On April 26, 2024, the City issued an order to vacate the units in tier 22 after being advised by WJE of a failed heavy timber column in

FILED DATE: 3/17/2026 3:32 PM   2026CH02542



**Affiliated**

Unit 122.  Your insurance broker notified AFM of a claim after the discovery of the failure of column 127 on April 29, 2024 and it was assigned an April 26, 2024 loss date.

On May 1, 2024 WJE discovered a column in Unit 127 had "characteristics indicating a risk of sudden failure that could result in imminent collapse of a large portion of Building 1" and notified the City of Chicago.  That same day, on the basis "that the entire building constitutes an imminent and actual danger to the tenants and occupants, and to the public at large" the City ordered the immediate evacuation and closure of all units on all floors of tiers 22 through 27, along with Unit 825.  The broker reported this discovery to AFM on May 13, 2024 and it was assigned an April 28, 2024 loss date for purposes of claims handling.

On June 6, 2025, the City sent a letter to the Association, summarizing the various orders entered by the City of Chicago Building Department and confirming that the May 1, 2024 order remained in effect until repairs were completed and the repaired structure passed all required inspections to ensure the dangerous and unsafe conditions have been abated and minimum standards for habitability had been restored.

According to the June 6, 2025 letter, the City's orders were entered pursuant to 14A-3-307.1 of the Chicago Construction Code, which provides "[w]here a *building*, *structure*, or *premises* has been damaged by fire, deterioration, **or other cause**, or *shows clear evidence of structural failure*, and where it **constitutes an actual and imminent danger to the public**, the *building official, fire code official*, Superintendent of Police, or Commissioner of Public Health is authorized to order said *building*, *structure*, or *premises* vacated and closed."  The italics and bold faced type are in the City's May 1, 2024 and June 6, 2025 letters.  The June 6, 2025 letter from the City also references Section 302.2 of the 2019 Chicago Building Rehabilitation Code with May 2020 Supplement which states "***The building official shall require the elimination of dangerous conditions. The building official shall have the authority to require the elimination or abatement of unsafe conditions***".  Again, the bold faced type is in the City's letter.

The October 30, 2025 letter confirms that the City's Vacate Order, as discussed in the City's June 6, 2025 letter, remains in force until "all dangerous and unsafe conditions have been fully abated", referencing specific provisions of the Chicago Construction Codes.  In addition, the letter notes that the Chicago Department of Buildings reviewed a scope of work outlined in correspondence from WJE dated October 2, 2025 and summarizes the WJE scope of work in a table found on pages 2 and 3 of the letter.

The first two items in the table on page 2 of the letter summarize the work performed as a resulting damage from the cracking and shifting of the column in Unit 324. AFM paid the Association $878,158.49 for that work, as outlined in the spreadsheet we provided to you on July 8, 2025.  In addition, AFM paid the Association the $250,000.00 policy limit for reasonable and necessary evacuation costs and the $250,000.00 policy limit for tenant relocation expenses resulting from the cracking and shifting of the column in Unit 324.

The remaining items in the table on pages 2 and 3 of the October 30, 3025 letter appear to address the structural deficiencies in Building 1 identified by WJE after WJE discovered the condition of the columns in units 122 and 127.  We understand the Association is now making claim for the costs associated with remedying the structural deficiencies in Building 1 as part of the claim for the January 28, 2024 cracking and shifting of the column in unit 324, under the Additional Coverage for Demolition and Increased Cost of Construction provided by the AFM policy.

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Specifically, that coverage provides as follows:

## 11. Demolition and Increased Cost of Construction

This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

a) Such law or ordinance is enforced as a direct result of insured physical loss or damage at a location;

b) Such law or ordinance is in force at the time of such loss or damage; and

c) Such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

Coverage A:

The reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that Regulates the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment.

As respects insured property, this Coverage A covers the reasonable and necessary costs to:
a) Demolish any physically damaged and undamaged portions of the insured buildings, structures, machinery or equipment.

b) Repair or rebuild the physically damaged and undamaged portions, whether or not demolition is required, of such insured buildings, structures, machinery or equipment.

Coverage B:

The reasonable estimated cost to repair, replace or rebuild insured property consisting of buildings, structures, machinery or equipment that the Insured is legally prohibited from repairing, replacing or rebuilding to the same height, floor area, number of units, configuration, occupancy or operating capacity, because of the enforcement of any law or ordinance that regulates the construction, repair, replacement or use of buildings, structures, machinery or equipment.

Demolition and Increased Cost of Construction Coverage B Valuation: On property covered under this Coverage B that cannot legally be repaired or replaced, the loss amount will be the difference between:

a) The actual cash value; and

b) The cost that would have been incurred to repair, replace or rebuild such lost or damaged property had such law or ordinance not been enforced at the time of loss.



**Affiliated**

FILED DATE: 3/17/2026 3:32 PM   2026CH02542

Demolition and Increased Cost of Construction Exclusions: As respects Demolition and Increased Cost of Construction, the following additional exclusions apply:

This Policy does not cover:

a) Any cost incurred as a direct or indirect result of enforcement of any law or ordinance regulating any form of **contamination**.

b) Any machinery or equipment manufactured by or for the Insured, unless used by the Insured in its operation at the **location** suffering the physical loss or damage.

The Association previously made claims for the condition of the columns discovered in Units 122 and 127. These claims were handled under file numbers AFM 829163 and AFM 829521, respectively, and denied for the reasons set forth in our letters dated January 28, 2025 sent separately with respect to each claim. No coverage is afforded for the costs of remedying the structural deficiencies in Building 1 as part of the claims for the condition of the columns in Units 122 and 127, because enforcement of a law or ordinance as a direct result of *insured* physical loss or damage is required to trigger the Additional Coverage for Demolition and Increased Cost of Construction and neither of the claims for the condition of the columns in Units 122 and 127 involved insured physical loss or damage.

Further, there is no coverage for remedying the structural deficiencies in Building 1 that led to the City's issuance of the orders dated on April 26, 2024 and May 1, 2024, and summarized in the City's June 6, 2024 letter. That is because, as discussed in the City's letters, the Association had an obligation to comply with the applicable codes to ensure that Building 1 did not pose an actual and imminent danger to the public and by avoiding dangerous or unsafe conditions that had to be eliminated or abated, regardless of the January 28, 2024 cracking and shifting of the column in Unit 324.

Nothing in this letter, prior correspondence or done during the course of the investigation of this claim, should be construed as a waiver or modification of any of the provisions of the policy of insurance. Likewise, this letter is not meant to be an exhaustive listing of all provisions of the insurance policy that may affect, limit or exclude coverage for this loss. AFM reserves all of its rights in regard to this claim, under the policy of insurance and otherwise, and reserves the right to assert any and all additional defenses to the claim as are appropriate under the circumstances. Insurers will insist upon compliance with all provisions of the policy, waiving none.

If you believe there is information AFM has overlooked or additional information that it should consider, please let us know as soon as possible. Of course, if you have any questions regarding this matter, please contact the undersigned.

Rule 919 of the Rules and Regulations of the Illinois Department of Insurance requires that AFM to advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 West Randolph Street, Suite 15-100, Chicago, Illinois 60601, and in Springfield, Illinois at 320 West Washington Street, Springfield, Illinois 62767.

Sincerely,

**Kenneth K. Jones, Sr.**
Senior General Adjuster, Assistant Vice President | FM
Chicago Operations (Claims)
On behalf of
Affiliated FM Insurance Company


cc:     Martin McDonagh IL-CAM, CMCA, AMS
        Community Association Manager
        First Service Residential

        Andy Hickey
        Community Association Manager
        First Service Residential

        Nancy J. Ayers, CPCU, CIC
        Executive Vice President
        Alliant Americas

        Noelle K. Snow, AIC
        Claims Advocate Lead, AVP
        Alliant Americas